# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |
|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION and REGIONS BANK )<br><br>Plaintiffs, )<br><br>v. )<br><br>REGIONS UNIVERSITY, INC. )<br><br>Defendant. ) | Civil Action No. 2:06-cv-882-MHT |

## PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER

Defendant waived its attorney-client privilege concerning an opinion given by James Shlesinger that it has repeatedly and publicly used to justify its acts that are the subject of this lawsuit. By its motion for a protective order, defendant seeks to bar plaintiffs ("Regions") from taking Mr. Shlesinger's deposition concerning his communications with defendant and the factual basis for his opinion. Defendant's position is simply that plaintiff must be satisfied with defendant's version of its communications with its attorney concerning the waived subject matter and the selected documents it desires to produce.

However, the law is clear and simple: fairness dictates that once the attorney-client privilege is waived with respect to certain subject matter, the communications and documents relevant to that subject matter, including the testimony of the attorney, is discoverable. Regions' seeking Mr. Shlesinger's deposition is the inevitable result, and Mr. Shlesinger's deposition is the appropriate result under the law, of defendant's decision to waive it attorney-client privilege

with respect to Mr. Shlesinger's advice concerning the adoption of the mark REGIONS
UNIVERSITY.

### A.    Defendant's Intent and Willful Infringement Is Relevant

This is a trademark case. Regions claims that defendant's adoption of REGIONS
UNIVERSITY and REGIONS when it changed its name infringes and dilutes Regions famous
REGIONS name and mark. In addition, Regions claims that defendant's adoption of REGIONS
as the distinctive element of its name was willful – that defendant was completely aware of the
strength and the goodwill attached to the REGIONS name, particularly in Montgomery and
Alabama where both Regions and Regions University are headquartered, and desired to take
advantage of that fame and goodwill in defendant's change to a new "for-profit" name from its
prior Southern Christian University name.[1,2]

The intent of the defendant in a trademark infringement/dilution action is not a necessary
element for a finding of liability, but it is an important factor. Willful infringement, the
intentional adoption of a mark similar to another's to take advantage of its goodwill, is one of the
seven factors used to determine whether infringement has occurred. *Conagra, Inc. v. Singleton*,
743 F.2d 1508, 1514 (11th Cir. 1984); *Choice Hotels Int'l v. Kaushik*, 147 F. Supp. 2d 1242,

---

[1] In changing its name from Southern Christian University, defendant's president, Dr.
Rex Turner, Jr., testified that defendant was seeking a "for-profit" name. Regions Exh. A,
Turner Tr. 72-74.

[2] As used herein:

"Regions Exh." followed by a letter identifies an exhibit attached to this
opposition.

"Motion Exh." followed by a letter identifies an exhibit attached to defendant's
motion for a protective order.

"Dep. Exh" followed by a number refers to an exhibit identified and marked in
the deposition of Dr. Rex Turner, Jr., president of defendant.

2

1247 (M.D. Ala. 2000). As the Eleventh Circuit instructs, "[t]hat a latecomer adopts another's name, deliberately seeking to capitalize on the other's reputation and benefit from the confusion, is an important factor for a court." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1508 (11th Cir. 1985).

Willful infringement alone may justify a finding of infringement: "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999); *See also Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1544-45 (11th Cir. 1985) (affirming likelihood of confusion finding by district court based solely on similarity of marks and the defendant's intent).

Further, the defendant's intent is significant because a finding of willful infringement or dilution permits the award of attorneys' fees and expenses. *See, e.g., Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001) and Lanham Act, 15 U.S.C. §§ 1117(a) and 1125(c)(2).

### B.    Defendant Waived Its Attorney-Client Privilege Concerning Mr. Shlesinger's Advice

Even before Regions brought this action, defendant has used Mr. Shlesinger's advice as justification for its decision to adopt REGIONS UNIVERSITY. Defendant announced its adoption of the REGIONS UNIVERSITY name to its student body on August 16, 2006. In this "Name Change Letter," defendant specifically referred to its "attorney's trademark search" and its trademark attorney's opinion as justification for the adoption of the mark REGIONS UNIVERSITY. Regions Exh. B, Dep. Exh. 34. This letter (with slight modifications with other

content) was posted on the defendant's website and was mailed to 20,000 recipients in December 2006, after this action commenced. Regions Exh. C, Turner Tr. 200-02, Dep. Exhs. 38 and 39.

These open, public communications justifying its adoption of the REGIONS UNIVERSITY name on advice of trademark counsel and a trademark search waived defendant's claim of privilege with respect to these matters. Regions' counsel advised defendant of this waiver in early discovery discussions and agreed to the following limits to this waiver:

> I understand from your letters that you are willing to produce documents and information relating to this advice so long as this waiver does not constitute waiver of attorney-client communications dealing with *other* matters and that we will not seek to disqualify Mr. Shlesinger or his firm. Both conditions are acceptable.

(Emphasis added), Letter from W. Pecau to T. Hudson dated February 23, 2007, Motion Exh. D. Accordingly, Regions agreed that the waiver would be limited to the subject matter of Mr. Shlesinger's advice concerning the adoption of the mark and that it would not seek to disqualify Mr. Shlesinger or his firm. Regions certainly did not agree to allow defendant to provide only its version of its communications with Mr. Shlesinger and the information that it provided to him for the factual basis for Mr. Shlesinger's advice.

Regions is not seeking to disqualify Mr. Shlesinger or his firm or to expand the subject matter that has been waived by defendant. Rather, Regions is seeking merely the information that Regions is entitled to by reason of defendant's intentional waiver of the attorney-client privilege concerning the advice of counsel regarding its adoption of the mark REGIONS. It was entirely defendant's decision to decide (1) to justify its actions based on Mr. Shlesinger's advice, (2) to hire Mr. Shlesinger as one of the three attorneys representing it at trial, Messrs. Hudson and Watts being the other two, and (3) to waive its attorney-client privilege by its public

4

communications and by agreement with Regions' counsel. Having made these choices and accepted the benefits that they might entail, defendant is required to abide by their consequences.

One consequence is that a waiver is just that – a waiver of the subject matter of the advice – not just a waiver of the communications, documents and information that defendant decides it wishes to share with Regions. *Eco Mfg. LLC v. Honeywell Int'l, Inc.*, No. 1:03-CV-0170-DFH, 2003 WL 1888988 (S.D. Ind. Apr. 13, 2003), at *3.

