**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| REGIONS ASSET COMPANY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06-cv-882-MHT |
| | ) | |
| REGIONS UNIVERSITY, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION TO COMPEL DISCOVERY AND
COMPLIANCE WITH ORDER OF COURT**

COME NOW the Plaintiffs in the above-styled cause and respectfully move the Court for an Order compelling the Defendant to respond to "Plaintiffs' Written Deposition Questions to James Shlesinger" and "Plaintiffs' Written Deposition Questions to Daniel Earle" and otherwise compelling compliance with the Court's Order dated July 26, 2007 (Document 58) and as grounds therefor shows to the Court as follows:

1.      By Order dated July 26, 2007, the United States Magistrate Judge Terry F. Moorer recognized that the Plaintiffs should be allowed to complete discovery by questioning trademark counsel James Shlesinger and Daniel Earle and obtain documents relating to any opinions and advice given to the Defendant and the underlying factual basis thereof.

2.      The Court further directed that such inquiry of Defendant's trademark counsel should be done through the use of written questions pursuant to Rule 31 of the *Federal Rules of Civil Procedure* and that the questions were to be served no later than August 3, 2007.

3.      On July 27, 2007, after Defendant indicated that it would not produce documents and provide testimony within the scope of the Court's Order, Plaintiff moved for an order compelling Defendant to produce documents and answer questions concerning the very subject matter that now Defendant refuses to allow to have Messrs. Shlesinger and Earle testify to. (Doc. 60, filed July 27, 2007) Defendant responded to the motion on July 30, 2007, agreeing to Plaintiffs' demands to compel documents and testimony, except for the amount of money charged for the advice from trademark counsel and its conversations with plaintiff concerning the description of goods or services in the Regions University application. (Doc. 62, filed July 30, 2007) In a hearing before this Court on July 30, Defendant confirmed its agreement to produce the documents and to provide the testimony sought by Plaintiffs. Based on Defendant's response and its representations in the hearing (except for the matter of the amount charged by Plaintiffs' trademark counsel), the Court held also on July 30 that the Plaintiffs' motion was moot. (Doc. 65, filed July 30, 2007)

4.      On August 3, 2007, Plaintiffs served a "Notice of Deposition Upon Written Questions" to James Shlesinger and a "Notice of Deposition Upon Written Questions" to Daniel Earl. A copy of both notices being attached hereto as Exhibit "A" and incorporated by reference herein. These depositions are set as directed by the Court for August 15, 2007, which is the last day of discovery permitted under the Scheduling Order entered in this case.

5.      By letter dated August 8, 2007, attached hereto as Exhibit "B", and service of "Defendant's Written Objections to Plaintiffs' Written Deposition Questions to Daniel T. Earle" and "Defendant's Written Objections to Plaintiffs' Written Deposition Questions to James E. Shlesinger", attached hereto as Exhibit "C", the Defendant has objected and refused to allow any response to over one-third of the questions propounded. These questions concern the same

subject matter that was the subject of Plaintiff's motion on July 27th and that Defendant had agreed in writing and in this Court's hearing on July 30th that it would provide testimony on.

6.      As appears in Exhibit "D" attached hereto, Counsel for Plaintiffs have asked Counsel for Defendant to reconsider their objections and position.  Despite the good faith efforts of the Counsel for the parties, they remain at an impasse regarding these issues.

7.      The Plaintiffs seek an Order requiring that the depositions upon written questions proceed as noticed and that all questions propounded be fully answered.

8.      Plaintiffs further request that these costs and other appropriate sanctions be taxed and imposed against the Defendant in connection with this motion.

Respectfully submitted this the 9th day of August, 2007.


/s/ Charles B. Paterson
One of the Attorneys for Plaintiffs Regions Asset
Company, Regions Financial Company and Regions
Bank

<u>OF COUNSEL:</u>
Charles B. Paterson (PAT018)
Paul A. Clark (CLA076)
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
cpaterson@balch.com
pclark@balch.com

William G. Pecau
Rachel M. Marmer
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202)429-6244
Facsimile:  (202)429-3902
wpecau@steptoe.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using

the CM/ECF system and service will be perfected upon any CM/ECF participants electronically

and by overnight mail service a copy of the foregoing document to all participating and non-

CM/ECF participants this the 9th day of August, 2007:

| | |
|---|---|
| Victor T. Hudson | James E. Shlesinger |
| William W. Watts, III | Shlesinger, Arkwright & Garvey LLP |
| Hudson & Watts, LLP | 1420 King Street |
| Post Office Box 989 | Suite 600 |
| Mobile, Alabama 36601-0989 | Alexandria, Virginia 22314 |

/s/ Charles B. Paterson
Of Counsel

# EXHIBIT "A"

## to

## MOTION TO COMPEL DISCOVERY AND COMPLIANCE WITH ORDER OF COURT

**Notice of Deposition Upon Written Questions**
**James E. Shlesinger**
**and**
**Plaintiffs' Written Deposition Questions**
**to James Shlesinger**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

REGIONS ASSET COMPANY,      )
REGIONS FINANCIAL CORPORATION, )
and REGIONS BANK            )
                        )
       Plaintiffs,      )
                        )
    v.               )    Civil Action No. 2:06-cv-882-MHT
                        )
REGIONS UNIVERSITY, INC.     )
                        )
       Defendant.     )

## <u>NOTICE OF DEPOSITION UPON WRITTEN QUESTIONS</u>

PLEASE TAKE NOTICE that pursuant to Rule 31 of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition upon written questions of James E. Shlesinger of

the law firm Shlesinger, Arkwright & Garvey LLP, 1420 King Street, Suite 600, Alexandria, VA

22314, on Wednesday, August 15, 2007, at 9:00 AM at Steptoe & Johnson LLP, 1330

Connecticut Avenue, NW, Washington, DC 20036. The questions for the Deposition Upon

Written Questions appear in the accompanying Plaintiffs' Written Deposition Questions to James

E. Shlesinger.

NOTICE IS FURTHER GIVEN THAT the deposition will be transcribed by a certified

court reporter and notary public or such other person authorized to administer oaths under the

laws of the United States designated by L.A.D. Reporting, 1100 Connecticut Avenue, NW, Suite

850, Washington, DC, 20036.

Dated: August 3, 2007

One of the Attorneys for Plaintiffs, Regions
Asset Company, Regions Financial
Corporation and Regions Bank

OF COUNSEL:

Charles B. Paterson (PAT018)
Paul A. Clark (CLA076)
Balch & Bingham LLP
105 Tallapoosa Street, Suite 200
P.O. Box 78 (36101-0078)
Montgomery, AL 36104
Tel: (334) 269-3143

William G. Pecau, Esq. (DC Bar # 478341)
Rachel M. Marmer, Esq. (DC Bar # 489606)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing NOTICE OF DEPOSITION UPON WRITTEN QUESTIONS AND QUESTIONS FOR THE DEPOSITION UPON WRITTEN QUESTIONS on counsel for Defendant by overnight courier on this 3rd day of August, 2007 properly addressed to them:

Victor T. Hudson
William W. Watts, III
Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601-0989

James E. Shlesinger
Shlesinger, Arkwright & Garvey LLP
1420 King Street
Suite 600
Alexandria, Virginia 22314

- 3 -

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION and REGIONS BANK | ) ) ) ) |  |
| Plaintiffs, | ) ) | Civil Action No. 2:06-cv-882-MHT |
| v. | ) ) |  |
| REGIONS UNIVERSITY, INC. | ) ) |  |
| Defendant. | ) |  |

## PLAINTIFFS' WRITTEN DEPOSITION QUESTIONS TO JAMES SHLESINGER

DIRECTIONS AND GUIDELINES

Written deposition questions under Rule 31 of the Federal Rules of Civil Procedure follow. Your answers to these questions are under oath as if you were testifying in person. Answer the questions to the best of your abilities. If you do not know an exact date, number or quantity, please provide your best approximation.

As used in these questions, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these questions any matter which might otherwise be construed to be outside of their scope.

As used in these questions, "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these questions any information which might otherwise be construed as outside their scope.

As used in these questions, "defendant" means the defendant in this action and its predecessors.

Other terms having particular meanings are defined below.

The following questions do not refer to any discussions with defendant or any of its representatives after August 18, 2007.

Attached to this document are exhibits that will be referenced in the questions below.

QUESTIONS

1.    Are you James E. Shlesinger?

2.    Are you employed by the law firm of Shlesinger, Arkwright & Garvey LLP?

3.    Are your offices located at 1420 King Street, Suite 600, Alexandria, VA 22314?

4.    Are you an attorney?

5.    In what states are you licensed to practice law?

6.    Have you ever been disbarred, suspended from the practice of law or subject to a bar disciplinary proceeding prior to August 18, 2006?

7.    If so, did you disclose such disbarment, suspension or bar disciplinary proceeding to defendant prior to August 18, 2006?

8.    If so, what did you tell the defendant concerning such disbarment, suspension or disciplinary proceeding?

9.    Whom at the defendant did you tell this to?

10.   When did you tell defendant this?

11.   Prior to August 18, 2006, were you ever sued for malpractice concerning a trademark opinion that you have rendered?

12.   If so, what was the result of that suit?

13.   Prior to August 18, 2006, did you advise Dr. Turner or someone else at defendant of such lawsuit(s) and/or the result(s) of such lawsuit(s)?

14.   If so, when did you advise Dr. Turner or someone else at defendant of such lawsuit(s) or their result(s)?

15.   What did you tell Dr. Turner or someone else at defendant of such lawsuit(s) or their result(s)?

16.   Whom did you tell at defendant of such lawsuit(s) or their result(s)?

17.   Do you understand the above Directions and Guidelines?

18.   If you do not, please identify each of the Directions and Guidelines that you do not understand and reasons for your difficulty in understanding such Direction or Guideline.

19.   In answering the questions posed to you today will you follow the above Directions and Guidelines?

20.   If not, please identify each Direction and Guideline that you do not intend to follow and state the reasons that you will not follow it.

21.   Are you represented in this deposition by counsel?

22.   Is your counsel present while these questions are being asked?

23.   What is the name of your counsel?

24.   Have you brought any papers or other documents with you to this deposition?

25.   If you have, please hand the documents to the reporter to be marked as exhibits, and, once they have been marked, answer the following questions for each such document:

   a.   What is the date, or if not known, to the best of your ability the approximate date, the document was prepared?

   b.   What other dates appear on the documents and for each date state the apparent event that the date is supposed to represent?

   c.   To whom is the document addressed?

   d.   By whom was it prepared?

   e.   When did you first become aware of this document?

3

     f.      How did this document come to your attention?

     g.     What was your purpose in bringing this document to this deposition?

     h.     Was this document or its contents communicated to defendant?

     i.      If so, when did such communication occur?

26.    Did you discuss with Dr. Turner or other person at defendant[1] any time prior to July 24, 2006, an initial refusal of the application to register the mark Masters on the Principal Register, Ser. No. 78/775,959, of the United States Patent and Trademark Office in an Office Action dated June 22, 2006 (the "Masters Application")? Identify each document that refers or relates to any such discussion."

27.    Is Exhibit 26 a copy of the Office Action for the Masters Application (the "Office Action") that you discussed with Dr. Turner or other person at defendant?

28.    When was the first time you spoke to Dr. Turner or other person at defendant concerning an initial refusal of the Masters Application?

29.    Did you discuss with Dr. Turner or some other person at defendant that the only basis for the refusal of the Masters Application was the Examiner's claim that the Masters mark was merely descriptive?

30.    Did you explain to Dr. Turner or other person at defendant what a merely descriptive mark is?

31.    What did you tell him a merely descriptive mark is?

32.    Did you advise Dr. Turner or some other person at defendant that you thought the initial refusal of the Masters Application based on mere descriptiveness of the Masters mark might be overcome?

33.    Did you tell Dr. Turner or some other person at defendant the likelihood that the initial refusal of the Masters Application based on mere descriptiveness of the Masters mark might be overcome?

34.    If so, what did you tell Dr. Turner or some other person at defendant of defendant's chances of overcoming the initial refusal of the Masters Application by the Examiner based on descriptiveness?

---

[1] When a reference is made to "other person at defendant" or an equivalent reference that is meant to include any employee, director, or officer of defendant and any consultant representing defendant such as Dr. White.

35.    The Office Action states "The examining attorney has searched the office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d)." Is that correct?

36.    Did you advise or discuss with Dr. Turner that the meaning of the above statement was that the Examiner was not aware of any other marks registered or the subject of a prior application in the United States Patent and Trademark Office that would in the Examiner's opinion bar the registration of the Masters University mark by defendant?

37.    Did you advise or discuss with Dr. Turner that if the mere descriptiveness initial refusal was overcome the Masters University mark would be passed on to publication in the *Official Gazette*?

38.    Did you advise or discuss with Dr. Turner that even if the Masters University mark was passed by the Examiner on to publication in the Official Gazette that the Masters Application could be opposed and ultimately denied based on a claim by another person that the Masters University mark was so similar to its mark or name and is for such related goods or services that confusion would be likely?

39.    Did you advise or discuss with Dr. Turner that even if the Masters University mark was registered the registration could be cancelled based on a proceeding brought by someone who claimed that the Masters University was so similar to its mark or name and is for such related goods or services that confusion would be likely?

40.    Did you explain to Dr. Turner that even if the Masters Application was registered or passed the examination process another person without a registration or application in the United States Patent and Trademark Office could object and seek to enjoin use of the name Masters University based on prior use of a confusingly similar name or mark?

41.    In your discussion with Dr. Turner concerning the possible adoption of the Masters University name was the name Masters College of Bible brought up?

42.    Did Dr. Turner mention it?

43.    Did Dr. Turner mention it in response to anything you said?

44.    What did you say that prompted Dr. Turner to mention Masters College of Bible?

45.    Did Dr. Turner tell you that he was aware of Masters College of Bible from the beginning of his consideration of the Masters University name?