### C. The Deposition of an Attorney Concerning His Opinion Relevant to the Issue of Defendant's Willfulness and Is Common Practice In Intellectual Property Cases Where There Is a Waiver

In intellectual property cases, where a defendant is relying on the advice of counsel for the allegedly infringing acts, discovery of that counsel's advice, including the deposition of the advising counsel, is a common practice. *See, e.g., Amsted Indus. v. Nat'l Castings, Inc.*, 16 U.S.P.Q.2d (BNA) 1737 (N.D. Ill.). One reason is that a plaintiff is entitled to discover the information that defendant provided its counsel whose advice it is relying upon to avoid a finding of willful infringement in order to have an understanding of defendant's state of mind. For example, "a party which withholds material information from counsel in seeking an opinion as to potential infringement cannot subsequently claim good faith reliance upon that opinion in defense to a claim of willful infringement." *Amsted*, 16 U.S.P.Q.2d at 1742; *see also Gorenstein Enters v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) (holding in a trademark infringement case that "[a]dvice of counsel is not a defense unless the defendant gave his attorney all of the facts . . . ").

It is no answer that Regions had the opportunity to take Dr. Turner's deposition. A waiver of the privilege waives both sides of the communications. A party cannot justify its acts by advice of counsel and avoid its consequences by the expediency of hiring the same counsel as one of its trial counsel. The Seventh Circuit in *Amsted* addresses this precise point:

> Finally, the Court notes that Amsted cannot be barred from examining
> Benn simply because it could alternatively examine National
> representatives as to what information they provided to Benn. As the
> preparer of the opinion letters in question, Benn is in the best position to
> know what information he had before him when he formulated his
> opinion, what among that information would have been material to the
> conclusions which he reached. ***The fact that National has selected Benn
> as one of its trial counsel is immaterial.*** By invoking the good faith
> defense, National has placed in issue the circumstances of Benn's opinion
> letter and waived the attorney-client privilege which otherwise would have
> cloaked the communications between National and Benn."

*Amsted*, 16 U.S.P.Q.2d at 1743 (emphasis added). Furthermore, the court emphasized that given

the import of the attorney's opinion to the defense, "it could hardly have been unforeseeable to

National that Amsted might seek to put Benn on the stand. In addition, National has had the able

assistance of other counsel throughout the history of this case, and thus whatever inconvenience

National might suffer from Benn becoming a witness will be minimal." *Id.*

As in *Amsted*, Mr. Shlesinger's testimony is germane in this case because he is the person

who conducted and prepared the opinion and is in the best position to know what information he

had before him when he searched the REGIONS mark and formulated his opinion, and what

among that information would have been material to the conclusion he reached. In addition, Dr.

Turner claims not to recall most matters concerning the trademark search, including the kind of

search that Mr. Shlesinger was to perform. Motion Exh. E, Turner Tr. at 134. Regions is

entitled to discover Mr. Shlesinger's version of his communications with defendant.

### D.    Defendant Must Produce the Trademark Searches and Full Report of Mr. Shlesinger

Further, Regions is entitled to have a copy of any trademark availability search or other

materials relied upon by Mr. Shlesinger in forming his opinion. For example, the e-mail dated

July 27, 2006, to Dr. Turner relied upon by defendant states: "A full report, including copies of

the references developed will be mailed to you." Motion Exh. B, at RU178.

6

This full report was never produced by defendant.  Nor has defendant ever produced the "copies of references developed" that the e-mail refers to.

There cannot be any doubt that Regions is entitled to the full report and these references. Trademark search reports (which are the summaries of trademark references) themselves are not protected by the attorney-client privilege or work product doctrine, even without an attorney-client privilege waiver.  *See, e.g., Fisons Limited v. Capability Brown Limited*, 209 USPQ (BNA) 167,  170 (T.T.A.B. 1980) (holding that search report themselves are not privileged).

### E.     The Law Permits the Deposition of an Attorney Concerning the Subject Matter of a Waived Attorney-Client Privilege

Defendant relies on a non-intellectual property case outside this circuit, *Shelton v. American Motors Corp.*, 805 f.2d 1323 (8th Cir. 1986), to avoid the consequences of its waiver and to select for itself the information and documents that it will disclose.  However, *Shelton* generally is not followed in intellectual property cases.  For example, in *aaiPharma, Inc. v. Kremerse Urban Development Co.*, 361 F. Supp. 2d 770 (N.D. Ill.), a patent infringement case, the court specifically refused to require the "heavy burden of *Shelton* in order to obtain discovery" from counsel despite the counsel's status as trial counsel and the "associated risks of obtaining discovery from trial counsel." *Id.* at 775.

Moreover, the issue in *Shelton* is completely inapposite to the issue brought before this Court. *Shelton* concerned the propriety of deposing litigation counsel and obtaining her mental impressions concerning issues arising after the litigation was commenced – such as the documents she deemed to be relevant. *Shelton*, 805 F.2d at 1325.  Here, the issue is very different.  Unlike *Shelton* where there was no waiver of the attorney-client privilege, defendant has intentionally waived the attorney-client privilege concerning the advice, opinion and communications with defendant regarding the adoption of the REGIONS UNIVERSITY mark.

The question here is whether having waived the attorney-client privilege and relied upon the opinion of counsel to avoid a finding of willful infringement, defendant can prevent Regions from learning the facts of defendant's communication with that counsel, the facts supporting that opinion, and the full opinion given.

The case *Eco Manufacturing LLC v. Honeywell Int'l, Inc.*, No. 1:03-CV-0170-DFH, 2003 WL 1888988 (S.D. Ind. Apr. 11, 2003), cited by defendant, in fact supports Regions' position that Mr. Shlesinger's deposition is permitted. *Eco Manufacturing* holds that where there is a waiver of the attorney-client privilege respecting advice of trademark counsel, the plaintiff is entitled to depose the trademark counsel concerning his communications with the defendant regarding the trademark opinion letter and the factual support for the opinion. *Id.* at *3. Moreover, the court held specifically that once the attorney-client privilege concerning a certain subject, a defendant cannot, as defendant is attempting to do here by its motion for protective order, selectively disclose privilege communications. As the court explains, "The 'same subject matter' standard for waiver 'seeks to prevent the selective, calculated disclosure of privileged communications.'" *Id.* at *2. Indeed, the court recognized that permitting the deposition of trademark counsel was a matter of fairness. *Id.* at *3. Similarly here, defendant's waiver of its attorney-client privilege cannot be selective and as matter of fundamental fairness Regions is entitled to depose Mr. Shlesinger on the subject matter of defendant's waiver.

**F.    Conclusion**

In sum, defendant has waived its attorney-client privilege respecting the opinion of counsel concerning the adoption of the REGIONS UNIVERSITY mark. This waiver means that plaintiff is entitled to take Mr. Shlesinger's deposition concerning (1) his communications, his advice, and the adoption of the mark, including his full opinion and (2) the factual basis for his opinion, including any trademark search reports and references. Contrary to defendant's position

in its motion, there is no authority that would shield Mr. Shlesinger from being deposed. Indeed, authority defendant cites clearly holds to the contrary that Regions is entitled to depose Mr. Shlesinger. Finally, Mr. Shlesinger's status as trial counsel does not change the relevance or appropriateness of his testimony as a trademark attorney once defendant's privilege is waived. Defendant cannot waive the privilege and then avoid the consequences of its waiver by the expediency of hiring Mr. Shlesinger as one of its trial counsel.