46.    How long did he tell you he was aware of the Masters College of Bible name?

47.    Did you ask him how long he was aware of the Masters College of Bible name?

48.    Did Dr. Turner tell you that he had not been concerned with the Masters College of Bible name?

49.    Did Dr. Turner explain to you why he was not concerned with the Masters College of Bible name?

50.    What was his explanation for his absence of concern with the Masters College of Bible name?

51.    Did you ask Dr. Turner what he knew and/or how he knew of Masters College of Bible?

52.    What did he say?

53.    Did you ask Dr. Turner if he knew if the Masters College of Bible name was in use?

54.    What did he say?

55.    Did you ask him where the Masters College of the Bible was located?

56.    What did he say?

57.    Did you ask Dr. Turner if defendant had conducted any investigation into the use of Masters College of Bible?

58.    Did you express any concern to Dr. Turner that the use of Masters College of Bible might affect the availability of the Masters University name for use by defendant?

59.    What concern did you express to Dr. Turner arising out of the possible use of the name Masters College of Bible?

60.    Did you explain to Dr. Turner that defendant's use of Masters University might infringe the Masters College of Bible name?

61.    Did you advise Dr. Turner that the Masters College of Bible name would prevent the use by defendant of the Masters University name?

62.    Did you advise Dr. Turner that the Masters College of Bible name might represent a risk to the adoption and use of the name Masters University by defendant?

63.    Did you advise Dr. Turner that further investigation should be performed into the use of Masters University?

64.    Did you advise Dr. Turner that you would need more facts or an investigation or would have to consider further whether the Masters University name would be available for use by defendant?

65.    Did Dr. Turner request an opinion from you concerning the availability of the mark Masters University for use by defendant?

66.    Did Dr. Turner ask you to assess the risk posed by the Masters College of Bible name to defendant regarding its adoption and use of the Masters University name?

67.    Did you ever evaluate the risk posed by the name Masters College of Bible to defendant in its adoption and use of the Masters University name?

68.    Did you ever communicate to Dr. Turner or anyone else at defendant an opinion concerning the risk posed by the name Masters College of Bible to defendant in its adoption and use of the Masters University name?

69.    If so, was that opinion provided in writing or memorialized in anyway?

70.    Did you offer to conduct a search concerning the availability of the mark Masters University?

71.    Did Dr. Turner or other person at defendant tell you on or prior to July 27, 2006, that defendant was headquartered in Montgomery, Alabama?

72.    Did you ask Dr. Turner on or prior to August 2, 2006, where defendant was headquartered?

73.    On or prior to August 2, 2006, did you know that defendant was headquartered in Montgomery, Alabama?

74.    Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006, that virtually all the students taking courses at defendant were from the United States?

75.    Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006 that a majority of the students taking courses at defendant was from the Southern part of the United States?

76.    Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006, the defendant advertised its services using television?

77.    Did Dr. Turner or other person at defendant tell you that in 2006 most of its media advertising was in Alabama and Tennessee or was planned to be in those states?

78.    Dr. Turner has testified that he spoke to you on or about July 24, 2006.

79.    Did you speak to Dr. Turner on or about July 24, 2006, concerning possible names for the defendant?

80.    Did he call you?

81.    If so, did he tell you the reason he called you?

82.    What did he tell you the reason was that he called you?

83.    Did he say anything about the name Masters?

84.    What did he say to you about the name Masters?

85.    What did you say to him about the name Masters?

86.    Did you call him?

87.    If so, why did you call him?

88.    Did Dr. Turner tell you on or about July 24, 2006, that he wanted your opinion concerning the names Turner University, Regions University and Rex University?

89.    Did you discuss with him the kind of opinion that he was looking for?

90.    Did you tell him that there were different kinds of opinions that you could provide regarding the registerability of a name in the United States Patent and Trademark Office or the availability of a name for use in connection with an institution, service or product?

91.    Did you tell him that an opinion regarding the availability of an important name for an institution, service or product requires the evaluation of the uses or possible uses of other marks and names that might not be registered in addition to marks that are registered?

92.    Did you advise Dr. Turner on or about July 24, 2006, that you would provide an opinion that would evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Regions University by defendant?

93.    Did you advise Dr. Turner on or about July 24, 2006, that you would provide an opinion that would evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Rex University by defendant?

94.    Did you advise Dr. Turner on or about July 24, 2006, that you would provide an opinion that would evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Turner University by defendant?

95.    Did Dr. Turner indicate to you on or about July 24, 2006, that he understood that in your opinion you would evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Regions University by defendant?

96.    Did Dr. Turner indicate to you on or about July 24, 2006, that he understood that you would in your opinion evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Rex University by defendant?

97.    Did Dr. Turner indicate to you on or about July 24, 2006, that he understood that you would in your opinion evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Turner University by defendant?

98.   Did you advise Dr. Turner on or prior to July 27, 2006, that a person might successfully object to the use of the name Regions University based on a claim that the name Regions University when used by defendant in connection with its business or services would be likely to cause confusion?

99.   Did you explain to Dr. Turner on or prior to July 27, 2006, that the standard for trademark infringement is likelihood of confusion as to source, sponsorship, or affiliation?

100.  Did you advise Dr. Turner on or prior to July 27, 2006, that mark or name can be infringed by the use of another similar name or mark even where the services or products that are identified by the similar marks are not competitive?

101.  Did you advise Dr. Turner on or prior to July 27, 2006, that a person could object to the use of the name Regions University based on a claim that the name Regions University when used by defendant in connection with its business or services would be likely to cause confusion?

102.  Did you advise Dr. Turner on or prior to July 27, 2006, that a person might object to the use of the name Regions University based on a claim that the name Regions University when used by defendant in connection with its business or services would be likely to cause confusion?

103.  Did Dr. Turner tell you on or prior to July 27, 2006, that he wanted to have an opinion concerning the registerability of the names Turner University, Regions University and Rex University for educational services or other products or services?

104.  On or about July 24, 2007, when you spoke to Dr. Turner, did he mention the name "Regions" used in connection with a bank or other financial institution?

105.  Did he tell you the reason he mentioned the name Regions?

106.  What did he tell you?

107.  Did you ask for the reason that he mentioned in your discussion with him on or about July 24, 2007, the name Regions used by a bank or other financial institution?

108.  If so what did you ask him?

109.  Did he respond to you question?

110.  What was his response?

111.  Did you advise Dr. Turner on or about July 24, 2007, that you were not aware of Regions bank or other financial institution using the name Regions?

112.  Did Dr. Turner tell you that Regions was one of the most prominent banks in Montgomery?

9

113.   Did Dr. Turner tell you that Regions was one of the most prominent banks in Alabama?

114.   Did Dr. Turner tell you that Regions was one of the largest financial institutions in the United States?

115.   Did Dr. Turner tell you that he had an account with Regions for years?

116.   Did Dr. Turner tell you that there were scores of Regions bank branches in Montgomery, Alabama?

117.   Did Dr. Turner tell you that Regions signs were prominent on one or more of the largest buildings in Montgomery?

118.   Did Dr. Turner tell you that Regions regularly advertised on television in the Montgomery market?

119.   Did Dr. Turner tell you that Regions regularly promoted its services under the Regions name and mark in magazines, newspapers, billboards or other media in the Montgomery area?

120.   Did Dr. Turner tell you that everyone at defendant knew of Regions bank?

121.   Did Dr. Turner tell you that he was aware of the announcement prior to July 24, 2006, of the announced merger of Regions bank with AmSouth bank?

122.   Did you ask Dr. Turner anything about Regions after he had mentioned the name Regions for a bank or other financial institution?

123.   If so, what did you ask Dr. Turner?

124.   What was Dr. Turner's response?

125.   When Dr. Turner mentioned to you Regions Bank on or before July 27, 2006, did he ask your opinion whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

126.   If so, did you advise Dr. Turner on or before July 27, 2006, that you would have to conduct any investigation or conduct any kind of search before you provided Dr. Turner or defendant with an opinion as to whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

127.   Did you tell Dr. Turner on or before July 27, 2006, the kind of search or investigation that you would have to conduct or have conducted before you provided Dr. Turner or defendant with an opinion as to whether Regions bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

128.   Did you ever conduct or have conducted prior to August 18, 2006, the kind of search investigation that would be appropriate for you to provide Dr. Turner or defendant with

an opinion as to whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

129.   If so, please identify the search or investigation that you conducted or had conducted on or before August 2, 2006, that would be appropriate for you to have rendered an opinion as to whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant.

130.   Did you ever provide prior to August 18, 2006, Dr. Turner or other person at defendant an opinion whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

131.   If the answer to question 130 is yes, please state whether the opinion was written or oral.

132.   If the answer to question 130 is yes, please state when you provided such an opinion.

133.   If the answer to question 130 is yes, please identify any document that refers or relates to an opinion that you provided on or before August 18, 2006, concerning whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant.

134.   At any other time prior to August 18, 2006, did Dr. Turner or other person at defendant ask you to provide an opinion whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

135.   If so, did you advise Dr. Turner or other person at defendant of the appropriate kinds of searches and/or investigations that would have to be conducted in order for you to provide Dr. Turner or another person at defendant with an opinion as to whether Regions Bank or its name and mark Regions posed a risk in the adoption and use of the name Regions University by defendant? And if so, what did you tell Dr. Turner or another person at defendant concerning the appropriate kinds of searches and/or investigations that would have to be conducted?

136.   After Dr. Turner advised you of Regions Bank on or about July 24, 2006, did you suggest to Dr. Turner that it might be advisable to determine whether the mark Regions, Regions Bank or other Regions mark used by the bank was registered in the United States Patent and Trademark Office?

137.   Did you have any discussions with Dr. Turner or anyone else at defendant prior to August 18, 2006, concerning the advisability of determining whether Regions, Regions Bank or other Regions mark used by Regions Bank was registered in the United States Patent and Trademark Office?

138.   If you had such a discussion, when did the discussion occur?

139.   If you had such a discussion, what did you tell Dr. Turner or the other person at defendant?

11

140.   What did Dr. Turner or the other person at defendant tell you?

141.   Did you suggest to Dr. Turner or any other person at Regions that it might be advisable to have an investigation concerning the use by Regions Bank of the mark Regions?

142.   If you had such a discussion, when did the discussion occur?

143.   If you had such a discussion, what did you tell Dr. Turner or the other representative of Regions?

144.   What did Dr. Turner or the representative of defendant tell you?

145.   Did Dr. Turner on or before July 27, 2006, mention any entities in addition to Regions Bank that used the word "Regions" in its name or for a mark for a service or product?

146.   If so, identify the entities and the names or marks that Dr. Turner mentioned?

147.   State what Dr. Turner told you about each entity and mark that you identify in response to the foregoing question.

148.   Did Dr. Turner mention any other entities that might use, register or have applied for the name Regions in connection with his request to you for an opinion concerning the registerability of the name Regions University?

149.   If so, what other entities did he mention?

150.   Did Dr. Turner mention to you that he had conducted his own search of the records of the United States Patent and Trademark Office concerning the name Regions University?

151.   If so, did Dr. Turner advise you of the results of a search of the records of the United States Patent and Trademark Office concerning the name Regions University?

152.   If Dr. Turner told you that he had conducted his own search concerning Regions University in the records of the United States Patent and Trademark Office, did Dr. Turner tell you that he had retained copies of the results of any such search?

153.   Did you ask him for the results of any such search?

154.   Did Dr. Turner offer to share with you the results of his search of the records of the United States Patent and Trademark Office concerning the name Regions University?

155.   On or about July 26, 2006, did Dr. Turner mention any names of third parties who might use the name "Turner" or "Rex"?

156.   Did you advise Dr. Turner that the word "Regions" was descriptive of a university?

157.   Did you discuss with Dr. Turner whether the word "Regions" was descriptive of a university?

158.  What did you tell Dr. Turner, if anything, on or prior to July 27, 2006, concerning whether the word "Regions" was descriptive of the name of a university?

159.  If you told Dr. Turner that the word "Regions" might be descriptive of a university on or prior to July 27, 2006, did Dr. Turner indicate any concern whether the mark Regions University might be registrable on the United States Patent and Trademark Office?

160.  If so, what did Dr. Turner say?

161.  Did you offer to Dr. Turner to provide any opinion directed to whether the name Regions University was descriptive of a university?

162.  Did Dr. Turner or other person at defendant ever ask you prior to August 18, 2006, whether the name Regions University was descriptive of a university?

163.  Do you have or have you seen any document that refers or relates to any discussion or communication with anyone at defendant concerning whether the name Regions University was descriptive of a university? If so, identify such documents.

164.  Let me direct your attention to Exhibit 28. Is this an e-mail that you sent to Dr. Rex Turner on July 27, 2006?

165.  The first sentence of the e-mail is "Pursuant to your request, we conducted searches of the United States Patent and Trademark Office (USPTO) records in an effort to determine registrability of each of the above identified marks [Turner University, Rex University and Regions University], for use in association with educational services at the post-secondary level." Is that correct?

166.  Did Dr. Turner ask you to conduct search of the United States Patent and Trademark Office records regarding the Turner University, Rex University and Regions University marks?

167.  Was that request made by Dr. Turner on July 24, 2006?

168.  Did he ask you to search only the United States Patent and Trademark Office records?

169.  Had you previously discussed with Dr. Turner that there are other records that are available to search for trademarks and names that do not appear on the records of the United States Patent and Trademark Office?

170.  If so, what did you tell Dr. Turner about these other records?

171.  Did you tell Dr. Turner that there are trademark search firms that, for a fee, search other records for names and trademarks that might be in use that do not appear in the United States Patent and Trademark Office records as well as the records of the United States Patent and Trademark Office?

172. Did you tell him that the cost of a search of marks and names that are not registered in addition to marks that appear on the United States Patent and Trademark Office's database is more expensive than a search on the United States Patent and Trademark Office database alone?

173. Did you tell him that your evaluation of a search of marks that are not registered in addition to marks that appear on the United States Patent And Trademark Office's database would be more expensive than a search on the United States Patent and Trademark Office database alone?

174. Did you tell Dr. Turner that where an entity is seeking to adopt a name or mark that is important to it that generally it orders a search report from a company like Thomson CompuMark that shows the results of searches of names and marks potentially relevant to an evaluation of the availability or registrability of a mark or name from records indicating use in addition to United States Patent and Trademark Office records (such search reports hereafter a "Full Search")?

175. Is Exhibit 500 an example of a Full Search?

176. Did you discuss with Dr. Turner the differences between a Full Search and a search of the United States Patent and Trademark Office records by you or your firm?