Respectfully submitted,

/s/ Charles B. Paterson
One of the Attorneys for Plaintiff Regions Asset Company

**OF COUNSEL:**

Charles B. Paterson (PAT018)
Paul A. Clark (CLA076)
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
cpaterson@balch.com
pclark@balch.com

William G. Pecau
Rachel M. Marmer
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202)429-6244
Facsimile: (202)429-3902
wpecau@steptoe.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon any CM/ECF participants electronically and I have mailed by United States Postal Service a copy of the foregoing document to any non-CM/ECF participants this the 3rd day of July 2007:

Victor T. Hudson
William W. Watts, III
Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601-0989

James E. Shlesinger
Shlesinger, Arkwright & Garvey LLP
1420 King Street
Suite 600
Alexandria, Virginia 22314

/s/ Charles B. Paterson
OF COUNSEL

10

# EXHIBIT "A"

# DEPOSITION OF REX TURNER, Ed.D.

## May 15, 2007

## Pages 1 through 268

## PREPARED BY:

Haislip, Ragan, Green, Starkie & Watson, P.C.
566 South Perry Street
Post Office Box 62
Montgomery, AL  36104
Phone: (334) 263-4455
Fax: (334) 263-9167
E-mail: haislipragan@charter.net

Deposition of Rex Turner, Ed.D.                    May 15, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION


REGIONS ASSET COMPANY,

     Plaintiff,

Vs.                                    CIVIL ACTION NO.
                                       2:06CV882-MHT
REGIONS UNIVERSITY, INC.,

     Defendant.


\* \* \* \* \* \* \* \* \* \* \* \*


DEPOSITION OF REX A. TURNER, JR., Ed.D,
taken pursuant to stipulation and agreement before
Lisa J. Nix, Registered Professional Reporter and
Commissioner for the State of Alabama at Large, in
the Law Offices of Balch & Bingham, Suite 200, 105
Tallapoosa Street, Montgomery, Alabama on Tuesday,
May 15, 2007, commencing at approximately 9:00 a.m.


\* \* \* \* \* \* \* \* \* \* \* \* \*

Deposition of Rex Turner, Ed.D.                                          May 15, 2007

**Page 2**

```
 1        APPEARANCES
 2
 3    FOR THE PLAINTIFF:
 4    Mr. William G. Pecau
      Ms. Rachel M. Marmer
 5    STEPTOE & JOHNSON
      Attorneys at Law
 6    1330 Connecticut Avenue NW
      Washington, D.C. 20036-1795
 7
      Mr. Charles B. Paterson
 8    BALCH & BINGHAM
      Attorneys at Law
 9    Suite 200
      105 Tallapoosa Street
10    Montgomery, Alabama 36104
11
12    FOR THE DEFENDANT:
13    Mr. Victor T. Hudson
      HUDSON & WATTS
14    Attorneys at Law
      Suite 2500
15    One St. Louis Centre
      Mobile, AL 36602
16
17
18        * * * * * * * * * * * *
19
20        EXAMINATION INDEX
21    BY MR. PECAU . . . . . . . . . .  7
22
23
```

**Page 3**

```
 1        EXHIBIT INDEX
 2
 3    EXHIBIT NUMBER
 4    17  Regions University Enrolled Students      31
        from Regular Fall 2006 through Regular
 5      Spring 2007 (RU-1908)
 6    18  Southern Christian University            38
        Undergraduate Expense form (RU-1374)
 7
      19  Regions University advertisement         59
 8      (RU-216)
 9    20  Board of Regents Meeting Minutes FY      65
        7/1/05 - 6/30/06 (RU-109-111)
10
      21  Team Meeting Minutes 9/29/05 (RU-113 -   84
11      114)
12    22  Board Meeting minutes 12/16/05 (RU-117 - 87
        119)
13
      23  Board Meeting minutes 3/17/06 (RU-133 -  91
14      136)
15    24  Resolution dated 3/17/06 (RU-137 - 139)  95
16    25  Team Meeting Minutes 7/6/06 (RU-146 -    100
        148)
17
      26  U.S. Patent and Trademark Office         102
18      correspondence re: Masters University
        (RU-140 - 145)
19
      27  Team Meeting Minutes 7/27/06 (RU-149 -   108
20      151)
21    28  7/27/06 email to Rex Turner from Jim     129
        Shlesinger (RU-178 - 179)
22
23
```

**Page 4**

```
 1
 2
 3    29  BellSouth White Pages listing beginning  139
        with Ralph Smith Motors and ending with
 4      Rho, Frank
 5    30  Email to Rex Turner from Rick Johnson     143
        re: Mark University (RU-180 - 181)
 6
 7    31  Resolution dated 7/28/06 (RU-25 - 27)     150
 8    32  Team Meeting Minutes 7/31/06 (RU-152)     150
 9    33  Letter to Students, Faculty and Staff     169
        from Rex Turner (RU-46)
10    34  Name Change Letter (RU-58 - 59)           169
11    35  Emails from Wilson Luquire and Randy      172
        Gore re: name change (RU-1909 - 1911)
12
      36  Regions University History, Mission and  187
13      Organization of Regions University
        (RU-80 - 108)
14
      37  8/18/06 letter to Rex Turner from        190
15      William Pecau (RU-63 - 65)
16    38  December 2006 letter to Dear Friend from 199
        Rex Turner (RU-1281 - 1282)
17
      39  Online Message from the President of     199
18      Regions University (RAC-30553 - 30554)
19    40  2 Corinthians - King James Bible         203
20    41  2 Corinthians - American Standard Bible  204
21    42  Regions University Logo effective        218
        8/15/06 (RU-191)
22
23
```