177. If so, what did you tell him about the costs of conducting three Full Searches?

178. What did you tell him about the effect on your fees to evaluate three Full Searches?

179. What did you tell him about the time that a Full Search would take?

180. What did you tell him about the costs of obtaining an expedited Full Search?

181. What did you tell him about the time that Full Searches and an opinion based on Full Searches take?

182. What else did you tell him about the differences between a Full Search and a search of the United States Patent and Trademark Office records by you or your firm?

183. Did you discuss with Dr. Turner on or before July 27, 2006, the benefits of using a trademark search firm to search other records for names and trademarks that might be in use that do not appear in the United States Patent and Trademark Office?

184. What did you discuss with Dr. Turner concerning the use of a trademark search firm for an availability search?

185. Did Dr. Turner ask you the alternatives to having your firm conduct searches of the United States Patent and Trademark Office records?

186. Did you discuss with Dr. Turner any alternatives to having your firm conduct searches of the United States Patent and Trademark Office records?

14

187.  What was your discussion with Dr. Turner concerning such alternatives? What did you say to him? What did he say to you?

188.  Had you previously discussed with Dr. Turner before July 27, 2006, that you would not be searching records other than the records of the United States Patent and Trademark Office?

189.  Did you explain to Dr. Turner your reasons to limit your search to the records of the United States Patent and Trademark Office?

190.  What was your explanation to Dr. Turner of your reasons to limit your search to the records of the United States Patent and Trademark Office?

191.  Did Dr. Turner agree that you should limit your search to the records of the United States Patent and Trademark Office?

192.  What did Dr. Turner say about your search being limited to the records of the United States Patent and Trademark Office?

193.  Did you advise Dr. Turner and defendant in your e-mail, Exhibit 28, concerning the registrability of each of the marks Turner University, Rex University and Regions University?

194.  Is it correct that when you advised Dr. Turner and defendant in your e-mail, Exhibit 28, concerning the registerability of the marks Turner University you were advising Dr. Turner and defendant of your opinion of the likelihood that the United States Patent and Trademark Office might refuse an application by defendant to register the mark Turner University based on the marks appearing on the register of the United States Patent and Trademark Office?

195.  Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that you were advising Dr. Turner and defendant of your opinion of the likelihood that the United States Patent and Trademark Office might refuse an application by defendant to register the mark Turner University based on the marks appearing on the register of the United States Patent and Trademark Office?

196.  If the answer to the prior question is yes, explain the basis of your belief.

197.  If the answer to question 195 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

198.  Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would object to defendant's application to register the mark Turner University?

199.  Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the

likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would object to defendant's application to register the mark Turner University?

200.    If the answer to the prior question is yes, explain the basis of your belief.

201.    If the answer to question 199 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

202.    Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would seek to oppose defendant's application to register the mark Turner University?

203.    Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would seek to oppose defendant's application to register the mark Turner University?

204.    If the answer to the prior question is yes, explain the basis of your belief.

205.    If the answer to question 203 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

206.    Is it correct that, your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would be able to successfully oppose defendant's application to register the mark Turner University?

207.    Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would be able to successfully oppose defendant's application to register the mark Turner University?

208.    If the answer to the prior question is yes, explain the basis of your belief.

209.    If the answer to question 207 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

210.    Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would be able to successfully enjoin defendant's use of the name Turner University as the name of its institution?

211.    Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail

would be able to successfully enjoin defendant's use of the name Turner University as the name of its institution?

212.   If the answer to the prior question is yes, explain the basis of your belief.

213.   If the answer to question 211 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

214.   Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that anyone who uses a mark or name which does not appear in the records of the Patent and Trademark Office would be able to successfully enjoin defendant's use of the name Turner University as the name of its institution?

215.   Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that anyone who uses a mark or name which does not appear in the records of the Patent and Trademark Office would be able to successfully enjoin defendant's use of the name Turner University as the name of its institution?

216.   If the answer to the prior question is yes, explain the basis of your belief.

217.   If the answer to question 215 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

218.   Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that someone could seek to oppose the application to register the name Regions University as the name of the institution?

219.   Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that someone could seek to oppose the application to register the name Regions University as the name of the institution?

220.   If the answer to the prior question is yes, explain the basis of your belief.

221.   If the answer to question 219 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

222.   Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that someone would be able to successfully enjoin defendant's use of the name Regions University as the name of its institution?

223.   Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that someone would be able to successfully enjoin defendant's use of the name Regions University as the name of its institution?

224.   If the answer to the prior question is yes, explain the basis of your belief.

225.  If the answer to question 222 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

226.  Did you discuss with Dr. Turner the limits of your opinion prior to sending your email, Exhibit 28?

227.  When did you have such a discussion with Dr. Turner?

228.  What did you tell Dr. Turner concerning the limits of the opinion that you would give? What did Dr. Turner say to you?

229.  Were you satisfied that Dr. Turner understood the limits of the opinion that you would be giving?

230.  What made you believe that Dr. Turner understood the limits of the opinion that you would be giving?

231.  Did you discuss with Dr. Turner the limits of the scope of your opinion any time on or after July 27, 2006 but before August 18, 2006?

232.  What did you tell Dr. Turner concerning the limits of the opinion that you gave?

233.  What did Dr. Turner say to you?

234.  Were you satisfied that Dr. Turner understood the limits of the opinion that you gave?

235.  What made you believe that Dr. Turner understood the limits of the opinion that you gave?

236.  Did you advise Dr. Turner on or after July 27, 2006, but before August 18, 2006, that you were not providing him or defendant with an opinion that assessed the availability of the name Regions University for use by defendant as the name of its institution?

237.  If so, when did you provide Dr. Turner this advice?

238.  What did you tell Dr. Turner?

239.  What did he say to you?

240.  Did Dr. Turner ask you at any time prior to August 18, 2006 for an opinion that assessed the availability of the name Regions University for use by defendant as the name of its institution?

241.  Did anyone on behalf of defendant ever ask you prior to August 18, 2006 for an opinion that assessed the availability of the name Regions University for use by defendant as the name of its institution?

242.  Who asked you for such an opinion?

243. When did that person ask you for such an opinion?

244. What did that person say to you concerning such an opinion?

245. What did you say to that person concerning such an opinion?

246. Do you have any notes, diary entries or other documents concerning any discussions you might have had with Dr. Turner or anyone else representing defendant concerning the scope of or limits to the opinion appearing in your email Exhibit 28.

247. I direct your attention to the document beginning with bates no. RU3645 and its attachments that end with bates no. RU 3683, and that have been marked as Exhibit 501. Is this the "full report, including copies of the references developed" referenced in Exhibit 28?

248. What do you mean by "references developed" in Exhibit 28?

249. Is it correct that the only mark appearing in Exhibit 501 that contained the name "Regions" was the mark Regions Charity Classic, in International Class 41.

250. The Regions Charity Classic mark is shown in the reference on page bates no. RU 3672 in Exhibit 501 as owned by plaintiff Regions Asset Company?

251. Does International Class 41 include educational services?

252. Did you advise Dr. Turner or anyone at defendant of the mark Regions Charity Classic at any time before August 18, 2006?

253. If so, did you tell Dr. Turner or anyone at defendant that the Regions Charity Classic mark was the only reference developed in your search of the United States Patent and Trademark Office that was for a mark that contained the word "Regions"?

254. If so, did you tell Dr. Turner or anyone at defendant that the Regions Charity Classic mark was in the same class of goods or services as educational services?

255. What did you tell Dr. Turner or anyone at defendant concerning the mark Regions Charity Classic?

256. Did you discuss with Dr. Turner or anyone else at defendant that the mark Regions Charity Classic was for a service provided by Regions Bank?

257. Let me direct your attention to the references that are a part of Exhibit 501, each of the references is for a mark that is, or was, the subject of an application to register or a registration in the United States Patent and Trademark Office in International Class 41 or contained the word "online" or the word "education" in the description of its goods or services. Is this correct?

258.  Were the search criteria employed for the Regions University search limited to references for a mark that is, or was, the subject of an application to register or a registration in the United States Patent and Trademark Office in International Class 41 or contained the word "online" or the word "education" in the description of its goods or services?

259.  Were there any other search criteria used for the Regions University search in the United States Patent and Trademark Office records?

260.  If so, what were the other criteria employed in your search for Regions University?

261.  Did you discuss on or prior to July 27, 2006 with Dr. Turner or any one else at defendant the limited criteria that would be used for the Regions University search?

262.  What did you tell Dr. Turner or another person at defendant concerning the search criteria that would be used for the Regions University search?

263.  What was the response of Dr. Turner or other person at the defendant concerning the search criteria that would be used for the Regions University search?

264.  Did you discuss on or after July 27, 2006 and prior to August 18, 2006 with Dr. Turner or any one else at defendant the limited criteria that would be used for the Regions University search?

265.  What did you tell on or after July 27, 2006 and prior to August 18, 2006 Dr. Turner or another person at defendant concerning the search criteria that were used for the Regions University search?

266.  What was the response on or after July 27, 2006 and prior to August 18, 2006 of Dr. Turner or other person at the defendant concerning the search criteria that were used for the Regions University search?

267.  Did you tell Dr. Turner prior to July 27, 2006, that the Regions University search would not include all the marks appearing in the records of the United States Patent and Trademark Office that contained the word "Regions"?

268.  Did you tell Dr. Turner prior to July 27, 2006, that the Regions University search would not reveal any marks appearing in the records of the United States Patent and Trademark Office containing the word "Regions" but not registered in International Class 41 and whose description of goods or services did not include either the word "online" "education"?

269.  Did you tell Dr. Turner on or after July 27, 2006, but before August 18, 2006, that the Regions University search did not include all the marks appearing in the records of the United States Patent and Trademark Office that contained the word "Regions"?

270.  Did you tell Dr. Turner on or after July 27, 2006, but before August 18, 2006, that the Regions University search did not reveal any marks appearing in the records of the United States Patent and Trademark Office containing the word "Regions" that was not

registered in International Class 41 or whose description of goods or services did not include either the word "online" or "education"?

271.    Did Dr. Turner or anyone else at defendant ask you prior to August 18, 2006, to perform a more complete search than the search that developed the references in Exhibit 28?

272.    Did Dr. Turner or anyone else at defendant ask you prior to August 18, 2006, to provide a broader opinion than the one contained in Exhibit 28?

273.    Are Exhibit 28 and Exhibit 501 the only documents that you have in your possession or control that refer or relate to your discussions with Dr. Turner and others at defendant concerning the change of the defendant's name?

274.    Did you ever send Exhibit 501 to defendant?

275.    Did you on or after July 27, 2006, discuss with Dr. Turner or someone else at defendant about sending Exhibit 501 to defendant?

276.    When did you have that discussion?

277.    With whom did you have that discussion?

278.    Was there a decision made by Dr. Turner or someone else at defendant that you should not send Exhibit 501 to defendant?

279.    Were you told the reason that Exhibit 501 should not be sent to defendant?

280.    What was the reason that you were told that Exhibit 501 was not to be sent to defendant?

281.    Does your e-mail Exhibit 28 advise Dr. Turner that Regions University is merely descriptive and not registrable on the Principal Register of the United States Patent?

282.    Prior to July 27, 2006, did you ever discuss with Dr. Turner whether the name Regions University was merely descriptive?

283.    If so, did you tell Dr. Turner or any one else at defendant that Regions University was merely descriptive and would not be registrable on the Principal Register of the United States Patent and Trademark Office?

284.    Did you ever advise Dr. Turner or any one else at defendant prior to August 18, 2006, that Regions University was merely descriptive?

285.    Did you memorialize in any form a discussion with or advice that you gave to defendant prior to August 18, 2006, that the name Regions University was merely descriptive?

286.    Is Exhibit 502, notes of a telephone conversation by you or a partner at your law firm concerning a discussion on July 28, 2006?

287.    Whose notes are shown in Exhibit 502.

288.    Are these the notes of the person at your firm having the discussion on July 28, 2006?

289.    Were these notes made on July 28, 2006?

290.    Was the discussion with Dr. White who was calling on behalf of defendant?

291.    Did this discussion concern defendant's adoption of the name Regions University?

292.    Does the "REGIONS UNIVERSITY" noted in Exhibit 502 refer to the Regions University of Regions Bank?

293.    Did Dr. White advise you or a partner of your firm that the Board of Regents of defendant had approved the adoption of Regions University as the defendant's name the day before on July 27, 2006?

294.    Did you have a discussion with anyone on July 28, 2006, concerning Regions Bank's Region University?

295.    If so, whom did you have a discussion with concerning Regions Bank's Regions University?

296.    Did that person tell you that Regions Bank uses the name Regions University?

297.    Did that person tell you that Regions Bank was the largest bank in Alabama?

298.    Did that person tell you that Regions Bank was one of the largest banks in Alabama?

299.    Did that person tell you that Regions Banks was one of the largest banks in the United States?

300.    Did that person tell you that Regions Bank was the largest bank in Montgomery?

301.    Did that person tell you that Regions Bank was one of the largest banks in Montgomery? Did you conduct any investigation or have an investigation conducted to determine how large Regions Bank was either in Montgomery, Alabama or the United States?

302.    Did you hire an investigator to determine the extent of use of the name Regions University or whether Regions University was used as s recruiting tool by Regions bank?

303.    Did you call, or someone on your behalf call, Regions bank to find out the extent of use of the name Regions University or whether Regions University was used as a recruiting tool by Regions bank?

304.    If so, when was the call made?

305.    Who made the call and what was learned about Regions University?

306.    Did you ask defendant if it conducted an investigation into the use of Regions University by Regions bank?

307.    If so, did defendant tell you the results of its investigation?

308.    What did defendant tell you about Regions University?

309.    What did defendant tell you of the investigation that it conducted?

310.    When you spoke with Dr. White on July 28, 2006, did you provide him any advice concerning whether the Regions University name of Regions bank posed any risk in the adoption or use of Regions University by defendant?

311.    Did you provide Dr. White advice on July 28, 2006, concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of Regions University by defendant?

312.    Did you base the advice you gave Dr. White on July 28, 2006 concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of Regions University by defendant any trademark search or other investigation you conducted or that was conducted on your behalf?

313.    Did you provide defendant with a legal opinion prior to August 18, 2006 concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of the Regions University name by defendant?