**Page 5**

```
 1
 2
 3    43  First release of regions University with 220
        Stacked Logo 8/19/06 (RU-193)
 4
      44  Photoboard (RU-208 - 212)                221
 5
      45  Radio Anywhere commercial - 45 seconds   229
 6      (RU-213)
 7    46  Radio Anywhere commercial - 15 seconds   229
        (RU-214)
 8
      47  Billboards (RU-1617 - 1619)              236
 9
      48  Regions University Media Placement       237
10      February 2007 - Television, Radio
        Billboards (RU-1603 - 1606)
11
      49  Blackboard screen shots (RU-1498 - 1506) 243
12
      50  Excerpt of loans disbursed academic year 250
13      05-06 (RU-1670, 1712 - 1715)
14    51  Excerpt of loans disbursed academic year 250
        06-06 (RU-1800, 1899 - 1902)
15
      52  Tasks to be accomplished for name change 254
16      from SCU to Masters University (RU-167 -
        168)
17
      53  Regions University Academic Catalog      254
18      (RU-436 - 439, 648 - 659, 999 - 1012)
19    54  Regions University Quick Facts (RU-245)  257
20    55  Email string between Carol Vucovich and  257
        Anita Crosby (RU-48)
21
      56  Screen shots from Peterson's (RU-1400,   257
22      1432, 1451)
23
```

Deposition of Rex Turner, Ed.D.                                      May 15, 2007

Page 70

1   A.  Yes.
2   Q.  That would be changing the name of the
3       entire institution from Southern Christian
4       University to Masters University; is that
5       correct?
6   A.  Yes.
7   Q.  Who chose the name Masters University?
8   A.  Would you mind repeating that, because --
9       are we talking about at what point?
10  Q.  Well, who thought of the name Masters
11      University?
12  A.  Dr. White and I had discussed the name
13      Masters, and it had been talked among a few
14      other administrators.  So we presented the
15      name -- I presented the name, and it was a
16      name that I had thought well of.
17  Q.  At what point in time did you discuss with
18      Dr. --
19          Is it Dr. White?
20  A.  Yes.
21  Q.  What point in time did you speak to him
22      about Masters University as being a
23      possible new name for the institution?

Page 71

1   A.  Well, it would have just been casual.  We
2       were working on our accreditation in 2005,
3       our re-affirmation with the Southern
4       Association of Colleges and Schools.  And
5       the name came up, and that's about all it
6       was at that time.
7   Q.  And you said you spoke about it with other
8       members of the administration.  What folks
9       were those?
10  A.  It was not many.  I don't really
11      recollect.  I may have mentioned it to
12      Dr. Patterson, but other than that, it
13      would not -- I mean, it was not mentioned
14      to many people.
15  Q.  You said you thought well of the name.  Why
16      did you think well of the name Masters?
17  A.  I thought well of it because I could see in
18      it a Christian concept, Jesus, the Master
19      Teacher.
20  Q.  So why didn't you choose Master as opposed
21      to Masters?
22  A.  I don't really know that.
23  Q.  Did it have any other Christian

Page 72

1   connotation?  I mean, Christ is the
2   Master.  Does Masters, itself, have a
3   Christian connotation?
4   A.  Jesus, the Master Teacher, Masters.
5   Q.  Any other connotation you thought was
6       favorable for the name of the institution?
7   A.  Well, I'm dealing with a Christian
8       community and I'm dealing with a university
9       community, and it just seemed to be
10      appropriate.
11  Q.  Okay.  The last bullet point on page
12      RU-110, do you see that?
13  A.  Okay.
14  Q.  Quote: This highlights our need, dash, we
15      need a for-profit type of name.
16          Now, was Masters a for-profit type of
17      name?
18  A.  Let me see if I -- you said at the bottom
19      of 110?
20          MR. HUDSON:  Right here.
21  A.  Okay.  I was taking this last bullet ...
22  Q.  Do you want me to read that --
23          MR. HUDSON:  He can read it to

Page 73

1   himself.
2   Q.  I'll give it to you then.  The last bullet
3       point under President Turner discussed
4       enrollment trends there, do you see that on
5       RU-110?
6   A.  Uh-huh.  (Positive response.)
7           MR. HUDSON:  Yes.
8   A.  Yes.
9   Q.  Yes.  Thank you.
10          This highlights our need, dash, we need
11      a for-profit type of name.  Is Masters in
12      your mind a for-profit type of name?
13  A.  Yes.
14  Q.  Okay.  Why is it a for-profit type of name?
15  A.  It takes away the burden of a business
16      degree with Christian in the name.
17  Q.  And why did you need -- why did -- Strike
18      that.
19          Why did Southern Christian University
20      need a for-profit type of name?
21  A.  We are a university to more than just a
22      Christian community, and we're offering --
23      we're now as of this, we're offering

Deposition of Rex Turner, Ed.D.                                          May 15, 2007

Page 74

1    business degrees.
2        And there are those who don't object to
3    a Christian university, but if they have a
4    business degree hanging on their wall, they
5    would rather it not say Christian. And so
6    anything without the Christian in it would
7    better represent in their minds a degree.
8    Q.  Now, why would somebody prefer not to have
9    Christian in the name of the school with a
10   business degree?
11   A.  Well, they just do.
12   Q.  You don't know why they do?
13   A.  Because they go into these corporations and
14   they hang their diplomas up for others to
15   see, and they had rather have a Masters
16   University rather than a Masters Christian
17   University there for a bachelors in
18   information systems.
19   Q.  Has anyone ever told you that they have
20   that preference?
21   A.  Yes.
22   Q.  Did they explain to you what negative
23   connotation might arise from the use of

Page 75

1    Christian in the name of a Christian
2    university?
3    A.  I just told you their preference.
4    Q.  Did you ask them why they had that
5    preference?
6    A.  Well, I don't think I had to ask them,
7    because they stated it.
8    Q.  You weren't interested why someone would
9    have that preference?
10   A.  Well, I could understand why someone would
11   rather have a name without Christian in it
12   in order to better promote their degree
13   within the business that they're in. I
14   understood that. I understood the
15   explanation.
16   Q.  So what is your understanding why it would
17   be better to have a business degree without
18   the word Christian in it for an institution
19   that provides a business degree that calls
20   itself a Christian university?
21   A.  Well, as the university expands, just like
22   a Vanderbilt or a Fisk or a Notre Dame, the
23   reasons become more and more apparent. As

Page 76

1    new academic degree programs -- which we
2    want to add a nursing degree program.
3    We're right now doing our prospectus for
4    it.
5        This process all lays the groundwork
6    for the growth of a university. We have
7    within our institution a school within that
8    university that represents a theological
9    institution.
10   Q.  So getting back to my question, what
11   negative connotation is it to have
12   Christian as a part of the name of a
13   university that calls itself a Christian
14   university?
15   A.  We're not talking about a negative
16   connotation. We're talking about a
17   preference for jobs and their relationship
18   with a community that they come in contact
19   with. They have nothing against
20   Christian. They just prefer it not to be
21   on their diploma.
22   Q.  And there's no reason for that preference
23   to your understanding?