314.    If the answer to question no. 313 is yes, what is the legal opinion that you provided to defendant?

315.    If the answer to question no. 313 is yes, when did you provide a legal opinion and to whom did you provide such legal opinion?

316.    If the answer to question no. 313 is yes, is the opinion you gave in writing or memorialized in anyway?

317.    If the answer to question no. 313 is no, did you explain to defendant that you were not providing defendant a legal opinion as to the risk posed by the use of Regions University name by Regions Bank?

318.    In Exhibit 502, the document says "Get on File, soon." Does this mean that defendant wanted you to file an application to register the name Regions University for them soon?

319.    If "Get on File, soon," means something else what does it mean?

320.    In Exhibit 502, what does "3 Brochures by tomorrow" refer to?

321.    Did the "3 Brochures" refer to specimens of use of the "Regions University" name

322.    Were the "3 Brochures" to be used for a trademark application for "Regions University" based on use of the Regions University name?

323. Did defendant intend to get to your firm "3 Brochures" that referred to "Regions University" on July 28, 2006 for a trademark application?

324. Exhibit 502 states "File PRESS today." Does that refer to defendant's intention to announce the adoption of the name Regions University by a press release on July 28, 2006?

325. After July 28, 2006, and before August 18, 2006, did you have any discussions with Dr. Turner, or Dr. White or any other person at defendant concerning the use by Regions bank of the Regions name or mark, including Regions University, Region Charity Classic or Regions Bank?

326. When did you have such discussion?

327. Who were the persons involved in any of those discussions?

328. Were those discussions memorialized in any way or referred to in any document?

329. Please identify all such documents.

330. Did you have any discussions with Dr. Turner or another person at defendant concerning Exhibit 34 or any draft of Exhibit 34 prior to the dissemination of Exhibit 34?

331. Did Dr. Turner or another person at defendant solicit your comments concerning Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

332. What explanation, if any, did Dr. Turner or another person at defendant give for soliciting your comments concerning Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

333. What, if any, comments did you have with Dr. Turner or another person at defendant concerning the Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

334. When Dr. Turner spoke to you on or about July 24, 2006, did he indicate when he would like your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

335. If so, when did he say it would like to obtain your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

336. Did Dr. Turner give you a reason for the time he would like to obtain your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

337. When Dr. Turner spoke to you on or about July 24, 2006, did he indicate whether there was any urgency in obtaining your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

338.    If so, what did he say about the urgency of obtaining your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

339.    Had you spoken with Dr. Turner prior to July 24, 2006, concerning the name Regions University?

340.    Had you spoken with Dr. Turner or any one else at defendant prior to July 24, 2006, concerning the name or mark Regions?

341.    Had you spoke with Dr. Turner prior to July 24, 200t, concerning Regions bank or any Regions marks used by Regions Bank?

342.    Had you spoken with anyone in addition to Dr. Turner prior to July 24, 2006, concerning the name Regions University?

343.    Had you spoken with anyone in addition to Dr. Turner or any one else at defendant prior to July 24, 2006, concerning the name or mark Regions?

344.    Had you spoke with anyone in addition to Dr. Turner prior to July 24, 200t, concerning Regions bank or any Regions marks used by Regions Bank?

345.    Did Dr. Turner indicate any time on or before July 27, 2006, that he preferred any one of the three names Turner University, Rex University, or Regions University over the other?

346.    What name was that?

347.    What did Dr. Turner say that indicated that he had a preference for that name over the other names?

348.    Did you have any discussions with Dr. Turner concerning the change of the name of the defendant after August 2, 2006 (other than discussions concerning the description of goods or services in any Regions University trademark application)?

349.    If so when did you have such discussions?

350.    What was the subject matter of those discussions?

351.    Were those discussions memorialized in any way?

# EXHIBIT "A"

## to

## MOTION TO COMPEL DISCOVERY AND COMPLIANCE WITH ORDER OF COURT

**Notice of Deposition Upon Written Questions**
**Daniel Earle**
**and**
**Plaintiffs' Written Deposition Questions**
**to Daniel Earle**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

|  |  |  |
|---|---|---|
| REGIONS ASSET COMPANY,<br>REGIONS FINANCIAL CORPORATION,<br>and REGIONS BANK | )<br>)<br>) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 2:06-cv-882-MHT |
|  | ) |  |
| REGIONS UNIVERSITY, INC. | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## <u>NOTICE OF DEPOSITION UPON WRITTEN QUESTIONS</u>

PLEASE TAKE NOTICE that pursuant to Rule 31 of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition upon written questions of Daniel Earle of the law

firm Shlesinger, Arkwright & Garvey LLP, 1420 King Street, Suite 600, Alexandria, VA 22314,

on Wednesday, August 15, 2007, at 9:00 AM at Steptoe & Johnson LLP, 1330 Connecticut

Avenue, NW, Washington, DC 20036. The questions for the Deposition Upon Written

Questions appear in the accompanying Plaintiffs' Written Deposition Questions to Daniel Earle.

NOTICE IS FURTHER GIVEN THAT the deposition will be transcribed by a certified

court reporter and notary public or such other person authorized to administer oaths under the

laws of the United States designated by L.A.D. Reporting, 1100 Connecticut Avenue, NW, Suite

850, Washington, DC, 20036.

Dated: August 3, 2007

One of the Attorneys for Plaintiffs, Regions
Asset Company, Regions Financial
Corporation and Regions Bank

OF COUNSEL:

Charles B. Paterson (PAT018)
Paul A. Clark (CLA076)
Balch & Bingham LLP
105 Tallapoosa Street, Suite 200
P.O. Box 78 (36101-0078)
Montgomery, AL 36104
Tel: (334) 269-3143

William G. Pecau, Esq. (DC Bar # 478341)
Rachel M. Marmer, Esq. (DC Bar # 489606)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF DEPOSITION UPON WRITTEN QUESTIONS AND QUESTIONS FOR THE DEPOSITION UPON WRITTEN QUESTIONS on counsel for Defendant by overnight courier on this 3rd day of August, 2007 properly addressed to them:

Victor T. Hudson
William W. Watts, III
Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601-0989

James E. Shlesinger
Shlesinger, Arkwright & Garvey LLP
1420 King Street
Suite 600
Alexandria, Virginia 22314

-3-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION and REGIONS BANK | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 2:06-cv-882-MHT |
| | ) | |
| v. | ) | |
| | ) | |
| REGIONS UNIVERSITY, INC. | ) | |
| | ) | |
| Defendant. | | |

## PLAINTIFFS' WRITTEN DEPOSITION QUESTIONS TO DANIEL EARLE

### DIRECTIONS AND GUIDELINES

Written deposition questions under Rule 31 of the Federal Rules of Civil Procedure follow. Your answers to these questions are under oath as if you were testifying in person. Answer the questions to the best of your abilities. If you do not know an exact date, number or quantity, please provide your best approximation.

As used in these questions, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these questions any matter which might otherwise be construed to be outside of their scope.

As used in these questions, "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these questions any information which might otherwise be construed as outside their scope.

As used in these questions, "defendant" means the defendant in this action and its predecessors.

Other terms having particular meanings are defined below.

The following questions do not refer to any discussions with defendant or any of its representatives after August 18, 2007.

Attached to the accompanying Plaintiffs' Written Questions to James Shlesinger are the exhibits that will be referenced in the questions below.

QUESTIONS

1.    Are you Daniel Earle?

2.    Are you employed by the law firm of Shlesinger, Arkwright & Garvey LLP?

3.    Are your offices located at 1420 King Street, Suite 600, Alexandria, VA 22314?

4.    Are you an attorney?

5.    In what states are you licensed to practice law?

6.    Have you ever been disbarred, suspended from the practice of law or subject to a bar disciplinary proceeding prior to August 18, 2006?

7.    If so, did you disclose such disbarment, suspension or bar disciplinary proceeding to defendant prior to August 18, 2006?

8.    If so, what did you tell the defendant concerning such disbarment, suspension or disciplinary proceeding?

9.    Whom at the defendant did you tell this to?

10. When did you tell defendant this?

11. Prior to August 18, 2006, were you ever sued for malpractice concerning a trademark opinion or advise that you have provided?

12. If so, what was the result of that suit?

13. Prior to August 18, 2006, did you advise Dr. Turner, Dr. White or someone else at defendant of such lawsuit(s) and/or the result(s) of such lawsuit(s)?

14. If so, when did you advise Dr. Turner, Dr. White or someone else at defendant of such lawsuit(s) or their result(s)?

15. What did you tell Dr. Turner, Dr. White or someone else at defendant of such lawsuit(s) or their result(s)?

16. Whom did you tell at defendant of such lawsuit(s) or their result(s)?

17. Do you understand the above Directions and Guidelines?

18. If you do not, please identify each of the Directions and Guidelines that you do not understand and reasons for your difficulty in understanding such Direction or Guideline.

19. In answering the questions posed to you today will you follow the above Directions and Guidelines?

20. If not, please identify each Direction and Guideline that you do not intend to follow and state the reasons that you will not follow it.

21. Are you represented in this deposition by counsel?

22. Is your counsel present while these questions are being asked?

23. What is the name of your counsel?

24. Have you brought any papers or other documents with you to this deposition?

25. If you have, please hand the documents to the reporter to be marked as exhibits, and, once they have been marked, answer the following questions for each such document:

    a.    What is the date, or if not known, to the best of your ability the approximate date, the document was prepared?

    b.    What other dates appear on the documents and for each date state the apparent event that that date represents?

    c.    To whom is the document addressed?

    d.    By whom was it prepared?

e.     When did you first become aware of this document?

f.     How did this document come to your attention?

g.     What was your purpose in bringing the document to this deposition?

h.     Was this document or its contents communicated to defendant?

i.     If so, when did such communication occur?

26.    Did you discuss with Dr. Turner or other person at defendant[1] any time prior to July 24, 2006, an initial refusal of the application to register the mark Masters on the Principal Register, Ser. No. 78/775,959, of the United States Patent and Trademark Office in an Office Action dated June 22, 2006 (the "Masters Application").

27.    Is Exhibit 26 a copy of the Office Action for the Masters Application (the "Office Action") that you discussed with Dr. Turner or other person at defendant?

28.    When was the first time you spoke to Dr. Turner or other person at defendant concerning an initial refusal of the Masters Application?

29.    Did you discuss with Dr. Turner or some other person at defendant that the only basis for the refusal of the Masters Application was the Examiner's claim that the Masters mark was merely descriptive?

30.    Did you explain to Dr. Turner or other person at defendant what a merely descriptive mark is?

31.    What did you tell him a merely descriptive mark was?

32.    Did you advise Dr. Turner or some other person at defendant that you thought the initial refusal of the Masters Application based on mere descriptiveness of the Masters mark might be overcome?

33.    Did you tell Dr. Turner or some other person at defendant the likelihood that the initial refusal of the Masters Application based on mere descriptiveness of the Masters mark might be overcome?

34.    If so, what did you tell Dr. Turner or some other person at defendant of defendant's chances of overcoming the initial refusal of the Masters Application by the Examiner based on descriptiveness?

---

[1] When a reference is made to "other person at defendant" or an equivalent reference that is meant to include any employee, director, or officer of defendant and any consultant representing defendant such as Dr. White.

35.    The Office Action states "The examining attorney has searched the office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d)." Is that correct?

36.    Did you advise or discuss with Dr. Turner that the meaning of the above statement was that the Examiner was not aware of any other marks registered or the subject of a prior application in the United States Patent and Trademark Office that would in the Examiner's opinion bar the registration of the Masters University mark by defendant?

37.    Did you advise or discuss with Dr. Turner, Dr. White or another person at defendant that if the mere descriptiveness initial refusal was overcome the Masters University mark would be passed on to publication in the *Official Gazette*?

38.    Did you advise or discuss with Dr. Turner, Dr. White or another person at defendant that even if the Masters University mark was passed by the Examiner on to publication in the Official Gazette that the Masters Application could be opposed and ultimately denied based on a claim by another person that the Masters University mark was so similar to its mark or name and is for such related goods or services that confusion would be likely?

39.    Did you advise or discuss with Dr. Turner, Dr. White or another person at defendant that even if the Masters University mark was registered the registration could be cancelled based on a proceeding brought by someone who claimed that the Masters University was so similar to its mark or name and is for such related goods or services that confusion would be likely?

40.    Did you explain to Dr. Turner, Dr. White or another person at defendant that even if the Masters Application was registered or passed the examination process another person without a registration or application in the United States Patent and Trademark Office could object and seek to enjoin use of the name Masters University based on prior use of a confusingly similar name or mark?

41.    In your discussion with Dr. Turner, Dr. White or another person at defendant concerning the possible adoption of the Masters University name was the name Masters College of Bible brought up?

42.    Did Dr. Turner, Dr. White or another person at defendant mention it?

43.    Did Dr. Turner, Dr. White or another person at defendant mention it in response to anything you said?

44.    What did you say that prompted Dr. Turner, Dr. White or another person at defendant to mention Masters College of Bible?

45.    Did Dr. Turner, Dr. White or another person at defendant tell you that he was aware of Masters College of Bible from the beginning of his consideration of the Masters University name?

46.    How long did he tell you he was aware of the Masters College of Bible name?

47.   Did you ask him how long he was aware of the Masters College of Bible name?

48.   Did Dr. Turner, Dr. White or another person at defendant tell you that he had not been concerned with the Masters College of Bible name?

49.   Did Dr. Turner, Dr. White or another person at defendant explain to you why he was not concerned with the Masters College of Bible name?

50.   What was his explanation for his absence of concern with the Masters College of Bible name?

51.   Did you ask Dr. Turner, Dr. White or another person at defendant what he knew and/or how he knew of Masters College of Bible?

52.   What did he say?

53.   Did you ask Dr. Turner, Dr. White or another person at defendant if he knew if the name Masters College of Bible was in use?

54.   What did he say?

55.   Did you ask him where the Masters College of Bible was located?

56.   What did he say?

57.   Did you ask Dr. Turner, Dr. White or another person at defendant if defendant had conducted any investigation into the use of Masters College of Bible?

58.   Did you express any concern to Dr. Turner, Dr. White or another person at defendant that the use of Masters College of Bible might affect the availability of the Masters University name for use by defendant?