Page 77

1    A.  I've stated it about as accurate as I know
2    how.
3    Q.  Okay. Going back to the bullet point, it
4    refers to a broad name. Do you know what
5    is meant by a broad name in that context?
6    A.  There are so many bullet points, where are
7    we talking about?
8    Q.  The one we were just talking about here.
9    It refers to a broad name. Do you see that
10   on RU-110 in Exhibit 20?
11   A.  That is a broad name?
12   Q.  Yes.
13   A.  It's the very thing I've been trying to say
14   about a university. We're broadening our
15   academic -- the academics of the university
16   as time passes.
17   Q.  The next sentence says: This would bring
18   in students that would help fund the
19   degrees in the Turner School of Theology.
20   Now, how is that?
21   A.  As the university grows, it will help the
22   Turner School of Theology to be able to
23   better operate because it will not have the

# EXHIBIT "B"

*Emailed to
students
8-16-06*

## NAME CHANGE LETTER

On August 2, 2006, the Board of Regents of *Southern Christian University* changed the institution's name to *REGIONS UNIVERSITY*. They determined that this name would enhance the university's opportunities and would complement the purpose and vision of this university as it accelerates its educational and religious heritage of *Going into all the regions of the world.*

The vision of this university is to expand its operations throughout the United States and internationally. The university is licensed and operating in the State of Tennessee and is in the process of seeking licensure in Arizona, Nevada, South Carolina, and North Carolina. An online Bible teaching program is presently being implemented for the people of Italy in the Italian language, and similar strategies are now being considered for other foreign countries.

The name *Southern* has been restrictive due to its geographical and political restraints. The university's regions of influence and operation are minimized within the western and northern United States and internationally. In foreign countries, *Southern* poses unique naming problems. On many occasions our faculty experienced the limiting access of the name as they taught in the regions of the former Communist Russia.

As you may know, changing the name of an accredited university is thought provoking and monumental. A trademark attorney was retained to assist in this process and to help determine the trademark registrability of several potential university names. The Board of Regents used this critical information in its deliberations.

The board naturally reviewed naming the institution after its founders, Rex and Opal Turner. History records that several of our sister Christian institutions, such as: *Lipscomb University*, *Freed-Hardeman University*, and *Harding University* were most appreciative of their founders' biblical knowledge, example, and sacrifice, and as a result named their institutions after the founders. This board gave similar genuine consideration and appreciation for *Turner University*, but was diverted upon learning that Ted Turner's corporations posed trademark registration naming issues.

*Regions University* was also considered. The attorney's trademark search revealed: *"we are of the opinion that the mark, Regions University, is registerable for educational services, namely, providing instruction at the university level."* As well, a search for email domains positively disclosed the availability of www.regions.edu and www.regionsuniversity.edu.

One important consideration, with the board, was that this name reflects the founders' vision and goal of having a *"school without walls"* that could provide accredited quality academic and Christian education to all regions of the world. The founders spent a

**RU 058**

*Ex 34*

lifetime in service, traveling to all regions of the United States *"To preach the gospel in all regions beyond you . . ."* 2 Corinthians 10: 16. In appreciation for Rex and Opal Turner's lifetime service, you should know that in 1999 the board named one of the university schools *Turner School of Theology.*

The word *Regions* is used over seventy times in the Bible, and it corresponds to the institution's mission to go into all the regions of the world with the message of Christ. The university has 33 academic degree programs and annually enrolls over 1000 students who reside in all of the regions of the 50 United States. The university's expansion into the international global higher education markets will provide an open door opportunity in restrictive foreign countries, like China.

In light of all favorable information presented, the board approved renaming the institution to *Regions University* and authorized the creation of a new seal bearing an etched image of its founders and the new words *Regions University.* The board approached this decision with a united commitment to implement its institutional plans.

The university is entering its 40th year of operation and this name change does not alter its ownership, accreditation, institutional mission, or commitment for its *Positive Statement of Faith.* The fact that this institution is the first university among the fellowship of the Churches of Christ to offer an accredited *Ph.D. degree in Biblical Studies* speaks volumes about this institution's commitment to continue the founders' example of training laborers who make known the gospel of Christ in all regions of the world.

The purpose for which this university was founded will now have a better opportunity to expand into all regions of the world with the *Regions University* name. The university has the accreditation, the technology, the leadership, the faculty, the student body, and a well-built infrastructure to implement and accomplish this task!

*Regions University* has no debt and has valuable commercial property, a total of 195 acres, in two Alabama locations in Macon and Montgomery Counties on interstate I-85. To implement the vision before us, it will necessitate the cooperation, involvement and united support of the board, alumni, administration, staff, faculty, students, and friends.

Your interest in and support of *Southern Christian University* in the past is deeply appreciated, and your continued prayers and support of this university are respectfully solicited as we endeavor to maintain and expand its mission under the new banner, *Regions University.* Please, continue your moral and financial support for this important cause!

Sincerely Yours,


Rex A. Turner, Jr., Ed.D.
President

# EXHIBIT "C"

# DEPOSITION OF REX TURNER, Ed.D.

## May 15, 2007

## Pages 1 through 268

## PREPARED BY:

Haislip, Ragan, Green, Starkie & Watson, P.C.
566 South Perry Street
Post Office Box 62
Montgomery, AL  36104
Phone: (334) 263-4455
Fax: (334) 263-9167
E-mail: haislipragan@charter.net

Deposition of Rex Turner, Ed.D.                    May 15, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

REGIONS ASSET COMPANY,

     Plaintiff,

Vs.                                   CIVIL ACTION NO.
                                      2:06CV882-MHT
REGIONS UNIVERSITY, INC.,

     Defendant.

\* \* \* \* \* \* \* \* \* \* \* \*

DEPOSITION OF REX A. TURNER, JR., Ed.D,

taken pursuant to stipulation and agreement before

Lisa J. Nix, Registered Professional Reporter and

Commissioner for the State of Alabama at Large, in

the Law Offices of Balch & Bingham, Suite 200, 105

Tallapoosa Street, Montgomery, Alabama on Tuesday,

May 15, 2007, commencing at approximately 9:00 a.m.