59.   What concern did you express to Dr. Turner, Dr. White or another person at defendant arising out of the possible use of the name Masters College of Bible?

60.   Did you explain to Dr. Turner, Dr. White or another person at defendant that defendant's use of Masters University might infringe the Masters College of Bible name?

61.   Did you advise Dr. Turner, Dr. White or another person at defendant that the Masters College of Bible name would prevent the use by defendant of the name Masters?

62.   Did you advise Dr. Turner, Dr. White or another person at defendant that the Masters College of Bible name might represent a risk to the adoption and use of the name Masters University by defendant?

63.   Did you advise Dr. Turner, Dr. White or another person at defendant that further investigation should be performed into the use of Masters University?

6

64. Did you advise Dr. Turner, Dr.White or another person at defendant that you would need more facts or an investigation or would have to consider further whether the Masters University name would be available for use by defendant?

65. Did Dr. Turner, Dr.White or another person at defendant request an opinion from you concerning the availability of the mark Masters University for use by defendant?

66. Did Dr. Turner, Dr.White or another person at defendant ask you to assess the risk posed by the Masters College of Bible name to defendant regarding its adoption and use of the Masters University name?

67. Did you ever evaluate the risk posed by the name Masters College of Bible to defendant in its adoption and use of the Masters University name?

68. Did you ever communicate to Dr. Turner or anyone else at defendant an opinion concerning the risk posed by the name Masters College of Bible to defendant in its adoption and use of the Masters University name?

69. If so, was that opinion provided in writing or memorialized in anyway?

70. Did you offer to conduct a search concerning the availability of the mark Masters University?

71. Did Dr. Turner or other person at defendant tell you on or prior to July 27, 2006, that defendant was headquartered in Montgomery, Alabama?

72. Did you ask Dr. Turner, Dr.White or another person at defendant on or prior to August 2, 2006, where defendant was headquartered?

73. On or prior to August 2, 2006, did you know that defendant was headquartered in Montgomery, Alabama?

74. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006, that virtually all the students taking courses at defendant were from the United States?

75. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006 that a majority of the students taking courses at defendant was from the Southern part of the United States?

76. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006, the defendant advertised its services using television?

77. Did Dr. Turner or other person at defendant tell you that in 2006 most of its media advertising was in Alabama and Tennessee or was planned to be in those states?

78. Did you speak to Dr. Turner, Dr. White or any other person at defendant before July 28, 2006 concerning the possible change of the defendant's name to Regions University?

79. Did you have any discussions with Dr. Turner or anyone else at defendant prior to August 18, 2006, concerning the advisability of determining whether Regions, Regions Bank or other Regions mark used by Regions bank was registered in the United States Patent and Trademark Office?

80. If you had such a discussion, when did the discussion occur?

81. If you had such a discussion, what did you tell Dr. Turner or the other person at defendant?

82. What did Dr. Turner or the other person at defendant tell you?

83. Did you suggest to Dr. Turner or any other person at Regions that it might be advisable to have an investigation concerning the use by Regions Bank of the mark Regions?

84. If you had such a discussion, when did the discussion occur?

85. If you had such a discussion, what did you tell Dr. Turner or the other representative of Regions?

86. What did Dr. Turner or the representative of defendant tell you?

87. Did Dr. Turner, Dr. White or other representative of defendant on or before July 28, 2006, mention any entities in addition to Regions Bank that used the word "Regions" in its name or for a mark for a service or product?

88. If so, identify the entities and the names or marks that Dr. Turner, Dr. White or other representative of defendant mentioned?

89. State what Dr. Turner, Dr. White or other representative of defendant told you about each entity and mark that you identify in response to the foregoing question.

90. Did Dr. Turner, Dr. White or other representative of defendant mention any other entities that might use, register or have applied for the name Regions in connection with his request to you for an opinion concerning the registerability of the name Regions University?

91. If so, what other entities did he mention?

92. Did Dr. Turner, Dr. White or other representative of defendant mention to you that he had conducted his own search of the records of the United States Patent and Trademark Office concerning the name Regions University?

93. If so, did Dr. Turner, Dr. White or other representative of defendant advise you of the results of a search of the records of the United States Patent and Trademark Office concerning the name Regions University?

94.    If Dr. Turner, Dr. White or other representative of defendant told you that he had conducted his own search concerning Regions University in the records of the United States Patent and Trademark Office, did he tell you that he had retained copies of the results of any such search?

95.    Did you ask him for the results of any such search?

96.    Did Dr. Turner, Dr. White or other representative of defendant offer to share with you the results of his search of the records of the United States Patent and Trademark Office concerning the name Regions University?

97.    Did you advise Dr. Turner, Dr. White or other representative of defendant prior to August 18, 2006, that the word "Regions" was descriptive of a university?

98.    Did you discuss prior to August 18, 2006, with Dr. Turner, Dr. White or other representative of defendant whether the word "Regions" was descriptive of a university?

99.    What did you tell Dr. Turner, Dr. White or other representative of defendant, if anything, on or prior to August 18, 2006, concerning whether the word "Regions" was descriptive of the name of a university?

100.   If you told Dr. Turner, Dr. White or other representative of defendant that the word "Regions" might be descriptive of a university prior to August 18, 2006, did Dr. Turner indicate any concern whether the mark Regions University might be registerable on the United States Patent and Trademark Office?

101.   If so, what did Dr. Turner, Dr. White or other representative of defendant, say?

102.   Did you offer prior to August 18, 2006, to provide to Dr. Turner Dr. White or other representative of defendant, any opinion directed to whether the name Regions University was descriptive of a university?

103.   Do you have or have you seen any document that refers or relates to any discussion or communication with anyone at defendant concerning whether the name Regions University was descriptive of a university? If so, identify such documents.

104.   Is Exhibit 502, notes of a telephone conversation by you concerning a discussion on July 28, 2006?

105.   Whose notes are shown in Exhibit 502.

106.   Are these the notes of your discussion on July 28, 2006?

107.   Were these notes made on July 28, 2006?

108.   Was the discussion with Dr. White who was calling on behalf of defendant?

109.   Did this discussion concern defendant's adoption of the name Regions University?

110. Does the "REGIONS UNIVERSITY" noted in Exhibit 502 refer to the Regions University of Regions Bank?

111. Did Dr. White advise you firm that the Board of Regents of defendant had approved the adoption of Regions University as the defendant's name the day before on July 27, 2006?

112. Did you have a discussion with anyone on July 28, 2006, concerning Regions Bank's Region University?

113. If so, who did you have a discussion with concerning Regions Bank's Regions University?

114. Did that person tell you that Regions Bank uses the name Regions University?

115. Did that person tell you that Regions Bank was the largest bank in Alabama?

116. Did that person tell you that Regions Bank was one of the largest banks in Alabama?

117. Did that person tell you that Regions Bank was one of the largest banks in the United States?

118. Did that person tell you that Regions Bank was the largest bank in Montgomery?

119. Did that person tell you that Regions Bank was one of the largest banks in Montgomery?

120. Did you conduct any investigation or have an investigation conducted to determine how large Regions Bank was either in Montgomery, Alabama or the United States?

121. Did you hire an investigator to determine the extent of use of the name Regions University or whether Regions University was used as s recruiting tool by Regions Bank?

122. Did you call, or someone on behalf call, Regions Bank to find out the extent of use of the name Regions University or whether Regions University was used as a recruiting tool by Regions Bank?

123. If so, when was the call made?

124. Who made the call and what was learned about Regions University?

125. Did you ask defendant if it conducted an investigation into the use of Regions University by Regions Bank?

126. If so, did defendant tell you the results of its investigation?

127. What did defendant tell you about Regions University?

128. What did defendant tell you of the investigation that they conducted?

129.    When you spoke with Dr. White on July 28, 2006, did you provide him any advice
        concerning whether the Regions University name of Regions Bank posed any risk in the
        adoption or use of Regions University by defendant?

130.    Did you provide Dr. White advice on July 28, 2006, concerning whether the Regions
        University name of Regions Bank posed any risk in the adoption or use of Regions
        University by defendant?

131.    Did you base the advice you gave Dr. White on July 28, 2006 concerning whether the
        Regions University name of Regions Bank posed any risk in the adoption or use of
        Regions University by defendant any trademark search or other investigation you
        conducted or that was conducted on your behalf?

132.    Did you provide defendant with a legal opinion prior to August 18, 2006 concerning
        whether the Regions University name of Regions Bank posed any risk in the adoption or
        use of the Regions University name by defendant?

133.    If the answer to question no. 132 is yes, when did you provide a legal opinion and to
        whom did you provide such legal opinion?

134.    If the answer to question no. 132 is yes, what is the legal opinion that you provided to
        defendant?

135.    If the answer to question no. 132 is yes, is the opinion you gave in writing or
        memorialized in anyway?

136.    If the answer to question no. 132 is no, did you explain to defendant that you were not
        providing defendant a legal opinion as to the risk posed by the use of Regions University
        name by Regions Bank?

137.    In Exhibit 502, the document says "Get on File, soon." Does this mean that defendant
        wanted you to file an application to register the name Regions University for them soon?

138.    If "Get on File, soon," means something else what does it mean?

139.    In Exhibit 502, what does "3 Brochures by tomorrow" refer to?

140.    Did the "3 Brochures" refer to specimens of use of the "Regions University" name

141.    Were the "3 Brochures" to be used for a trademark application for "Regions University"
        based on use of the Regions University name?

142.    Did defendant intend to get to your firm "3 Brochures" that referred to "Regions
        University" on July 28, 2006 for a trademark application?

143.    Exhibit 502 states "File PRESS today." Does that refer to defendant's intention to
        announce the adoption of the name Regions University by a press release on July 28,
        2006?

11

144. After July 28, 2006, and before August 18, 2006, did you have any discussions with Dr. Turner, or Dr. White or any other person at defendant concerning the use by Regions Bank of the Regions name or mark, including Regions University, Region Charity Classic or Regions Bank?

145. When did you have such discussion?

146. Who were the persons involved in any of those discussions?

147. Were those discussions memorialized in any way or referred to in any document?

148. Please identify all such documents.

149. Did you have any discussions with Dr. Turner or another person at defendant concerning Exhibit 34 or any draft of Exhibit 34 prior to the dissemination of Exhibit 34?

150. Did Dr. Turner or another person at defendant solicit your comments concerning Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

151. What explanation, if any, did Dr. Turner or another person at defendant give for soliciting your comments concerning Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

152. What, if any, comments did you have with Dr. Turner or another person at defendant concerning the Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

153. Had you spoken with Dr. Turner or any other person at defendant prior to July 28, 2006, concerning the name or mark Regions?

154. Had you spoke with Dr. Turner or any other person at defendant prior to July 28, 2006, concerning Regions Bank or any Regions marks used by Regions Bank?

155. Had you spoke with anyone in addition to Dr. Turner prior to July 24, 200t, concerning Regions Bank or any Regions marks used by Regions Bank?

156. Did you have any discussions with Dr. Turner or any other person at defendant concerning the change of the name of the defendant after August 2, 2006 (other than discussions concerning the description of goods or services in any Regions University trademark application)?

157. If so when did you have such discussions?

158. What was the subject matter of those discussions?

159. Were those discussions memorialized in any way?

160. Identify each document that refers or relates to any such discussion.

# EXHIBIT "B"

## to

## MOTION TO COMPEL DISCOVERY AND COMPLIANCE WITH ORDER OF COURT

**Letter dated August 8, 2007**

# SHLESINGER, ARKWRIGHT & GARVEY LLP

PATENT, TRADEMARK & COPYRIGHT LAW

JAMES E. SHLESINGER
JOSEFINO P. DE LEON
MICHAEL M. ZADROZNY*
TERRENCE L.B. BROWN*
DANIEL T. EARLE
LILY MONIR MATINI*

OF COUNSEL
B. EDWARD SHLESINGER, JR.

*ADMITTED TO A BAR OTHER THAN VIRGINIA

ESTABLISHED 1950
————
1420 KING STREET
SUITE 600
ALEXANDRIA, VIRGINIA 22314

GEORGE A. ARKWRIGHT (RET.)
GEORGE A. GARVEY (RET.)
————
TELEPHONE: (703) 684-5600
FAX: (703) 836-5288
FAX: (703) 836-5698
EMAIL: PATENTS@SAGLLP.COM

OUR REF. NO.

August 8, 2007

**VIA E-MAIL & COURIER**
wpecau@steptoe.com

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

Attention:     William G. Pecau, Esquire

Re:     Civil Action No. 2:06-cv-882-MHT
        Regions Asset Company, Regions Financial
        Corporation, and Regions Bank, Plaintiffs, v.
        Regions University, Inc., Defendant
------------------------------------------------------

Dear Wil:

    This letter is in connection with the Notice of Deposition
Upon Written Questions served for the taking of the deposition
upon written questions of James E. Shlesinger and Daniel Earle,
in connection with the above-referenced matter.  Attached to this
letter are our written objections to the written questions.  In
the case of most of the objections, the witness will be
instructed not to answer the question.

    Please recall that the Magistrate Judge's July 26, 2007,
Order specifically and clearly limited the scope of your inquiry.
In relevant part, the Order states, "it is clear that by
asserting reliance upon Trademark Counsel, Defendant has placed
in issue circumstances of Trademark Counsel's opinion letter.
*Id.* at 1743.  However, that should not lead to an unlimited

Steptoe & Johnson LLP
August 8, 2007
page -2-

inquiry.  So while Plaintiffs are entitled to learn about the
opinion and its underlying factual basis, Plaintiffs may not
question Trademark Counsel regarding any other matter."  (Page 3,
emphasis added.)

     Although we believe the opinion referenced by the Magistrate
Judge in this Order relates only to the opinion concerning the
mark at issue, namely, REGIONS UNIVERSITY, in an attempt to
prevent any unnecessary filings with the Court, we are not
objecting to any questions concerning the July 27, 2006, e-mail
opinion, the August 2, 2006, follow-up letter with references,
and all discussions concerning these documents and the opinions
included therein.  Further, in accordance with the Court's Order,
we are not objecting to questions concerning the underlying facts
for these opinions.  We believe this is a very generous
interpretation of the Court's Order, and is the broadest possible
interpretation of the phrase "the opinion" in the Order.  With
this in mind, we do object to any questions regarding any other
matter.