\* \* \* \* \* \* \* \* \* \* \* \*

Deposition of Rex Turner, Ed.D.                                    May 15, 2007

---

**Page 2**

```
 1              APPEARANCES
 2
 3   FOR THE PLAINTIFF:
 4     Mr. William G. Pecau
       Ms. Rachel M. Marmer
 5   STEPTOE & JOHNSON
       Attorneys at Law
 6     1330 Connecticut Avenue NW
       Washington, D.C. 20036-1795
 7
       Mr. Charles B. Paterson
 8   BALCH & BINGHAM
       Attorneys at Law
 9     Suite 200
       105 Tallapoosa Street
10     Montgomery, Alabama 36104
11
12   FOR THE DEFENDANT:
13     Mr. Victor T. Hudson
       HUDSON & WATTS
14     Attorneys at Law
       Suite 2500
15     One St. Louis Centre
       Mobile, AL 36602
16
17
18        * * * * * * * * * * * *
19
20        EXAMINATION INDEX
21   BY MR. PECAU . . . . . . . . . .  7
22
23
```

---

**Page 3**

```
 1           EXHIBIT INDEX
 2
 3   EXHIBIT NUMBER
 4    17  Regions University Enrolled Students     31
          from Regular Fall 2006 through Regular
 5        Spring 2007 (RU-1908)
 6    18  Southern Christian University        38
          Undergraduate Expense form (RU-1374)
 7
      19  Regions University advertisement        59
 8        (RU-216)
 9    20  Board of Regents Meeting Minutes FY     65
          7/1/05 - 6/30/06 (RU-109-111)
10
      21  Team Meeting Minutes 9/29/05 (RU-113 -   84
11        114)
12    22  Board Meeting minutes 12/16/05 (RU-117 - 87
          119)
13
      23  Board Meeting minutes 3/17/06 (RU-133 -  91
14        136)
15    24  Resolution dated 3/17/06 (RU-137 - 139)  95
16    25  Team Meeting Minutes 7/6/06 (RU-146 -   100
          148)
17
      26  U.S. Patent and Trademark Office       102
18        correspondence re: Masters University
          (RU-140 - 145)
19
      27  Team Meeting Minutes 7/27/06 (RU-149 -  108
20        151)
21    28  7/27/06 email to Rex Turner from Jim    129
          Shlesinger (RU-178 - 179)
22
23
```

---

**Page 4**

```
 1
 2
 3    29  BellSouth White Pages listing beginning   139
          with Ralph Smith Motors and ending with
 4        Rho, Frank
 5    30  Email to Rex Turner from Rick Johnson     143
          re: Mark University (RU-180 - 181)
 6
 7    31  Resolution dated 7/28/06 (RU-25 - 27)     150
 8    32  Team Meeting Minutes 7/31/06 (RU-152)     150
 9    33  Letter to Students, Faculty and Staff     169
          from Rex Turner (RU-46)
10    34  Name Change Letter (RU-58 - 59)           169
11    35  Emails from Wilson Luquire and Randy      172
          Gore re: name change (RU-1909 - 1911)
12
      36  Regions University History, Mission and   187
13        Organization of Regions University
          (RU-80 - 108)
14
      37  8/18/06 letter to Rex Turner from         190
15        William Pecau (RU-63 - 65)
16    38  December 2006 letter to Dear Friend from  199
          Rex Turner (RU-1281 - 1282)
17
      39  Online Message from the President of      199
18        Regions University (RAC-30553 - 30554)
19    40  2 Corinthians - King James Bible          203
20    41  2 Corinthians - American Standard Bible   204
21    42  Regions University Logo effective         218
          8/15/06 (RU-191)
22
23
```

---

**Page 5**

```
 1
 2
 3    43  First release of regions University with  220
          Stacked Logo 8/19/06 (RU-193)
 4
      44  Photoboard (RU-208 - 212)          221
 5
      45  Radio Anywhere commercial - 45 seconds  229
 6        (RU-213)
 7    46  Radio Anywhere commercial - 15 seconds  229
          (RU-214)
 8
      47  Billboards (RU-1617 - 1619)          236
 9
      48  Regions University Media Placement     237
10        February 2007 - Television, Radio
          Billboards (RU-1603 - 1606)
11
      49  Blackboard screen shots (RU-1498 - 1506)  243
12
      50  Excerpt of loans disbursed academic year  250
13        05-06 (RU-1670, 1712 - 1715)
14    51  Excerpt of loans disbursed academic year  250
          06-06 (RU-1800, 1899 - 1902)
15
      52  Tasks to be accomplished for name change  254
16        from SCU to Masters University (RU-167 -
          168)
17
      53  Regions University Academic Catalog     254
18        (RU-436 - 439, 648 - 659, 999 - 1012)
19    54  Regions University Quick Facts (RU-245)   257
20    55  Email string between Carol Vucovich and   257
          Anita Crosby (RU-48)
21
      56  Screen shots from Peterson's (RU-1400,    257
22        1432, 1451)
23
```

---

2 (Pages 2 to 5)

Deposition of Rex Turner, Ed.D.

May 15, 2007

Page 198

1   our repertoire. He is a former student of
2   '93, and a lot of people were doing well to
3   have e-mails back in those days. And we
4   sure don't have his e-mail and -- that I
5   know of. Now, maybe we do, and I could be
6   wrong.
7       But the point is that when he finds out
8   about it, he finds out about it from
9   someplace as far as I know, and then we
10  send him this letter. Now, that's the way
11  I remember the facts.
12  Q. So you didn't speak to him after this
13  e-mail was sent to Regions University; is
14  that correct?
15  A. If I remember correctly, I asked that he
16  call me.
17  Q. You left him a message on the phone?
18  A. This is Rick Johnson, the director of
19  enrollment management. And I don't know if
20  he contacted him or just what, but he asked
21  him to call me. And he very well may have
22  sent him the letter. I'm not sure who sent
23  him the letter.

Page 199

1   Q. So you didn't communicate directly with
2  Mr. Gore at all; is that correct?
3  A. To my knowledge, I do not remember any
4  personal communication with him. It would
5  have been through someone else who would
6  have sent him the letter. And I think they
7  may have conveyed to him for him to call
8  me, and he did not call me.
9  Q. Did you tell Rick Johnson to have this
10  Mr. Gore call you?
11  A. I want to qualify that I do not totally
12  remember who I asked to have contact him,
13  but I would say based upon this e-mail that
14  Rick Johnson did contact him. But to say
15  in a definitive way, I don't remember any
16  communication with him. I asked him to
17  call me.
18  Q. To your knowledge, has anyone else asked
19  Regions University whether Regions Bank has
20  made a donation to it?
21  A. I think this would be it. If it's not in
22  the documentation, that would be it.
23      (Exhibits 38 and 39 were marked for

Page 200

1   identification.)
2  Q. Let me show you what's been marked as
3  Exhibits 38 and 39. Can you tell me what
4  they are?
5  A. 38 is a letter that we sent out in the
6  month of December, the first part of
7  December. I'm not sure. Action in Mailing
8  mailed it out. It went to well over 20,000
9  people, homes. It is the same letter of
10  August the 16th except for some
11  modification and changes -- slight.
12      I discovered later that Harding
13  University that was mentioned in 16 -- on
14  the 16th of August did not have one of its
15  founders named after him -- Harding was not
16  named after its founder, and so I corrected
17  that.
18      It says here in the fifth paragraph:
19  The board naturally reviewed naming the
20  institution after its founders, Rex and
21  Opal Turner. History records that two of
22  our sister Christian institutions, David
23  Lipscomb University and Freed-Hardeman