     Initially, all questions concerning MASTERS UNIVERSITY, the
application therefore, and any discussions between counsel and
defendant concerning MASTERS UNIVERSITY are outside the scope of
the Court's Order.  We object to question Nos. 26-70, and 83-85,
of the Deposition of James E. Shlesinger, and Nos. 26-70 of the
Deposition of Daniel Earle.

     Whether the University agreed to change its name on July 27,
2007, is also beyond the scope of the Court's Order.
Accordingly, we object to question No. 293 of the Deposition of
James E. Shlesinger, and No. 111 of the Deposition of Daniel
Earle.  As is obvious from both the e-mail opinion and the
follow-up letter, descriptiveness was not part of the opinion.
Accordingly, questions concerning descriptiveness are outside of
the scope of the Court's Order and we object to question Nos.
156-163 and 281-285 of the Deposition of James E. Shlesinger and
Nos. 97-103 of the Deposition of Daniel Earle.  The application
for registration of the mark, REGIONS UNIVERSITY, is not a part
of the opinion or the underlying facts for the opinion.
Accordingly, we object to question Nos. 318-324 of the Deposition
of James E. Shlesinger and Nos. 137-143 of the Deposition of
Daniel Earle.

Steptoe & Johnson LLP
August 8, 2007
page -3-


        The name change letter sent by the University to students is
not a part of the opinion and its underlying factual basis.
Accordingly, we object to question Nos. 330-333 of the Deposition
of James E. Shlesinger and Nos. 149-152 of the Deposition of
Daniel Earle.

        Finally, question Nos. 348-351 of the Deposition of James E.
Shlesinger and Nos. 156-160 of the Deposition of Daniel Earle are
extremely broad, questioning the witnesses concerning "any
discussions" with Defendant "concerning the change of name of the
defendant after August 2, 2006…". The scope of these questions
clearly includes information outside the scope of the Court's
Order. However, we have limited our objection in connection with
these questions to the extent that the answer would include
information outside the scope of the Court's Order. The
witnesses will be instructed to answer to the extent that any
discussions concern the opinion and its underlying factual basis.

        We have also objected to any questions in the Deposition of
James E. Shlesinger that ask him to characterize a document that
speaks for itself. These include question Nos. 198, 202, 206,
210, 214, 218, 222, 249-250, and 281.

        We have also objected to any question which asks the witness
for its "belief" as to whether defendant had an "understanding"
about various matters. These questions include Nos. 195-197,
199-201, 203-205, 207-209, 211-213, 215-217, 219-221, 223-225,
229-230, 234-235, and 249-250 of the Deposition of James E.
Shlesinger.

        We object to question No. 174 of the Deposition of James E.
Shlesinger because it includes an opinion ("an entity…seeking to
adopt a name or mark that is important to it… generally… orders a
search report from a company like Thomson CompuMark…"). There is
no foundation to support the opinion in question No. 174 and the
form of this question assumes that the witness agrees with this
opinion. Further, we object to your assertion that Exhibit 500
constitutes a "Full-Search". There is also no foundation to
assert that Exhibit 500 is a "Full Search" and we object to the
form of this questions, as well as the prejudicial use of the
term "Full Search". Based upon this objection, we also object to
question Nos. 175-182 of the Deposition of James E. Shlesinger.

Steptoe & Johnson LLP
August 8, 2007
page -4-


    Question No. 178 of the Deposition of James E. Shlesinger
requests information concerning the attorney's fees. This issue
was resolved by the Magistrate Judge on July 30, 2007, in which
he ordered that information concerning the attorney's fees may
not be provided. Accordingly, we object to this question.

    If you have any questions, please do not hesitate to contact
us.

                              Very truly yours,

                              Daniel T. Earle

DTE/ds                        SHLESINGER, ARKWRIGHT & GARVEY LLP

cc:  Victor T. Hudson, Esq.
     (Hudson and Watts)
     Charles Paterson, Esq.

# EXHIBIT "C"

## to

## MOTION TO COMPEL DISCOVERY AND COMPLIANCE WITH ORDER OF COURT

**Defendant's Written Objections
to Plaintiffs' Written Deposition Questions
to Daniel T. Earle**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| REGIONS ASSET COMPANY,<br>REGIONS FINANCIAL<br>CORPORATION, and REGIONS<br>REGIONS BANK<br><br>       Plaintiffs,<br><br>  v.<br><br>REGIONS UNIVERSITY, INC.<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 2:06-cv-<br>)  882-MHT<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S WRITTEN OBJECTIONS TO PLAINTIFFS'
## WRITTEN DEPOSITION QUESTIONS TO
## DANIEL T. EARLE

Question No. 26.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 27.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 28.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 29.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 30.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 31.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 32.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition.    The witness is
instructed not to answer.

Question No. 33.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.    The witness is
instructed not to answer.

Question No. 34.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.    The witness is
instructed not to answer.

Question No. 35.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.    The witness is
instructed not to answer.

Question No. 36.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.    The witness is
instructed not to answer.

3·

Civil Action No. 2L06-cv-882-MHT

Question No. 37.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 38.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 39.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 40.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 41.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 42.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 43.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 44.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 45.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,

5

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 46. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 47. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 48. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 49. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

6

Civil Action No. 2L06-cv-882-MHT

Question No. 50.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 51.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 52.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 53.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 54.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 55.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.

Question No. 56.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.

Question No. 57.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.

Question No. 58.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 59.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 60.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 61.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 62.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 63.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,

9

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 64.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 65.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 66.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 67.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

10

Civil Action No. 2L06-cv-882-MHT

Question No. 68. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 69. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 70. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 97. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 98. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007,

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 99.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 100.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 102.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 103.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 111.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 137.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 138.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 139.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 140.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 141.   OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 142.   OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 143.   OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 149.   OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

14

Civil Action No. 2L06-cv-882-MHT

Question No. 150.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.

Question No. 151.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.

Question No. 152.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.

Question No. 156.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed only to answer concerning discussions that relate to
the opinion and its underlying factual basis.

15

Civil Action No. 2L06-cv-882-MHT

Question No. 157.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed only to answer concerning discussions that relate to
the opinion and its underlying factual basis.


Question No. 158.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed only to answer concerning discussions that relate to
the opinion and its underlying factual basis.


Question No. 159.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed only to answer concerning discussions that relate to
the opinion and its underlying factual basis.


Question No. 160.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed only to answer concerning discussions that relate to
the opinion and the underlying facts therefore.

Civil Action No. 2L06-cv-882-MHT

Respectfully submitted,

William W. Watts, III [WATTW 5095]
Victor T. Hudson  [HUDSV 1684]
Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama  36601-0989

James E. Shlesinger
Daniel T. Earle
Shlesinger, Arkwright & Garvey LLP
1420 King Street, Suite 600
Alexandria, Virginia 22314

## CERTIFICATE OF SERVICES

I hereby certify that the foregoing DEFENDANT'S WRITTEN
OBJECTIONS TO PLAINTIFFS' WRITTEN DEPOSITION QUESTIONS TO DANIEL
T. EARLE has been served upon counsel for Plaintiff, Regions
Asset Company, et al. by e-mailing and by overnight couriering a
copy thereof on this 8th day of August, 2007.

William G. Pecau
Rachel M. Marmer
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

Charles B. Paterson
Paul A. Clark
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL  36101-0078

James E. Shlesinger

17

# EXHIBIT "C"

## to

## MOTION TO COMPEL DISCOVERY AND COMPLIANCE WITH ORDER OF COURT

**Defendant's Written Objections
to Plaintiffs' Written Deposition Questions
to James E. Shlesinger**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION, and REGIONS REGIONS BANK | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:06-cv-882-MHT |
| v. | ) ) | |
| REGIONS UNIVERSITY, INC. | ) ) | |
| Defendant. | ) ) | |

### DEFENDANT'S WRITTEN OBJECTIONS TO PLAINTIFFS' WRITTEN DEPOSITION QUESTIONS TO JAMES E. SHLESINGER

Question No. 26.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 27.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 28.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 29.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 30.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 31.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 32.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 33.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 34.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 35.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 36.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 37.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 38.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 39.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 40.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 41.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 42.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 43.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 44.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 45.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,

5

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 46.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 47.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 48.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 49.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

6

Civil Action No. 2L06-cv-882-MHT

Question No. 50.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.


Question No. 51.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.


Question No. 52.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.


Question No. 53.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.


Question No. 54.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.   The witness is
instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 55.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 56.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 57.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 58.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 59.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 60.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 61.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 62.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 63.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,

9

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 64. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 65. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 66. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 67. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 68. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 69. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 70. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 83. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 84. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007,

11

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition. The witness is
instructed not to answer.

Question No. 85. OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition. The witness is
instructed not to answer.

Question No. 120. OBJECTION--The form of this question assumes
that everyone at defendant knew of Regions Bank, a fact which
has no foundation. The witness is instructed not to answer.

Question No. 156. OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition. The witness is
instructed not to answer.

Question No. 157. OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition. The witness is
instructed not to answer.

Civil Action No. 2L06-cv-882-MHT

Question No. 158.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 159.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 160.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 161.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.

Question No. 162.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,

13

Civil Action No. 2L06-cv-882-MHT

Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 163. OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition. The witness is instructed not to answer.

Question No. 174. OBJECTION--The form of this question assumes a general fact, namely, that entities order search reports from a company like Thompson CompuMark if a mark "is important". There is no foundation for this "general" fact or any opinion that this "general" fact is correct. Nor is their any foundation that the witness agrees with this "general" fact or the opinion that an entity will "generally" follow this procedure. OBJECTION--The definition of such a search as a "Full Search" is prejudicial, there is no foundation to state that this type of search is a "Full Search" or that the witness agrees that this type of search is a "Full Search". The witness is instructed not to answer.

Question No. 175. OBJECTION--The definition of such a search as a "Full Search" is prejudicial, there is no foundation to

14

Civil Action No. 2L06-cv-882-MHT

state that this type of search is a "Full Search" or that the
witness agrees that this type of search is a "Full Search".   The
witness is instructed not to answer.

Question No. 176.    OBJECTION--The definition of such a search
as a "Full Search" is prejudicial, there is no foundation to
state that this type of search is a "Full Search" or that the
witness agrees that this type of search is a "Full Search".   The
witness is instructed not to answer.

Question No. 177.    OBJECTION--The definition of such a search
as a "Full Search" is prejudicial, there is no foundation to
state that this type of search is a "Full Search" or that the
witness agrees that this type of search is a "Full Search".
The witness is instructed not to answer.

Question No. 178.    OBJECTION--The definition of such a search
as a "Full Search" is prejudicial, there is no foundation to
state that this type of search is a "Full Search" or that the
witness agrees that this type of search is a "Full Search".
OBJECTION -- Pursuant to the Court's July 30, 2007, Order,

15

Civil Action No. 2L06-cv-882-MHT

defendant is not required to provide information concerning the amount of attorneys' fees.    The witness is instructed not to answer.

Question No. 179.    OBJECTION--The definition of such a search as a "Full Search" is prejudicial, there is no foundation to state that this type of search is a "Full Search" or that the witness agrees that this type of search is a "Full Search". The witness is instructed not to answer.

Question No. 180.    OBJECTION--The definition of such a search as a "Full Search" is prejudicial, there is no foundation to state that this type of search is a "Full Search" or that the witness agrees that this type of search is a "Full Search". The witness is instructed not to answer.

Question No. 181.    OBJECTION--The definition of such a search as a "Full Search" is prejudicial, there is no foundation to state that this type of search is a "Full Search" or that the witness agrees that this type of search is a "Full Search". The witness is instructed not to answer.

16

Civil Action No. 2L06-cv-882-MHT

Question No. 182.   OBJECTION--The definition of such a search as a "Full Search" is prejudicial, there is no foundation to state that this type of search is a "Full Search" or that the witness agrees that this type of search is a "Full Search". The witness is instructed not to answer.

Question No. 194.   OBJECTION--The document speaks for itself. The witness is instructed not to answer.

Question No. 195.   OBJECTION--The witness cannot testify as to whether another person or entity understood something.   The witness is instructed not to answer.

Question No. 196.   OBJECTION--The witness cannot testify as to whether another person or entity understood something.   The witness is instructed not to answer.

Question No. 197.   OBJECTION--The witness cannot testify as to whether another person or entity understood something.   The witness is instructed not to answer.

Question No. 198.   OBJECTION--The document speaks for itself. The witness is instructed not to answer.

17

Civil Action No. 2L06-cv-882-MHT

Question No. 199.   OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

Question No. 200.   OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

Question No. 201.   OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

Question No. 202.   OBJECTION--The document speaks for itself.
The witness is instructed not to answer.

Question No. 203.   OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

Question No. 204.   OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

18

Civil Action No. 2L06-cv-882-MHT

Question No. 205.   OBJECTION--The witness cannot testify as to whether another person or entity understood something.   The witness is instructed not to answer.

Question No. 206.   OBJECTION--The document speaks for itself. The witness is instructed not to answer.

Question No. 207.   OBJECTION--The witness cannot testify as to whether another person or entity understood something.   The witness is instructed not to answer.

Question No. 208.   OBJECTION--The witness cannot testify as to whether another person or entity understood something.   The witness is instructed not to answer.

Question No. 209.   OBJECTION--The witness cannot testify as to whether another person or entity understood something.   The witness is instructed not to answer.

Question No. 210.   OBJECTION--The document speaks for itself. The witness is instructed not to answer.

19

Civil Action No. 2L06-cv-882-MHT

Question No. 211.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.    The witness is instructed not to answer.

Question No. 212.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.    The witness is instructed not to answer.

Question No. 213.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.    The witness is instructed not to answer.

Question No. 214.    OBJECTION--The document speaks for itself. The witness is instructed not to answer.

Question No. 215.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.    The witness is instructed not to answer.

Question No. 216.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.    The witness is instructed not to answer.

20

Civil Action No. 2L06-cv-882-MHT

Question No. 217.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.  The witness is instructed not to answer.

Question No. 218.    OBJECTION--The document speaks for itself. The witness is instructed not to answer.

Question No. 219.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.  The witness is instructed not to answer.

Question No. 220.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.  The witness is instructed not to answer.

Question No. 221.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.  The witness is instructed not to answer.