Page 201

1   University, were most appreciative of their
2  founders' biblical knowledge, example, and
3  sacrifice, and as a result named their
4  institution after the founders. This board
5  gave similar genuine consideration and
6  appreciation for Turner University, but was
7  diverted upon learning that Ted Turner's
8  corporations post trademark registration
9  naming issues.
10  Q. So in terms of the statements that are in
11  exhibits -- except for that one statement,
12  the statements in Exhibits 34, 38 and 39
13  are the same?
14  A. I would not say that in total. There may
15  be some -- This letter of December 2006 was
16  better worded for a letter and was the most
17  accurate letter. And I do not know as far
18  as the Web site -- look at it kind of --
19  let's see here.
20      It appears to be more of the letter of
21  August the 16th, the one on the Web site.
22  Those two seem to be more in sync with each
23  other. But the letter in December which

Deposition of Rex Turner, Ed.D.                                    May 15, 2007

Page 202

1   went out to the people that we were seeking
2   contributions from had been amended
3   appropriately.
4   Q.  So that Exhibit 38, it was your intent that
5   all statements in Exhibit 38 were true?
6   A.  To the best of my knowledge, yes.
7   Q.  And that means that you made all the
8   statements in Exhibit 38 as accurate as you
9   could possibly make them; is that correct?
10  A.  As accurate as I could possibly make them.
11  Q.  On page RU-1282 in Exhibit 38 ...
12  A.  Exhibit 38.
13      MR. HUDSON:  That's the next page,
14      page two.
15  A.  Okay.  1282.  Okay.
16  Q.  Do you see a sentence beginning, quote: To
17  preach the gospel in all regions beyond
18  you, end quote?  It's in the first
19  paragraph.
20  A.  Yes.
21  Q.  Now, the quotations mean that that's a
22  precise quote of what appears in
23  2 Corinthians 10:16; is that correct?

Page 203

1   A.  As far as I know, it is accurate.  It's
2   either the American Standard or the King
3   James Version.  I believe that's correct.
4   I would have to pull out a Bible and check
5   it.
6   Q.  You mentioned the King James Bible.
7   A.  Yes, as one of the versions.
8       MR. PECAU:  Let's mark this as the
9       next exhibit.
10  A.  I don't know which one it was, either the
11  King James or the American Standard
12  Version.
13      (Off-the-record discussion.)
14      (Exhibit 40 was marked for
15      identification.)
16  A.  And I'm assuming -- I'd have to bring my
17  Bible, but ...
18      Is this a New King James here?
19  Q.  It's straight King James.  This is off the
20  Church of Christ Web site.
21  A.  Well, if it's taken here to preach the
22  gospel, there is the word all -- in all
23  regions beyond you.  Here it's got to

Page 204

1   preach the gospel in the regions beyond
2   you.
3   Q.  So they're not exactly the same?
4   A.  Not according to this.  And I would want to
5   check the other versions that I might have
6   gotten it from.
7   Q.  All right.
8   A.  You know, I mean, if I made an error, I
9   made an error.  That's about as easy as you
10  can ... but I'll just have to check the
11  Bible.
12  Q.  Well, let's do the American Standard Bible
13  since we're talking about this.
14      MR. HUDSON:  Before I do something
15      with this, is that the
16      properly marked exhibit there?
17      MR. PECAU:  Yes.
18      MR. HUDSON:  Thank you.
19      (Exhibit 41 was marked for
20      identification.)
21  Q.  Here is Exhibit 41.
22  A.  Sure had a lot of proofreaders.  I can name
23  you about eight people who read this thing.

Page 205

1   Q.  So --
2   A.  I learned as president to let everybody
3   read something and then when I sign my name
4   on it, it sounds so good that it makes me
5   look so much better.
6       MR. HUDSON:  Which one of these
7       pages is it?
8       THE WITNESS:  I don't know which
9       page it is.
10      MR. PECAU:  It's 10:16 as well.
11      MR. HUDSON:  10:16?
12      MR. PECAU:  Yeah.  It's page six
13      of eight.
14      MR. HUDSON:  Six of eight.
15      Thanks.
16  A.  So as to preach the gospel even unto the
17  parts beyond you.
18  Q.  All right.
19  A.  May be a mistake.  May not be.  I don't
20  know.
21  Q.  So the American Standard Bible doesn't
22  refer to regions, is that correct, in
23  2 Corinthians 10:16?



# REGIONS
# UNIVERSITY
Where Traditional and Online Education Merge

December 2006

Dear Friend,

On August 2, 2006, the Board of Regents of Southern Christian University changed the institution's name to REGIONS UNIVERSITY. They determined that this name would enhance the university's opportunities and would complement the purpose and vision of this university as it accelerates its educational and religious heritage of -- *Going Into All the Regions of the World.*

The vision of this university is to expand its operations throughout the United States and internationally. The university is licensed and operating in the State of Alabama and Tennessee and is in the process of seeking licensure in Arizona, Nevada, and Idaho. An online Bible teaching program is presently being implemented for the people of Italy in the Italian language, and similar strategies are now being considered for other foreign countries.

The name Southern has been restrictive due to its geographical and political restraints. The university's regions of influence and operation are minimized within the western and northern United States and internationally. In foreign countries, Southern poses unique naming problems. On many occasions our faculty experienced the limiting access of the name as they taught in the regions of the former Communist Russia.

As you may know, changing the name of an accredited university is thought provoking and monumental. A trademark attorney was retained to assist in this process and to help determine the trademark registrability of several potential university names. The Board of Regents used this critical information in its deliberations.

The board naturally reviewed naming the institution after its founders, Rex and Opal Turner. History records that two of our sister Christian institutions: David Lipscomb University and Freed-Hardeman University were most appreciative of their founders' biblical knowledge, example, and sacrifice, and as a result named their institutions after the founders. This board gave similar genuine consideration and appreciation for Turner University, but was diverted upon learning that Ted Turner's corporations posed trademark registration naming issues.

Regions University was also considered. The attorney's trademark search revealed: "we are of the opinion that the mark, Regions University, is registerable for educational services, namely, providing instruction at the university level." As well, a search for email domains positively disclosed the availability of www.regionsuniversity.edu.

**RU 1281**

EXHIBIT
38
Turner
PENGAD 800-631-6989

1200 Taylor Road
Montgomery, AL 36117-3553
334.387.3877 PHONE   334.387.3878 FAX
800.351.4040 TOLL FREE

www.regionsuniversity.edu

One important consideration, with the board, was that this name reflects the founders' vision and goal of having a "school without walls" that could provide accredited quality academic and Christian education to all regions of the world. The founders spent a lifetime in service, traveling to all regions of the United States "To preach the gospel in all regions beyond you . . ." 2 Corinthians 10:16. In appreciation for Rex and Opal Turner's lifetime service, you should know that in 1999 the board named one of the university schools Turner School of Theology.