Question No. 222.    OBJECTION--The document speaks for itself. The witness is instructed not to answer.

21

Civil Action No. 2L06-cv-882-MHT

Question No. 223.    OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

Question No. 224.    OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

Question No. 225.    OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

Question No. 229.    OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

Question No. 230.    OBJECTION--The witness cannot testify as to
whether another person or entity understood something.   The
witness is instructed not to answer.

22

Civil Action No. 2L06-cv-882-MHT

Question No. 234.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.    The witness is instructed not to answer.

Question No. 235.    OBJECTION--The witness cannot testify as to whether another person or entity understood something.    The witness is instructed not to answer.

Question No. 281.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.    The witness is instructed not to answer.    OBJECTION-- The document speaks for itself.    The witness is instructed not to answer.

Question No. 282.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.    The witness is instructed not to answer.

Question No. 283.    OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.    The witness is instructed not to answer.

23

Civil Action No. 2L06-cv-882-MHT

Question No. 284.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.


Question No. 285.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.


Question No. 293.    OBJECTION--This question requests
information outside the scope of the Court's July 26, 2007,
Order limiting the inquiry of this deposition.  The witness is
instructed not to answer.


Question No. 318.  OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.  The witness is instructed not
to answer.


Question No. 319.  OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.  The witness is instructed not
to answer.


24

Civil Action No. 2L06-cv-882-MHT

Question No. 320.  OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 321.  OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 322.  OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 323.  OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting the inquiry of this deposition.  The witness is instructed not to answer.

Question No. 324.  OBJECTION--This question requests information outside the scope of the Court's July 26, 2007, Order limiting

Civil Action No. 2L06-cv-882-MHT

the inquiry of this deposition.   The witness is instructed not
to answer.

Question No. 330.   OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.   The witness is instructed not
to answer.

Question No. 331.   OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.   The witness is instructed not
to answer.

Question No. 332.   OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.   The witness is instructed not
to answer.

Question No. 333.   OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.   The witness is instructed not
to answer.

26

Civil Action No. 2L06-cv-882-MHT

Question No. 348.   OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.   The witness is instructed only
to answer concerning discussions that relate to the opinion and
its underlying factual basis.

Question No. 349.   OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.   The witness is instructed only
to answer concerning discussions that relate to the opinion and
its underlying factual basis.

Question No. 350.   OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.   The witness is instructed only
to answer concerning discussions that relate to the opinion and
its underlying factual basis.

Question No. 351.   OBJECTION--This question requests information
outside the scope of the Court's July 26, 2007, Order limiting
the inquiry of this deposition.   The witness is instructed only
to answer concerning discussions that relate to the opinion and
its underlying factual basis.

Civil Action No. 2L06-cv-882-MHT

Respectfully submitted,


William W. Watts, III [WATTW 5095]
Victor T. Hudson  [HUDSV 1684]
Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama  36601-0989

James E. Shlesinger
Daniel T. Earle
Shlesinger, Arkwright & Garvey LLP
1420 King Street, Suite 600
Alexandria, Virginia 22314

## CERTIFICATE OF SERVICES

I hereby certify that the foregoing DEFENDANT'S WRITTEN
OBJECTIONS TO PLAINTIFFS' WRITTEN DEPOSITION QUESTIONS TO JAMES
E. SHLESINGER has been served upon counsel for Plaintiff,
Regions Asset Company, et al. by e-mailing and by overnight
couriering a copy thereof on this 8th day of August, 2007.

William G. Pecau
Rachel M. Marmer
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

Charles B. Paterson
Paul A. Clark
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL  36101-0078

James E. Shlesinger

28

# EXHIBIT "D"

## to

## MOTION TO COMPEL DISCOVERY AND COMPLIANCE WITH ORDER OF COURT

## Letter dated August 9, 2007
## from Plaintiffs' Counsel to Defendant's Counsel



**BALCH & BINGHAM LLP**

Alabama • Georgia • Mississippi • Washington, DC

Charles B. Paterson
(334) 269-3143

Attorneys and Counselors
105 Tallapoosa Street, Suite 200
P.O. Box 78 (36101-0078)
Montgomery, Alabama 36104-3515
(334) 834-6500
(334) 269-3115 Fax
www.balch.com

(866) 736-3857 (direct fax)
cpaterson@balch.com

August 9, 2007

BY EMAIL
BY FACSIMILE

James E. Shlesinger, Esq.
Daniel T. Earle, Esq.
Shlesinger, Arkwright & Garvey LLP
1420 King Street, Suite 600
Alexandria, Virginia 22314

Victor T. Hudson, Esq.
William W. Watts, III, Esq.
Hudson & Watts, LLP
One St. Lewis Street, Suite 2500
Mobile, Alabama 36602-3926

     Re:   *Regions Asset Co., et al. v. Regions University*
          In the United States District Court for the Middle District of Alabama, Northern
          Division; Civil Action No. 2:06-cv-882-MHT

Gentlemen:

      This is in response to your letter of August 8, 2007 objecting to deposition questions. As
you will recall, Judge Moorer clearly indicated in his orders and directives that the Plaintiffs may
make reasonable inquiry of Regions University's trademark counsel related to the "advice of
counsel" defense asserted by the Defendant. The limitations on this line of discovery are that the
inquiry must be made by deposition upon written questions and that questions regarding fees
charged and the description of services in the Regions University trademark application were off
limits. The Plaintiffs are clearly allowed to seek discovery designed to show the limited nature
of the search conducted by trademark counsel, the very limited opinion based on the search that
issued to Regions University and the basis thereof and whether or not Defendant could
reasonably rely on the opinion for its use of the name Regions University – not just whether the
mark might get through the narrow examination process in the USPTO.

      More specifically, the "Plaintiffs' Written Deposition Questions to James Shlesinger" and
"Plaintiffs' Written Deposition Questions to Daniel T. Earle" are designed to (1) establish the
differences in the kinds of searches and opinions that are generally given, (2) determine what
trademark counsel was hired to do, (3) determine the limits of the search and the opinion, (4)
determine the basis of the advice and opinion that was given, (5) determine whether or not the
Defendant was advised of the limits to the opinion, (6) determine whether the Defendant knew of

BALCH & BINGHAM LLP

James E. Shlesinger, Esq.
Victor T. Hudson, Esq.
August 9, 2007
Page 2

the limits of the opinion, (7) determine whether the Defendant reasonably relied upon the opinion for its use of the Regions University mark, and (8) whether Defendant provided its attorneys sufficient information for an opinion concerning the use of a mark and, even whether Defendant gave its attorneys instructions that it sought an opinion concerning the possible use of the Regions University mark.

The objections set forth in your filings and the August 8, 2007 letter preclude adequate and permissible discovery by the Plaintiffs. For example, the Plaintiffs should not be precluded from asking questions about documents by the blanket, insufficient contention "the document speaks for itself." If such were the case, no deposition discovery could be completed regarding documents. Likewise, inquiry about the advice sought and provided up until the time the Defendant received Regions' protest on August 18, 2006 is appropriate and, as you know, has been permitted in similar cases. Inquiry about the advice relating to the use of "Masters University" is appropriate because it is probative as to the level of sophistication of Dr. Turner in trademark matters and whether he could reasonably rely on a limited "registerability" search and opinion in connection with the name "Regions." In addition, Defendant refers to and relies on the advice of counsel in its Motion for Summary Judgment.

Out of a total of 160 questions directed to Daniel T. Earle, the Defendant is refusing to answer 64 of the questions. Of the 351 questions directed to James E. Shlesinger, the Defendant refuses to answer 112 of these questions. The fact that the Defendant is objecting to over one-third of the questions propounded is certainly telling. In summary, the objections defy logic, our prior understandings and violate the Court's prior Order and verbal directives.

More importantly, the scope and subject have already been agreed upon by all Counsel. Please refer to Will Pecau's letter to Tom Hudson dated July 27, 2007 which clearly outlines the scope of subject matter inquiry. A copy of this letter is enclosed for your convenience. If you will recall, the Defendant agreed to this scope and Judge Moorer's July 30, 2007 Order reflects that the dispute between the parties was moot except for the information about fees.

The Plaintiffs feel that they are justified in seeking information that may lead to probative evidence concerning the issues before the Court. Accordingly, we respectfully request that you reconsider your objections and allow all of the deposition questions to be answered.

Sincerely yours,

Charles B. Paterson

CBP:bl
Enclosure

# STEPTOE & JOHNSON LLP

ATTORNEYS AT LAW

William G. Pecau
202.429.6244
wpecau@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC  20036-1795
Tel 202.429.3000
Fax 202.429.3902
steptoe.com

July 27, 2007

**Via E-MAIL**

Victor T. Hudson, Esq.
Hudson & Watts, LLP
Post Office Box 989
Mobile, AL 36601-0989

> **RE:    Regions Asset Company v. Regions University, Inc.
>          Case No. CV-06-882-MHT**

Dear Tom:

This is in furtherance of our conversation this morning concerning Judge Moorer's order of yesterday, July 26, regarding the deposition upon written questions of Mr. Shlesinger.

## I.    Documents

Our deposition contained a request for production of documents concerning Mr. Shlesinger's advice concerning the change of the defendant's name and defendant's adoption and use of the REGIONS mark.  A copy of the request is attached as Exhibit A.

I had asked if we could get the documents that Mr. Shlesinger was going to produce by Monday, July 30, so that we could prepare our written questions by August 3 as ordered by the Court.  I understand from our conversation that defendant and Mr. Shlesinger had had no intention of producing any documents requested, including the full opinion and references that are identified in the email from Mr. Shlesinger dated July 27, 2006.  You asked for a list of requested, relevant documents that we would expect to be produced so that you could confirm defendant's refusal to produce the documents.

Victor T. Hudson, Esq.
July 27, 2007
Page 2

STEPTOE & JOHNSON LLP

I do not know what relevant documents Mr. Shlesinger has, but these are the specific documents that exist or should exist that are within the scope of our request:

1.    The "full report, including copies of the references," that Mr. Shlesinger said he would mail Dr. Turner in his July 27, 2006 e-mail and that you said was prepared but not produced.

2.    All trademark searches and references relied upon by Mr. Shlesinger regarding his advice to the defendant concerning the change of the school's name and the adoption and use of the name Regions by defendant.

3.    Any documents that Mr. Shlesinger received from defendant concerning Mr. Shlesinger's discussions with defendant concerning the change of the school's name and the adoption and use of the Regions name prior to defendant's receiving the first cease and desist letter from plaintiff dated August 18, 2006. Of course, this would include any discussions with defendant concerning a decision not to provide defendant with the "full report, including copies of the references" that Mr. Shlesinger said in his July 27, 2006 e-mail he would mail to Dr. Turner. It will also include documents concerning any discussions, comments or other communications with defendant concerning the defendant's email announcing the adoption of the Regions name and defendant's reference to Mr. Shlesinger's advice and its quotation from Mr. Shlesinger's July 27, 2006 e-mail. *See* Exhibit B (highlighted for your convenience).

4.    Any notes or diary entries of Mr. Shlesinger concerning discussions with defendant concerning the change of defendant's name and the adoption and use of the name Regions by defendant prior to defendant's receiving the cease and desist letter of August 18, 2006.

5.    Any e-mails or other communications with defendant concerning Masters University, Regions University or any other name considered in connection with defendant's name change prior to receiving the first cease and desist letter from plaintiff dated August 18, 2006.

Please confirm today by 3:00 pm that you will continue your refusal to provide such information, so that I may raise this with the Magistrate Judge.

**II.    Subject Matter**

In addition, based on our conversation, it appears that defendant intends to refuse to allow Mr. Shlesinger to testify as to the following matters which clearly are part of the subject matter waived, go to the reasonableness of defendant's reliance on a preliminary e-mail opinion, and therefore are within the scope of the Judge Moorer's July 26 Order.

1.    Discussions and other communications between Mr. Shlesinger and defendant after the July 27, 2006, 9:59 AM email concerning the full report and references referred to in that e-mail.

STEPTOE & JOHNSON LLP

Victor T. Hudson, Esq.
July 27, 2007
Page 3

2.    Other discussions and communications between Mr. Shlesinger and defendant prior to receipt of the August 18, 2006, cease and desist letter from plaintiff concerning the adoption and use of the Regions name, including the announcement of the change of name and defendant's reliance on advice of counsel. *See* Exhibit B.  As you know, this communication was the initial basis for defendant's waiver of attorney-client privilege regarding defendant's adoption and use of the Regions name.  In any event, plaintiffs are entitled to this testimony and corresponding documents up until the date of the cease and desist letter. *See Eco Manufacturing LLC v. Honeywell Int'l, Inc.*, No. 1:03-CV-0170-DFH, 2003 WL 1888988 (S.D. Ind. Apr. 11, 2003), at *3 ("[T]he court finds that the relevant subject matter is the intellectual property issues relating to Eco Manufacturing's development of a circular thermostat design, from approximately May 2001 through the date that Eco Manufacturing received Honeywell's 'cease and desist' letter in January 2003").

3.    Conversations with Dr. Turner and other representatives of defendant concerning the adoption of defendant's new name beginning with Masters University.  As we discussed, defendant has specifically relied upon this advice in its brief for summary judgment. See Exhibit C, page 5 from Defendant's Motion for Summary Judgment.  Accordingly, there is no possible basis for continuing to claim privilege with respect to these discussions.

## III.    Daniel Earle's Testimony

Furthermore, plaintiffs have the same issues with Mr. Shlesinger's partner, Daniel Earle, whose deposition was noticed yesterday.   Exhibit D.  As we discussed, it would make sense to abide by Judge Moorer's ruling with respect to Mr. Shlesinger in taking Mr. Earle's deposition.  Mr. Earle discussed with Dr. White plaintiffs' Regions University mark.  Turner Tr. 166-69; White Tr. 72-75.  Any waiver of privilege with respect to the opinion and factual predicate of Mr. Shlesinger's advice and discussions with defendant necessarily likewise applies to his partner, Mr. Earle.

As I said, I need to know by 3:00 pm CT whether defendants will produce the documents I have requested by Monday and will abide by the Court's order concerning the testimony of Mr. Shlesinger and Mr. Earle.