The word Regions is used over seventy times in the Bible, and it corresponds to the institution's mission to go into all the regions of the world with the message of Christ. The university has 33 academic degree programs and annually enrolls over 1000 students who reside in all of the regions of the 50 United States. The university's expansion into the international global higher education markets will provide an open door opportunity in restrictive foreign countries, like China.

In light of all favorable information presented, the board approved renaming the institution to, Regions University and authorized the creation of a new seal bearing an etched image of its founders and the new words Regions University. The board approached this decision with a united commitment to implement its institutional plans.

The university is entering its 40th year of operation and this name change does not alter its ownership, accreditation, institutional mission, or commitment for its Positive Statement of Faith. The fact that this institution is the first university among the fellowship of the Churches of Christ to offer an accredited Ph.D. degree in Biblical Studies speaks volumes about this institution's commitment to continue the founders' example of training laborers who make known the gospel of Christ in all regions of the world.

The purpose for which this university was founded will now have a better opportunity to expand into all regions of the world with the Regions University name. The university has the accreditation, the technology, the leadership, the faculty, the student body, and a well-built infrastructure to implement and accomplish this task!

Regions University has no debt and has valuable commercial property, a total of 195 acres, in two Alabama locations in Macon and Montgomery Counties on interstate 1-85. To implement the vision before us, it will necessitate the cooperation, involvement and united support of the board, alumni, administration, staff, faculty, students, and friends.

Your interest in and support of Southern Christian University in the past is deeply appreciated, and your continued prayers and support of this university are respectfully solicited, as we endeavor to maintain and expand its mission under the new banner, Regions University. Please, continue your moral and financial support for this important cause!

Sincerely yours,

Rex A. Turner, Jr., Ed.D.
President

RU 1282

🏠 home page    ✉ email    🔍 site map

# REGIONS UNIVERSITY
*Where Traditional and Online Education Merge*

**Message from the President**

📖 Log In: RU students
Online Courses    📖 Academic Calendar    📖 Academic Catalog    📖 Library Resources    📖 Contact Us

**Degree programs**

**Admissions Information**

**Admissions information**

**Student resources**





On August 2, 2006, the Board of Regents of Southern Christian University changed the institution's name to REGIONS UNIVERSITY. They determined that this name would enhance the university's opportunities and would complement the purpose and vision of this university as it accelerates its educational and religious heritage of *Going into all the regions of the world.*

The vision of this university is to expand its operations throughout the United States and internationally. The university is licensed and operating in the State of Tennessee and is in the process of seeking licensure in Arizona, Nevada, South Carolina, and North Carolina. An online Bible teaching program is presently being implemented for the people of Italy in the Italian language, and similar strategies are now being considered for other foreign countries.

The name Southern has been restrictive due to its geographical and political restraints. The university's regions of influence and operation are minimized within the western and northern United States and internationally. In foreign countries, Southern poses unique naming problems. On many occasions our faculty experienced the limiting access of the name as they taught in the regions of the former Communist Russia.

As you may know, changing the name of an accredited university is thought provoking and monumental. A trademark attorney was retained to assist in this process and to help determine the trademark registrability of several potential university names. The Board of Regents used this critical information in its deliberations.

The board naturally reviewed naming the institution after its founders, Rex and Opal Turner. History records that several of our sister Christian institutions, such as: Lipscomb University, Freed-Hardeman University, and Harding University were most appreciative of their founders' biblical knowledge, example, and sacrifice, and as a result named their institutions after the founders. This board gave similar genuine consideration and appreciation for Turner University, but was diverted upon learning that Ted Turner's corporations posed trademark registration naming issues.

Regions University was also considered. The attorney's trademark search revealed: "we are of the opinion that the mark, Regions University, is registrable for educational services, namely, providing instruction at the university level." As well, a search for email domains positively disclosed the availability of www.regions.edu and www.regionsuniversity.edu.

One important consideration, with the board, was that this name reflects the founders' vision and goal of having a "school without walls" that could provide accredited quality academic and Christian education to all regions of the world. The founders spent a lifetime in service, traveling to all regions of the United States "To preach the gospel in all regions beyond you . . ." 2 Corinthians 10: 16. In appreciation for Rex and Opal Turner's lifetime service, you should know that in 1999 the board named one of the university schools Turner School of Theology.

The word Regions is used over seventy times in the Bible, and it corresponds to the institution's mission to go into all the regions of the world with the message of Christ. The university has 33 academic degree programs and annually enrolls over 1000 students who reside in all of the regions of the 50 United States. The university's expansion into the international global higher education markets will provide an open door opportunity in restrictive foreign countries, like China.

In light of all favorable information presented, the board approved renaming the institution to Regions University and authorized the creation of a new seal bearing an etched image of its founders and the new words Regions University. The board approached this decision with a united commitment to implement its institutional plans.

The university is entering its 40th year of operation and this name change does not alter its ownership, accreditation, institutional mission, or commitment for its Positive Statement of Faith. The fact that this institution is the first university among the fellowship of the Churches of Christ to offer an accredited Ph.D. degree in Biblical Studies speaks volumes about this institution's commitment to continue the founders' example of training laborers who make known the gospel of Christ in all regions of the world.

The purpose for which this university was founded will now have a better opportunity to expand into all regions of the world with the Regions University name. The university has the accreditation, the technology, the leadership, the faculty, the student body, and a well-built infrastructure to implement and accomplish this task!

Regions University has no debt and has valuable commercial property, a total of 195 acres, in two Alabama locations in Macon and Montgomery Counties on interstate I-85. To implement the vision before us, it will necessitate the cooperation, involvement and united support of the board, alumni, administrators, staff, faculty, students, and friends.

Your interest in and support of Southern Christian University in the past is deeply appreciated, and your continued prayers and support of this university are respectfully solicited as we endeavor to maintain and expand its mission under the new banner, Regions University. Please, continue your moral and financial support for this important cause!

Ex. 39

RAC00030553

file://C:\... SRU_name_change_(2).htm

Home     Instructional Support     Campus Info Map     Library     Electronic Campus     Armed Forces

Regions University is accredited by the Commission on Colleges of the Southern Association of Colleges and Schools 1866 Southern Lane, Decatur, Georgia 30033-4097; Telephone number 404.679.4501 to award Associate of Arts, Bachelor of Arts, Bachelor of Science, Master of Arts, Master of Science, Master of Divinity, Doctor of Ministry, and Doctor of Philosophy degrees.

RAC00030554

file://C:\Temp\RU_namechange (2).htm