Very truly yours,

William G. Pecau

Enclosures

# EXHIBIT A

## SCHEDULE A

### Documents Requested of James Shlesinger

### DEFINITIONS AND INSTRUCTIONS

1.      "Plaintiffs" or "Regions" means Regions Asset Company, Regions Financial Corporation, Regions Bank, their predecessors, successors, and assigns, and any of their affiliates, officers, directors, agents, employees, or other persons, including, but not limited to, its attorneys, accountants and advisors, acting or purporting to act on its behalf.

2.      "Defendant" means Regions University, Inc., its predecessors, successors, and assigns, and any of its affiliates, officers, directors, agents, employees, or other persons, including, but not limited to, its attorneys, accountants and advisors, acting or purporting to act on its behalf.

3.      "Person" means, without limiting the generality of its meaning, any natural person, group of natural persons (such as a committee or board of directors), corporation, partnership, unincorporated association, joint venture and any other incorporated or unincorporated business, governmental, public or social entity.

4.      "You" means James Shlesinger.

5.      "Your Firm" means Shlesinger, Arkwright & Garvey LLP.

6.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information which might otherwise be construed as outside their scope.

7.      "Concerning" means containing, consisting of, referring to, supporting, prepared in connection with, used in preparation for, commenting upon, or being in any way legally, logically or factually connected with or pertaining to, in whole or in part, the matter discussed.

8.     Whenever appropriate in these Requests, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these requests any matter which might otherwise be construed to be outside of their scope.

9.     If any information requested by these Requests is claimed to be immune from discovery on the grounds of privilege or otherwise:

      a.     identify the communication or document;

      b.     identify the person or persons making the communication or authoring the document and all persons receiving the information;

      c.     specify the type of privilege or other reason asserted for withholding the requested information;

      d.     specify the basis for the assertion; and

      e.     describe the withheld information to a degree sufficient to enable the court to decide if such claim has been properly invoked.

## DOCUMENTS REQUESTED

1.     All documents concerning any services performed by You or Your Firm on behalf of Defendant or any advice given by You or Your Firm to Defendant or any of its representatives in connection with Defendant's name change from Southern Christian University in 2006.

2.     All documents concerning any information provided to You or Your Firm by Defendant in connection with your representation of Defendant in connection with Defendant's name change from Southern Christian University, including information concerning Regions Bank, Defendant's knowledge of the REGIONS name or mark, the reason the word "regions" and other words were considered, Plaintiffs' Regions University, and Southern Christian University.

- 2 -

3.     All documents concerning any trademark or name searches and their results in connection with the Defendant's change of name from Southern Christian University in 2006, including any searches or other inquiries concerning the terms "Regions," "Rex," "Turner," Masters," "Greystone," "Royale," "Providence," or "Regal."

4.     All documents concerning Regions Bank, the REGIONS mark or name, or Plaintiff's Regions University.

5.     All documents concerning any opinion or advice provided by You or Your Firm to Defendant in 2006 concerning its change of name or the availability of any term, including the terms "Regions," "Rex," "Turner," Masters," "Greystone," "Royale," "Providence," or "Regal," alone or with other elements, for registration or use in connection with Defendant's services, products or businesses and any qualification or limitation to such opinion or advice.

6.     Any documents concerning the retention or employment of You or Your Firm by Defendant in connection with services or advice concerning the Defendant's name change from Southern Christian University in 2006.

7.     All documents concerning the application, registration, use or the possible use for a service, product or business of the following terms "Regions," "Rex," "Turner," Masters," "Greystone," "Royale," "Providence," or "Regal," alone or with other elements.

- 3 -

# EXHIBIT B

*Emailed to students 8·16·06*

## NAME CHANGE LETTER

On August 2, 2006, the Board of Regents of *Southern Christian University* changed the institution's name to *REGIONS UNIVERSITY*. They determined that this name would enhance the university's opportunities and would complement the purpose and vision of this university as it accelerates its educational and religious heritage of *Going into all the regions of the world.*

The vision of this university is to expand its operations throughout the United States and internationally. The university is licensed and operating in the State of Tennessee and is in the process of seeking licensure in Arizona, Nevada, South Carolina, and North Carolina. An online Bible teaching program is presently being implemented for the people of Italy in the Italian language, and similar strategies are now being considered for other foreign countries.

The name *Southern* has been restrictive due to its geographical and political restraints. The university's regions of influence and operation are minimized within the western and northern United States and internationally. In foreign countries, *Southern* poses unique naming problems. On many occasions our faculty experienced the limiting access of the name as they taught in the regions of the former Communist Russia.

As you may know, changing the name of an accredited university is thought provoking and monumental. A trademark attorney was retained to assist in this process and to help determine the trademark registrability of several potential university names. The Board of Regents used this critical information in its deliberations.

The board naturally reviewed naming the institution after its founders, Rex and Opal Turner. History records that several of our sister Christian institutions, such as: *Lipscomb University, Freed-Hardeman University,* and *Harding University* were most appreciative of their founders' biblical knowledge, example, and sacrifice, and as a result named their institutions after the founders. This board gave similar genuine consideration and appreciation for *Turner University,* but was diverted upon learning that Ted Turner's corporations posed trademark registration naming issues.

*Regions University* was also considered. The attorney's trademark search revealed: *"we are of the opinion that the mark, Regions University, is registerable for educational services, namely, providing instruction at the university level."* As well, a search for email domains positively disclosed the availability of www.regions.edu and www.regionsuniversity.edu.

One important consideration, with the board, was that this name reflects the founders' vision and goal of having a *"school without walls"* that could provide accredited quality academic and Christian education to all regions of the world. The founders spent a

EXHIBIT

34

*Turner*

RU 058

lifetime in service, traveling to all regions of the United States *"To preach the gospel in all regions beyond you . . ."* 2 Corinthians 10: 16. In appreciation for Rex and Opal Turner's lifetime service, you should know that in 1999 the board named one of the university schools *Turner School of Theology.*

The word *Regions* is used over seventy times in the Bible, and it corresponds to the institution's mission to go into all the regions of the world with the message of Christ. The university has 33 academic degree programs and annually enrolls over 1000 students who reside in all of the regions of the 50 United States. The university's expansion into the international global higher education markets will provide an open door opportunity in restrictive foreign countries, like China.

In light of all favorable information presented, the board approved renaming the institution to *Regions University* and authorized the creation of a new seal bearing an etched image of its founders and the new words *Regions University.* The board approached this decision with a united commitment to implement its institutional plans.

The university is entering its 40th year of operation and this name change does not alter its ownership, accreditation, institutional mission, or commitment for its *Positive Statement of Faith.* The fact that this institution is the first university among the fellowship of the Churches of Christ to offer an accredited *Ph.D. degree in Biblical Studies* speaks volumes about this institution's commitment to continue the founders' example of training laborers who make known the gospel of Christ in all regions of the world.

The purpose for which this university was founded will now have a better opportunity to expand into all regions of the world with the *Regions University* name. The university has the accreditation, the technology, the leadership, the faculty, the student body, and a well-built infrastructure to implement and accomplish this task!

*Regions University* has no debt and has valuable commercial property, a total of 195 acres, in two Alabama locations in Macon and Montgomery Counties on interstate I-85. To implement the vision before us, it will necessitate the cooperation, involvement and united support of the board, alumni, administration, staff, faculty, students, and friends.

Your interest in and support of *Southern Christian University* in the past is deeply appreciated, and your continued prayers and support of this university are respectfully solicited as we endeavor to maintain and expand its mission under the new banner, *Regions University.* Please, continue your moral and financial support for this important cause!

Sincerely Yours,

Rex A. Turner, Jr., Ed.D.
President

RU 059

# EXHIBIT C

prominence."    (Ex.  24).    Although  some  Board  members  were

reluctant to change the name, they understood the need to do so.

Dr. Turner stated that the school's mission would not change and

that "Masters University represents Jesus, the Master Teacher."

(Ex. 23, RU135).

Thereafter,  application  was  made  to  register  the  mark

"Masters University."  The examining attorney, however, refused

registration, finding that the mark was merely descriptive of

the educational services to be rendered.  (Turner depo. at p.

102;  Ex.  26).    Meanwhile,  school  officials  had  learned  of

another school, The Master's College of Bible in California.

(Turner  depo.  at  pp.  104-05;  Ex.  25,  RU148).    Dr.  Turner

contacted  trademark  counsel,  Jim  Shlesinger,  who  recommended

that they not use the name "Masters University" because Masters

College of Bible could contest it.  (Turner depo. at p. 109; Ex.

27).

Other names were then considered, including Rex University,

Turner  University,  Regions  University,  Graystone  University,

Royal  University,  Providence  University  and  Regal  University.

(Turner depo. at pp. 111-13).  Each of the names Royal, Regal

and  Regions,  had  some  emphasis  of  prominence.    Regions  also

5

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

REGIONS ASSET COMPANY,           )
REGIONS FINANCIAL CORPORATION,   )
and REGIONS BANK                 )
                                 )
            Plaintiffs,          )
                                 )
    v.                           )    Civil Action No. 2:06-cv-882-MHT
                                 )
REGIONS UNIVERSITY, INC.         )
                                 )
            Defendant.           )

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that pursuant to Rule 30 of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition upon oral examination of Daniel Earle of the law

firm of Shlesinger, Arkwright & Garvey LLP, on Tuesday, August 7, 2007, at 3:00 PM at

Steptoe & Johnson LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036.

NOTICE IS FURTHER GIVEN THAT the deposition will be transcribed by a certified

court reporter and notary public or such other person authorized to administer oaths under the

laws of the United States, and shall continue from day to day until completed.  All counsel are

invited to attend and cross-examine.

NOTICE IS FURTHER GIVEN THAT pursuant to Rule 30(b)(5), the deponent is

requested to produce at said examination all documents and tangible things in his possession or

under his custody or control relating to or concerning the matters specified in Schedule A,

attached hereto.

Dated: July 26, 2007

_One of the Attorneys for Plaintiffs, Regions
Asset Company, Regions Financial
Corporation and Regions Bank

OF COUNSEL:

Charles B. Paterson (PAT018)
Paul A. Clark (CLA076)
Balch & Bingham LLP
105 Tallapoosa Street, Suite 200
P.O. Box 78 (36101-0078)
Montgomery, AL 36104
Tel: (334) 269-3143

William G. Pecau, Esq. (DC Bar # 478341)
Rachel M. Marmer, Esq. (DC Bar # 489606)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel.: (202) 429-3000
Fax: (202) 429-3902

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF DEPOSITION on counsel for Defendant by overnight courier on this 26th day of July, 2007 properly addressed to them:

Victor T. Hudson
William W. Watts, III
Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601-0989

James E. Shlesinger
Shlesinger, Arkwright & Garvey LLP
1420 King Street
Suite 600
Alexandria, Virginia 22314

**SCHEDULE A**

**Documents Requested of Daniel Earle**

## DEFINITIONS AND INSTRUCTIONS

1.     "Plaintiffs" or "Regions" means Regions Asset Company, Regions Financial Corporation, Regions Bank, their predecessors, successors, and assigns, and any of their affiliates, officers, directors, agents, employees, or other persons, including, but not limited to, its attorneys, accountants and advisors, acting or purporting to act on its behalf.

2.     "Defendant" means Regions University, Inc., its predecessors, successors, and assigns, and any of its affiliates, officers, directors, agents, employees, or other persons, including, but not limited to, its attorneys, accountants and advisors, acting or purporting to act on its behalf.

3.     "Person" means, without limiting the generality of its meaning, any natural person, group of natural persons (such as a committee or board of directors), corporation, partnership, unincorporated association, joint venture and any other incorporated or unincorporated business, governmental, public or social entity.

4.     "You" means Daniel Earle.

5.     "Your Firm" means Shlesinger, Arkwright & Garvey LLP.

6.     "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests any information which might otherwise be construed as outside their scope.

7.     "Concerning" means containing, consisting of, referring to, supporting, prepared in connection with, used in preparation for, commenting upon, or being in any way legally, logically or factually connected with or pertaining to, in whole or in part, the matter discussed.

8.     Whenever appropriate in these Requests, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these requests any matter which might otherwise be construed to be outside of their scope.

9.     If any information requested by these Requests is claimed to be immune from discovery on the grounds of privilege or otherwise:

　　　　a.     identify the communication or document;

　　　　b.     identify the person or persons making the communication or authoring the document and all persons receiving the information;

　　　　c.     specify the type of privilege or other reason asserted for withholding the requested information;

　　　　d.     specify the basis for the assertion; and

　　　　e.     describe the withheld information to a degree sufficient to enable the court to decide if such claim has been properly invoked.

## DOCUMENTS REQUESTED

1.     All documents concerning any services performed by You or Your Firm on behalf of Defendant or any advice given by You or Your Firm to Defendant or any of its representatives in connection with Defendant's name change from Southern Christian University in 2006.

2.     All documents concerning any information provided to You or Your Firm by Defendant in connection with your representation of Defendant in connection with Defendant's name change from Southern Christian University, including information concerning Regions Bank, Defendant's knowledge of the REGIONS name or mark, the reason the word "regions" and other words were considered, Plaintiffs' Regions University, and Southern Christian University.

- 2 -

3.    All documents concerning any trademark or name searches and their results in connection with the Defendant's change of name from Southern Christian University in 2006, including any searches or other inquiries concerning the terms "Regions," "Rex," "Turner," "Masters," "Greystone," "Royale," "Providence," or "Regal."

4.    All documents concerning Regions Bank, the REGIONS mark or name, or Plaintiff's Regions University.

5.    All documents concerning any opinion or advice provided by You or Your Firm to Defendant in 2006, or any conversation or communication with a representative of Defendant concerning its change of name or the availability of any term, including the terms "Regions," "Rex," "Turner," "Masters," "Greystone," "Royale," "Providence," or "Regal," alone or with other elements, for registration or use in connection with Defendant's services, products or businesses and any qualification or limitation to such opinion or advice.

6.    Any documents concerning the retention or employment of You or Your Firm by Defendant in connection with services or advice concerning the Defendant's name change from Southern Christian University in 2006.

7.    All documents concerning the application, registration, use or the possible use for a service, product or business of the following terms "Regions," "Rex," "Turner," Masters," "Greystone," "Royale," "Providence," or "Regal," alone or with other elements.

- 3 -