**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION and REGIONS BANK )<br><br>Plaintiffs, )<br><br>v. )<br><br>REGIONS UNIVERSITY, INC. )<br><br>Defendant. ) | Civil Action No. 2:06-cv-882-MHT |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO MOTION TO COMPEL**
**DISCOVERY RESPONSES IN COMPLIANCE WITH ORDER OF COURT**

COME NOW plaintiffs in the above-styled cause and files the following reply to defendant's response to plaintiff's motion to compel discovery in compliance with the Court's order dated July 26, 2007 (Document 58):

**Defendant's Objections that the Question Is Outside the Scope of the Court Order:**

1.       Defendant objects to the subject matter of many questions as being outside the scope of the Court's order.  However, this issue as to the scope of the Court's order had already been resolved when plaintiff made its previous motion to compel concerning the Court's order on this very subject matter.  Defendant's July 30 reply stated that it agreed to produce documents and allow testimony to the matters listed in plaintiffs' motion and a letter from Mr. Pecau attached as Exhibit A to the motion.  The Court thus dismissed this issue of the motion as moot.

2.       This letter listed the following topics as the subject matter of Mr. Shlesinger's and Mr. Earle's depositions:

- Discussions and other communications between Mr. Shlesinger and defendant after the July 27, 2006, 9:59 AM email concerning the full report and references referred to in that e-mail.

- Other discussions and communications between Mr. Shlesinger and defendant prior to receipt of the August 18, 2006, cease and desist letter from plaintiff concerning the adoption and use of the Regions name, including the announcement of the change of name and defendant's reliance on advice of counsel.

- Conversations with Dr. Turner and other representatives of defendant concerning the adoption of defendant's new name beginning with Masters University.

3.    Defendant now objects to Questions 26-70[1] and 83-85, which are about Masters University.  As noted in Mr. Pecau's July 27 letter and by defendant's July 30 response, the parties have agreed Masters University is discoverable in these depositions.  Defendant relied in its motion for summary judgment on Mr. Shlesinger's advice on this topic.  Moreover, defendant has produced the minutes of its Board of Regents meeting on July 28, 2006, and the Policy Review Team meeting on July 27, 2006, which refer to Mr. Shlesinger's advice regarding the name Masters University.  Finally, Dr. Turner testified as to the advice he received regarding Masters University: "Our trademark attorney, Jim Shlesinger, recommended that we not change to Masters University.  He indicated that [Masters College of Bible] could contest it and that could pose a serious problem."  Turner Tr. 109, Ex. B.  Defendant has thus waived any privilege regarding Mr. Shlesinger's advice on the name Masters University.

4.    Defendant objects to Questions 156-163 and 281-285, which are about whether Mr. Shlesinger and Dr. Turner discussed whether the Regions University name is descriptive.  The e-mail opinion of Mr. Shlesinger discussed the registrability of the Regions University name.  Registrability includes a consideration of whether a mark is descriptive.  Accordingly,

---

[1] A copy of the Written Questions on Mr. Shlesinger and the Written Questions on Mr. Earle are attached as Exhibit A.

such discussions pertain to the factual predicate of Mr. Shlesinger's opinion concerning registrability, and plaintiffs may ask questions about whether Mr. Shlesinger discussed descriptiveness with defendant as part of his opinion on registrability.

5.      Defendant objects to Question 293, which asks if Dr. White, a representative of defendant, advised Mr. Shlesinger or Mr. Earle during a phone call on July 28, 2006 about plaintiffs' Regions University, that the Board of Regents approved defendant's adoption of the name Regions University.  This question concerns a handwritten note about a phone call that defendant produced in response to the Court's order.  The note was dated July 28 and refers to plaintiffs' "Regions Bank" and "Regions University."  The conversation and question is relevant to the issue of the facts that defendant provided Mr. Shlesinger or Mr. Earle regarding the advice that they were giving or not giving defendant concerning the registerability of the Regions University name and Regions' REGIONS and REGIONS UNIVERSITY names and marks.

6.      Defendant objects to Questions 318-324, which pertain to a note that defendant produced in response to plaintiffs' July 27 motion to compel.  The note states:

> REGIONS UNIVERSITY
> Bank in Alabama
> REGIONS BANK
> Get on File, soon
> 3 Brochures by
>     tomorrow
>                 File PRESS
>                 today

*See* Exhibit C.  Plaintiffs' questions also are designed to aid in the determination of whether defendant changed its name prematurely before obtaining the full advice of counsel, the facts surrounding defendant's explanation of plaintiffs to Mr. Shlesinger and Mr. Earle and whether defendant reasonably relied on Mr. Shlesinger or Mr. Earle's advice concerning plaintiffs and its Regions University program.

7.    Defendant objects to Questions 330-333, which ask about an August 16, 2006, letter announcing defendant's name change and quoting Mr. Shlesinger's opinion concerning registrability.  The parties agreed that this letter, attached as Exhibit B to plaintiffs' July 27 motion to compel and distributed prior to receipt of plaintiff's cease and desist letter, formed the initial basis for defendant's waiver of privilege because of the quotation.  Therefore, information on this letter is plainly discoverable.

8.    Defendant objects to Questions 348-351, which cover discussions with Dr. Turner concerning the name change after August 2, 2006.  The parties have already agreed that the deposition would include discussions concerning the name change prior to defendant's receipt of the August 18 cease and desist letter with the sole exception of the wording of a Regions University trademark application.  These questions specifically exclude discussions concerning the wording of any Regions University application.

**Defendant's Objections on Other Grounds:**

9.    Defendant objects to Question 120, which asks whether Dr. Turner told Mr. Shlesinger that everyone at defendant knew of Regions Bank.  However, Dr. Turner testified in his deposition that "everyone at defendant knows who Regions Bank is."  Turner Tr. 166, attached as Exhibit D.

10.    Defendant objects to Question 174, which asks whether Mr. Shlesinger informed Dr. Turner that when a mark is important, generally a Full Search is ordered from a company like Thomson CompuMark.  Plaintiffs are entitled to learn the facts and circumstances surrounding the search performed by Mr. Shlesinger.  Moreover, the term "Full Search" is not prejudicial to defendant.  It is descriptive of and commonly used for the kind of search Thomson

CompuMark performs.  *See* Ex. E, first page of a Thomson CompuMark search ordered by

plaintiffs ("Type of Search: *Full* US and Canadian.") (Emphasis added.)

11.    Defendant objects to Question 178, which asked the effect of ordering a Full

Search on Mr. Shlesinger's attorneys' fees.  Plaintiffs have not asked for the fees.  Rather,

plaintiffs have asked for evidence that defendant intentionally requested and got an opinion

regarding only registrability to save the cost of a far more expensive and involved opinion and

search on the availability of a mark for use and the risk of objection.  Moreover, the July 30

Court order granted plaintiffs' motion to compel with respect to "any underlying costs relating to

records searches."

12.    Defendant objects to questions 194-225, 229-230, 234-235, 249-250 that ask for

Mr. Shlesinger's belief and the basis for his belief of the understanding of Dr. Turner regarding

his advice.  These questions do not ask for mental impressions or information outside of the

personal knowledge of Mr. Shlesinger but are asking for facts that indicate what Dr. Turner's

understanding of his advice was.  Dr. Turner's understanding is at the heart of defendant's

defense of reasonable reliance on advice of counsel.

13.    Defendant objects to Question 194 that asks about the scope of Mr. Shlesinger's

e-mail opinion to Dr. Turner.  The Court's initial order denying defendant's motion for

protective order allows plaintiffs to ask Mr. Shlesinger questions about his e-mail opinion and

the factual predicate thereof.  Defendant's objection that the "best evidence of that e-mail is the

e-mail itself" defies the Court's order and would nullify the purpose of deposing Mr. Shlesinger

concerning the scope of the trademark search and the opinion resulting therefrom.

14.    Plaintiffs respectfully submit that its questions are within the scope of the waiver

of attorney-client privilege and request that the Court grant its motion to compel.

Respectfully submitted,


/s/ Charles B. Paterson
One of the Attorneys for Plaintiff Regions Asset
Company

**OF COUNSEL:**

Charles B. Paterson (PAT018)
Paul A. Clark (CLA076)
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
cpaterson@balch.com
pclark@balch.com

William G. Pecau
Rachel M. Marmer
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202)429-6244
Facsimile: (202)429-3902
wpecau@steptoe.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon all participants electronically and/or by facsimile a copy of the foregoing document this the 13th day of August, 2007:

Victor T. Hudson                                James E. Shlesinger
William W. Watts, III                           Shlesinger, Arkwright & Garvey LLP
Hudson & Watts, LLP                             1420 King Street
Post Office Box 989                             Suite 600
Mobile, Alabama 36601-0989                      Alexandria, Virginia 22314


/s/ Charles B. Paterson
OF COUNSEL

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

|  |  |  |
|---|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION and REGIONS BANK | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:06-cv-882-MHT |
| v. | ) ) ) | |
| REGIONS UNIVERSITY, INC. | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' WRITTEN DEPOSITION QUESTIONS TO JAMES SHLESINGER

### DIRECTIONS AND GUIDELINES

Written deposition questions under Rule 31 of the Federal Rules of Civil Procedure follow. Your answers to these questions are under oath as if you were testifying in person. Answer the questions to the best of your abilities. If you do not know an exact date, number or quantity, please provide your best approximation.

As used in these questions, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these questions any matter which might otherwise be construed to be outside of their scope.

As used in these questions, "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these questions any information which might otherwise be construed as outside their scope.

As used in these questions, "defendant" means the defendant in this action and its predecessors.

Other terms having particular meanings are defined below.

The following questions do not refer to any discussions with defendant or any of its representatives after August 18, 2007.

Attached to this document are exhibits that will be referenced in the questions below.

QUESTIONS

1.    Are you James E. Shlesinger?

2.    Are you employed by the law firm of Shlesinger, Arkwright & Garvey LLP?

3.    Are your offices located at 1420 King Street, Suite 600, Alexandria, VA 22314?

4.    Are you an attorney?

5.    In what states are you licensed to practice law?

6.    Have you ever been disbarred, suspended from the practice of law or subject to a bar disciplinary proceeding prior to August 18, 2006?

7.    If so, did you disclose such disbarment, suspension or bar disciplinary proceeding to defendant prior to August 18, 2006?

8.    If so, what did you tell the defendant concerning such disbarment, suspension or disciplinary proceeding?

9.    Whom at the defendant did you tell this to?

10.    When did you tell defendant this?

11.   Prior to August 18, 2006, were you ever sued for malpractice concerning a trademark opinion that you have rendered?

12.   If so, what was the result of that suit?

13.   Prior to August 18, 2006, did you advise Dr. Turner or someone else at defendant of such lawsuit(s) and/or the result(s) of such lawsuit(s)?

14.   If so, when did you advise Dr. Turner or someone else at defendant of such lawsuit(s) or their result(s)?

15.   What did you tell Dr. Turner or someone else at defendant of such lawsuit(s) or their result(s)?

16.   Whom did you tell at defendant of such lawsuit(s) or their result(s)?

17.   Do you understand the above Directions and Guidelines?

18.   If you do not, please identify each of the Directions and Guidelines that you do not understand and reasons for your difficulty in understanding such Direction or Guideline.

19.   In answering the questions posed to you today will you follow the above Directions and Guidelines?

20.   If not, please identify each Direction and Guideline that you do not intend to follow and state the reasons that you will not follow it.

21.   Are you represented in this deposition by counsel?

22.   Is your counsel present while these questions are being asked?

23.   What is the name of your counsel?

24.   Have you brought any papers or other documents with you to this deposition?

25.   If you have, please hand the documents to the reporter to be marked as exhibits, and, once they have been marked, answer the following questions for each such document:

   a.   What is the date, or if not known, to the best of your ability the approximate date, the document was prepared?

   b.   What other dates appear on the documents and for each date state the apparent event that the date is supposed to represent?

   c.   To whom is the document addressed?

   d.   By whom was it prepared?

   e.   When did you first become aware of this document?

f.    How did this document come to your attention?

g.    What was your purpose in bringing this document to this deposition?

h.    Was this document or its contents communicated to defendant?

i.    If so, when did such communication occur?

26.    Did you discuss with Dr. Turner or other person at defendant[1] any time prior to July 24, 2006, an initial refusal of the application to register the mark Masters on the Principal Register, Ser. No. 78/775,959, of the United States Patent and Trademark Office in an Office Action dated June 22, 2006 (the "Masters Application")?  Identify each document that refers or relates to any such discussion."

27.    Is Exhibit 26 a copy of the Office Action for the Masters Application (the "Office Action") that you discussed with Dr. Turner or other person at defendant?

28.    When was the first time you spoke to Dr. Turner or other person at defendant concerning an initial refusal of the Masters Application?

29.    Did you discuss with Dr. Turner or some other person at defendant that the only basis for the refusal of the Masters Application was the Examiner's claim that the Masters mark was merely descriptive?

30.    Did you explain to Dr. Turner or other person at defendant what a merely descriptive mark is?

31.    What did you tell him a merely descriptive mark is?

32.    Did you advise Dr. Turner or some other person at defendant that you thought the initial refusal of the Masters Application based on mere descriptiveness of the Masters mark might be overcome?

33.    Did you tell Dr. Turner or some other person at defendant the likelihood that the initial refusal of the Masters Application based on mere descriptiveness of the Masters mark might be overcome?

34.    If so, what did you tell Dr. Turner or some other person at defendant of defendant's chances of overcoming the initial refusal of the Masters Application by the Examiner based on descriptiveness?

---

[1] When a reference is made to "other person at defendant" or an equivalent reference that is meant to include any employee, director, or officer of defendant and any consultant representing defendant such as Dr. White.

35. The Office Action states "The examining attorney has searched the office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d)." Is that correct?

36. Did you advise or discuss with Dr. Turner that the meaning of the above statement was that the Examiner was not aware of any other marks registered or the subject of a prior application in the United States Patent and Trademark Office that would in the Examiner's opinion bar the registration of the Masters University mark by defendant?

37. Did you advise or discuss with Dr. Turner that if the mere descriptiveness initial refusal was overcome the Masters University mark would be passed on to publication in the *Official Gazette*?

38. Did you advise or discuss with Dr. Turner that even if the Masters University mark was passed by the Examiner on to publication in the Official Gazette that the Masters Application could be opposed and ultimately denied based on a claim by another person that the Masters University mark was so similar to its mark or name and is for such related goods or services that confusion would be likely?

39. Did you advise or discuss with Dr. Turner that even if the Masters University mark was registered the registration could be cancelled based on a proceeding brought by someone who claimed that the Masters University was so similar to its mark or name and is for such related goods or services that confusion would be likely?

40. Did you explain to Dr. Turner that even if the Masters Application was registered or passed the examination process another person without a registration or application in the United States Patent and Trademark Office could object and seek to enjoin use of the name Masters University based on prior use of a confusingly similar name or mark?

41. In your discussion with Dr. Turner concerning the possible adoption of the Masters University name was the name Masters College of Bible brought up?

42. Did Dr. Turner mention it?

43. Did Dr. Turner mention it in response to anything you said?

44. What did you say that prompted Dr. Turner to mention Masters College of Bible?

45. Did Dr. Turner tell you that he was aware of Masters College of Bible from the beginning of his consideration of the Masters University name?

46. How long did he tell you he was aware of the Masters College of Bible name?

47. Did you ask him how long he was aware of the Masters College of Bible name?

48. Did Dr. Turner tell you that he had not been concerned with the Masters College of Bible name?

49. Did Dr. Turner explain to you why he was not concerned with the Masters College of Bible name?

50. What was his explanation for his absence of concern with the Masters College of Bible name?

51. Did you ask Dr. Turner what he knew and/or how he knew of Masters College of Bible?

52. What did he say?

53. Did you ask Dr. Turner if he knew if the Masters College of Bible name was in use?

54. What did he say?

55. Did you ask him where the Masters College of the Bible was located?

56. What did he say?

57. Did you ask Dr. Turner if defendant had conducted any investigation into the use of Masters College of Bible?

58. Did you express any concern to Dr. Turner that the use of Masters College of Bible might affect the availability of the Masters University name for use by defendant?

59. What concern did you express to Dr. Turner arising out of the possible use of the name Masters College of Bible?

60. Did you explain to Dr. Turner that defendant's use of Masters University might infringe the Masters College of Bible name?

61. Did you advise Dr. Turner that the Masters College of Bible name would prevent the use by defendant of the Masters University name?

62. Did you advise Dr. Turner that the Masters College of Bible name might represent a risk to the adoption and use of the name Masters University by defendant?

63. Did you advise Dr. Turner that further investigation should be performed into the use of Masters University?

64. Did you advise Dr. Turner that you would need more facts or an investigation or would have to consider further whether the Masters University name would be available for use by defendant?

65. Did Dr. Turner request an opinion from you concerning the availability of the mark Masters University for use by defendant?

66. Did Dr. Turner ask you to assess the risk posed by the Masters College of Bible name to defendant regarding its adoption and use of the Masters University name?

6

67. Did you ever evaluate the risk posed by the name Masters College of Bible to defendant in its adoption and use of the Masters University name?

68. Did you ever communicate to Dr. Turner or anyone else at defendant an opinion concerning the risk posed by the name Masters College of Bible to defendant in its adoption and use of the Masters University name?

69. If so, was that opinion provided in writing or memorialized in anyway?

70. Did you offer to conduct a search concerning the availability of the mark Masters University?

71. Did Dr. Turner or other person at defendant tell you on or prior to July 27, 2006, that defendant was headquartered in Montgomery, Alabama?

72. Did you ask Dr. Turner on or prior to August 2, 2006, where defendant was headquartered?

73. On or prior to August 2, 2006, did you know that defendant was headquartered in Montgomery, Alabama?

74. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006, that virtually all the students taking courses at defendant were from the United States?

75. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006 that a majority of the students taking courses at defendant was from the Southern part of the United States?

76. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006, the defendant advertised its services using television?

77. Did Dr. Turner or other person at defendant tell you that in 2006 most of its media advertising was in Alabama and Tennessee or was planned to be in those states?

78. Dr. Turner has testified that he spoke to you on or about July 24, 2006.

79. Did you speak to Dr. Turner on or about July 24, 2006, concerning possible names for the defendant?

80. Did he call you?

81. If so, did he tell you the reason he called you?

82. What did he tell you the reason was that he called you?

83. Did he say anything about the name Masters?

84. What did he say to you about the name Masters?

85.    What did you say to him about the name Masters?

86.    Did you call him?

87.    If so, why did you call him?

88.    Did Dr. Turner tell you on or about July 24, 2006, that he wanted your opinion concerning the names Turner University, Regions University and Rex University?

89.    Did you discuss with him the kind of opinion that he was looking for?

90.    Did you tell him that there were different kinds of opinions that you could provide regarding the registerability of a name in the United States Patent and Trademark Office or the availability of a name for use in connection with an institution, service or product?

91.    Did you tell him that an opinion regarding the availability of an important name for an institution, service or product requires the evaluation of the uses or possible uses of other marks and names that might not be registered in addition to marks that are registered?

92.    Did you advise Dr. Turner on or about July 24, 2006, that you would provide an opinion that would evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Regions University by defendant?

93.    Did you advise Dr. Turner on or about July 24, 2006, that you would provide an opinion that would evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Rex University by defendant?

94.    Did you advise Dr. Turner on or about July 24, 2006, that you would provide an opinion that would evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Turner University by defendant?

95.    Did Dr. Turner indicate to you on or about July 24, 2006, that he understood that in your opinion you would evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Regions University by defendant?

96.    Did Dr. Turner indicate to you on or about July 24, 2006, that he understood that you would in your opinion evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Rex University by defendant?

97.    Did Dr. Turner indicate to you on or about July 24, 2006, that he understood that you would in your opinion evaluate the risks of objection from others who might claim infringement or dilution of their marks by reason of the use of the name Turner University by defendant?

98.  Did you advise Dr. Turner on or prior to July 27, 2006, that a person might successfully object to the use of the name Regions University based on a claim that the name Regions University when used by defendant in connection with its business or services would be likely to cause confusion?

99.  Did you explain to Dr. Turner on or prior to July 27, 2006, that the standard for trademark infringement is likelihood of confusion as to source, sponsorship, or affiliation?

100. Did you advise Dr. Turner on or prior to July 27, 2006, that mark or name can be infringed by the use of another similar name or mark even where the services or products that are identified by the similar marks are not competitive?

101. Did you advise Dr. Turner on or prior to July 27, 2006, that a person could object to the use of the name Regions University based on a claim that the name Regions University when used by defendant in connection with its business or services would be likely to cause confusion?

102. Did you advise Dr. Turner on or prior to July 27, 2006, that a person might object to the use of the name Regions University based on a claim that the name Regions University when used by defendant in connection with its business or services would be likely to cause confusion?

103. Did Dr. Turner tell you on or prior to July 27, 2006, that he wanted to have an opinion concerning the registerability of the names Turner University, Regions University and Rex University for educational services or other products or services?

104. On or about July 24, 2007, when you spoke to Dr. Turner, did he mention the name "Regions" used in connection with a bank or other financial institution?

105. Did he tell you the reason he mentioned the name Regions?

106. What did he tell you?

107. Did you ask for the reason that he mentioned in your discussion with him on or about July 24, 2007, the name Regions used by a bank or other financial institution?

108. If so what did you ask him?

109. Did he respond to you question?

110. What was his response?

111. Did you advise Dr. Turner on or about July 24, 2007, that you were not aware of Regions bank or other financial institution using the name Regions?

112. Did Dr. Turner tell you that Regions was one of the most prominent banks in Montgomery?

113.   Did Dr. Turner tell you that Regions was one of the most prominent banks in Alabama?

114.   Did Dr. Turner tell you that Regions was one of the largest financial institutions in the United States?

115.   Did Dr. Turner tell you that he had an account with Regions for years?

116.   Did Dr. Turner tell you that there were scores of Regions bank branches in Montgomery, Alabama?

117.   Did Dr. Turner tell you that Regions signs were prominent on one or more of the largest buildings in Montgomery?

118.   Did Dr. Turner tell you that Regions regularly advertised on television in the Montgomery market?

119.   Did Dr. Turner tell you that Regions regularly promoted its services under the Regions name and mark in magazines, newspapers, billboards or other media in the Montgomery area?

120.   Did Dr. Turner tell you that everyone at defendant knew of Regions bank?

121.   Did Dr. Turner tell you that he was aware of the announcement prior to July 24, 2006, of the announced merger of Regions bank with AmSouth bank?

122.   Did you ask Dr. Turner anything about Regions after he had mentioned the name Regions for a bank or other financial institution?

123.   If so, what did you ask Dr. Turner?

124.   What was Dr. Turner's response?

125.   When Dr. Turner mentioned to you Regions Bank on or before July 27, 2006, did he ask your opinion whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

126.   If so, did you advise Dr. Turner on or before July 27, 2006, that you would have to conduct any investigation or conduct any kind of search before you provided Dr. Turner or defendant with an opinion as to whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

127.   Did you tell Dr. Turner on or before July 27, 2006, the kind of search or investigation that you would have to conduct or have conducted before you provided Dr. Turner or defendant with an opinion as to whether Regions bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

128.   Did you ever conduct or have conducted prior to August 18, 2006, the kind of search investigation that would be appropriate for you to provide Dr. Turner or defendant with

an opinion as to whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

129.  If so, please identify the search or investigation that you conducted or had conducted on or before August 2, 2006, that would be appropriate for you to have rendered an opinion as to whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant.

130.  Did you ever provide prior to August 18, 2006, Dr. Turner or other person at defendant an opinion whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

131.  If the answer to question 130 is yes, please state whether the opinion was written or oral.

132.  If the answer to question 130 is yes, please state when you provided such an opinion.

133.  If the answer to question 130 is yes, please identify any document that refers or relates to an opinion that you provided on or before August 18, 2006, concerning whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant.

134.  At any other time prior to August 18, 2006, did Dr. Turner or other person at defendant ask you to provide an opinion whether Regions Bank or its name and mark Regions posed any risk in the adoption and use of the name Regions University by defendant?

135.  If so, did you advise Dr. Turner or other person at defendant of the appropriate kinds of searches and/or investigations that would have to be conducted in order for you to provide Dr. Turner or another person at defendant with an opinion as to whether Regions Bank or its name and mark Regions posed a risk in the adoption and use of the name Regions University by defendant? And if so, what did you tell Dr. Turner or another person at defendant concerning the appropriate kinds of searches and/or investigations that would have to be conducted?

136.  After Dr. Turner advised you of Regions Bank on or about July 24, 2006, did you suggest to Dr. Turner that it might be advisable to determine whether the mark Regions, Regions Bank or other Regions mark used by the bank was registered in the United States Patent and Trademark Office?

137.  Did you have any discussions with Dr. Turner or anyone else at defendant prior to August 18, 2006, concerning the advisability of determining whether Regions, Regions Bank or other Regions mark used by Regions Bank was registered in the United States Patent and Trademark Office?

138.  If you had such a discussion, when did the discussion occur?

139.  If you had such a discussion, what did you tell Dr. Turner or the other person at defendant?

11

140.   What did Dr. Turner or the other person at defendant tell you?

141.   Did you suggest to Dr. Turner or any other person at Regions that it might be advisable to have an investigation concerning the use by Regions Bank of the mark Regions?

142.   If you had such a discussion, when did the discussion occur?

143.   If you had such a discussion, what did you tell Dr. Turner or the other representative of Regions?

144.   What did Dr. Turner or the representative of defendant tell you?

145.   Did Dr. Turner on or before July 27, 2006, mention any entities in addition to Regions Bank that used the word "Regions" in its name or for a mark for a service or product?

146.   If so, identify the entities and the names or marks that Dr. Turner mentioned?

147.   State what Dr. Turner told you about each entity and mark that you identify in response to the foregoing question.

148.   Did Dr. Turner mention any other entities that might use, register or have applied for the name Regions in connection with his request to you for an opinion concerning the registerability of the name Regions University?

149.   If so, what other entities did he mention?

150.   Did Dr. Turner mention to you that he had conducted his own search of the records of the United States Patent and Trademark Office concerning the name Regions University?

151.   If so, did Dr. Turner advise you of the results of a search of the records of the United States Patent and Trademark Office concerning the name Regions University?

152.   If Dr. Turner told you that he had conducted his own search concerning Regions University in the records of the United States Patent and Trademark Office, did Dr. Turner tell you that he had retained copies of the results of any such search?

153.   Did you ask him for the results of any such search?

154.   Did Dr. Turner offer to share with you the results of his search of the records of the United States Patent and Trademark Office concerning the name Regions University?

155.   On or about July 26, 2006, did Dr. Turner mention any names of third parties who might use the name "Turner" or "Rex"?

156.   Did you advise Dr. Turner that the word "Regions" was descriptive of a university?

157.   Did you discuss with Dr. Turner whether the word "Regions" was descriptive of a university?

158.    What did you tell Dr. Turner, if anything, on or prior to July 27, 2006, concerning whether the word "Regions" was descriptive of the name of a university?

159.    If you told Dr. Turner that the word "Regions" might be descriptive of a university on or prior to July 27, 2006, did Dr. Turner indicate any concern whether the mark Regions University might be registrable on the United States Patent and Trademark Office?

160.    If so, what did Dr. Turner say?

161.    Did you offer to Dr. Turner to provide any opinion directed to whether the name Regions University was descriptive of a university?

162.    Did Dr. Turner or other person at defendant ever ask you prior to August 18, 2006, whether the name Regions University was descriptive of a university?

163.    Do you have or have you seen any document that refers or relates to any discussion or communication with anyone at defendant concerning whether the name Regions University was descriptive of a university?  If so, identify such documents.

164.    Let me direct your attention to Exhibit 28.  Is this an e-mail that you sent to Dr. Rex Turner on July 27, 2006?

165.    The first sentence of the e-mail is "Pursuant to your request, we conducted searches of the United States Patent and Trademark Office (USPTO) records in an effort to determine registrability of each of the above identified marks [Turner University, Rex University and Regions University], for use in association with educational services at the post-secondary level."  Is that correct?

166.    Did Dr. Turner ask you to conduct search of the United States Patent and Trademark Office records regarding the Turner University, Rex University and Regions University marks?

167.    Was that request made by Dr. Turner on July 24, 2006?

168.    Did he ask you to search only the United States Patent and Trademark Office records?

169.    Had you previously discussed with Dr. Turner that there are other records that are available to search for trademarks and names that do not appear on the records of the United States Patent and Trademark Office?

170.    If so, what did you tell Dr. Turner about these other records?

171.    Did you tell Dr. Turner that there are trademark search firms that, for a fee, search other records for names and trademarks that might be in use that do not appear in the United States Patent and Trademark Office records as well as the records of the United States Patent and Trademark Office?

13

172. Did you tell him that the cost of a search of marks and names that are not registered in addition to marks that appear on the United States Patent and Trademark Office's database is more expensive than a search on the United States Patent and Trademark Office database alone?

173. Did you tell him that your evaluation of a search of marks that are not registered in addition to marks that appear on the United States Patent And Trademark Office's database would be more expensive than a search on the United States Patent and Trademark Office database alone?

174. Did you tell Dr. Turner that where an entity is seeking to adopt a name or mark that is important to it that generally it orders a search report from a company like Thomson CompuMark that shows the results of searches of names and marks potentially relevant to an evaluation of the availability or registrability of a mark or name from records indicating use in addition to United States Patent and Trademark Office records (such search reports hereafter a "Full Search")?

175. Is Exhibit 500 an example of a Full Search?

176. Did you discuss with Dr. Turner the differences between a Full Search and a search of the United States Patent and Trademark Office records by you or your firm?

177. If so, what did you tell him about the costs of conducting three Full Searches?

178. What did you tell him about the effect on your fees to evaluate three Full Searches?

179. What did you tell him about the time that a Full Search would take?

180. What did you tell him about the costs of obtaining an expedited Full Search?

181. What did you tell him about the time that Full Searches and an opinion based on Full Searches take?

182. What else did you tell him about the differences between a Full Search and a search of the United States Patent and Trademark Office records by you or your firm?

183. Did you discuss with Dr. Turner on or before July 27, 2006, the benefits of using a trademark search firm to search other records for names and trademarks that might be in use that do not appear in the United States Patent and Trademark Office?

184. What did you discuss with Dr. Turner concerning the use of a trademark search firm for an availability search?

185. Did Dr. Turner ask you the alternatives to having your firm conduct searches of the United States Patent and Trademark Office records?

186. Did you discuss with Dr. Turner any alternatives to having your firm conduct searches of the United States Patent and Trademark Office records?

14

187.  What was your discussion with Dr. Turner concerning such alternatives? What did you say to him? What did he say to you?

188.  Had you previously discussed with Dr. Turner before July 27, 2006, that you would not be searching records other than the records of the United States Patent and Trademark Office?

189.  Did you explain to Dr. Turner your reasons to limit your search to the records of the United States Patent and Trademark Office?

190.  What was your explanation to Dr. Turner of your reasons to limit your search to the records of the United States Patent and Trademark Office?

191.  Did Dr. Turner agree that you should limit your search to the records of the United States Patent and Trademark Office?

192.  What did Dr. Turner say about your search being limited to the records of the United States Patent and Trademark Office?

193.  Did you advise Dr. Turner and defendant in your e-mail, Exhibit 28, concerning the registrability of each of the marks Turner University, Rex University and Regions University?

194.  Is it correct that when you advised Dr. Turner and defendant in your e-mail, Exhibit 28, concerning the registerability of the marks Turner University you were advising Dr. Turner and defendant of your opinion of the likelihood that the United States Patent and Trademark Office might refuse an application by defendant to register the mark Turner University based on the marks appearing on the register of the United States Patent and Trademark Office?

195.  Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that you were advising Dr. Turner and defendant of your opinion of the likelihood that the United States Patent and Trademark Office might refuse an application by defendant to register the mark Turner University based on the marks appearing on the register of the United States Patent and Trademark Office?

196.  If the answer to the prior question is yes, explain the basis of your belief.

197.  If the answer to question 195 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

198.  Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would object to defendant's application to register the mark Turner University?

199.  Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the

likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would object to defendant's application to register the mark Turner University?

200.  If the answer to the prior question is yes, explain the basis of your belief.

201.  If the answer to question 199 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

202.  Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would seek to oppose defendant's application to register the mark Turner University?

203.  Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would seek to oppose defendant's application to register the mark Turner University?

204.  If the answer to the prior question is yes, explain the basis of your belief.

205.  If the answer to question 203 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

206.  Is it correct that, your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would be able to successfully oppose defendant's application to register the mark Turner University?

207.  Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would be able to successfully oppose defendant's application to register the mark Turner University?

208.  If the answer to the prior question is yes, explain the basis of your belief.

209.  If the answer to question 207 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

210.  Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail would be able to successfully enjoin defendant's use of the name Turner University as the name of its institution?

211.  Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that Ted Turner or the owners of the marks cited in that section of your e-mail

would be able to successfully enjoin defendant's use of the name Turner University as the name of its institution?

212. If the answer to the prior question is yes, explain the basis of your belief.

213. If the answer to question 211 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

214. Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that anyone who uses a mark or name which does not appear in the records of the Patent and Trademark Office would be able to successfully enjoin defendant's use of the name Turner University as the name of its institution?

215. Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that anyone who uses a mark or name which does not appear in the records of the Patent and Trademark Office would be able to successfully enjoin defendant's use of the name Turner University as the name of its institution?

216. If the answer to the prior question is yes, explain the basis of your belief.

217. If the answer to question 215 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

218. Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that someone could seek to oppose the application to register the name Regions University as the name of the institution?

219. Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that someone could seek to oppose the application to register the name Regions University as the name of the institution?

220. If the answer to the prior question is yes, explain the basis of your belief.

221. If the answer to question 219 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

222. Is it correct that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that someone would be able to successfully enjoin defendant's use of the name Regions University as the name of its institution?

223. Is it your belief that Dr. Turner and defendant understood prior to August 2, 2006, that your e-mail, Exhibit 28, does not provide Dr. Turner or defendant your opinion of the likelihood that someone would be able to successfully enjoin defendant's use of the name Regions University as the name of its institution?

224. If the answer to the prior question is yes, explain the basis of your belief.

225.    If the answer to question 222 is no, explain the reason(s) that you do not believe Dr. Turner and defendant had that understanding.

226.    Did you discuss with Dr. Turner the limits of your opinion prior to sending your email, Exhibit 28?

227.    When did you have such a discussion with Dr. Turner?

228.    What did you tell Dr. Turner concerning the limits of the opinion that you would give? What did Dr. Turner say to you?

229.    Were you satisfied that Dr. Turner understood the limits of the opinion that you would be giving?

230.    What made you believe that Dr. Turner understood the limits of the opinion that you would be giving?

231.    Did you discuss with Dr. Turner the limits of the scope of your opinion any time on or after July 27, 2006 but before August 18, 2006?

232.    What did you tell Dr. Turner concerning the limits of the opinion that you gave?

233.    What did Dr. Turner say to you?

234.    Were you satisfied that Dr. Turner understood the limits of the opinion that you gave?

235.    What made you believe that Dr. Turner understood the limits of the opinion that you gave?

236.    Did you advise Dr. Turner on or after July 27, 2006, but before August 18, 2006, that you were not providing him or defendant with an opinion that assessed the availability of the name Regions University for use by defendant as the name of its institution?

237.    If so, when did you provide Dr. Turner this advice?

238.    What did you tell Dr. Turner?

239.    What did he say to you?

240.    Did Dr. Turner ask you at any time prior to August 18, 2006 for an opinion that assessed the availability of the name Regions University for use by defendant as the name of its institution?

241.    Did anyone on behalf of defendant ever ask you prior to August 18, 2006 for an opinion that assessed the availability of the name Regions University for use by defendant as the name of its institution?

242.    Who asked you for such an opinion?

18

243.    When did that person ask you for such an opinion?

244.    What did that person say to you concerning such an opinion?

245.    What did you say to that person concerning such an opinion?

246.    Do you have any notes, diary entries or other documents concerning any discussions you might have had with Dr. Turner or anyone else representing defendant concerning the scope of or limits to the opinion appearing in your email Exhibit 28.

247.    I direct your attention to the document beginning with bates no. RU3645 and its attachments that end with bates no. RU 3683, and that have been marked as Exhibit 501. Is this the "full report, including copies of the references developed" referenced in Exhibit 28?

248.    What do you mean by "references developed" in Exhibit 28?

249.    Is it correct that the only mark appearing in Exhibit 501 that contained the name "Regions" was the mark Regions Charity Classic, in International Class 41.

250.    The Regions Charity Classic mark is shown in the reference on page bates no. RU 3672 in Exhibit 501 as owned by plaintiff Regions Asset Company?

251.    Does International Class 41 include educational services?

252.    Did you advise Dr. Turner or anyone at defendant of the mark Regions Charity Classic at any time before August 18, 2006?

253.    If so, did you tell Dr. Turner or anyone at defendant that the Regions Charity Classic mark was the only reference developed in your search of the United States Patent and Trademark Office that was for a mark that contained the word "Regions"?

254.    If so, did you tell Dr. Turner or anyone at defendant that the Regions Charity Classic mark was in the same class of goods or services as educational services?

255.    What did you tell Dr. Turner or anyone at defendant concerning the mark Regions Charity Classic?

256.    Did you discuss with Dr. Turner or anyone else at defendant that the mark Regions Charity Classic was for a service provided by Regions Bank?

257.    Let me direct your attention to the references that are a part of Exhibit 501, each of the references is for a mark that is, or was, the subject of an application to register or a registration in the United States Patent and Trademark Office in International Class 41 or contained the word "online" or the word "education" in the description of its goods or services. Is this correct?

258. Were the search criteria employed for the Regions University search limited to references for a mark that is, or was, the subject of an application to register or a registration in the United States Patent and Trademark Office in International Class 41 or contained the word "online" or the word "education" in the description of its goods or services?

259. Were there any other search criteria used for the Regions University search in the United States Patent and Trademark Office records?

260. If so, what were the other criteria employed in your search for Regions University?

261. Did you discuss on or prior to July 27, 2006 with Dr. Turner or any one else at defendant the limited criteria that would be used for the Regions University search?

262. What did you tell Dr. Turner or another person at defendant concerning the search criteria that would be used for the Regions University search?

263. What was the response of Dr. Turner or other person at the defendant concerning the search criteria that would be used for the Regions University search?

264. Did you discuss on or after July 27, 2006 and prior to August 18, 2006 with Dr. Turner or any one else at defendant the limited criteria that would be used for the Regions University search?

265. What did you tell on or after July 27, 2006 and prior to August 18, 2006 Dr. Turner or another person at defendant concerning the search criteria that were used for the Regions University search?

266. What was the response on or after July 27, 2006 and prior to August 18, 2006 of Dr. Turner or other person at the defendant concerning the search criteria that were used for the Regions University search?

267. Did you tell Dr. Turner prior to July 27, 2006, that the Regions University search would not include all the marks appearing in the records of the United States Patent and Trademark Office that contained the word "Regions"?

268. Did you tell Dr. Turner prior to July 27, 2006, that the Regions University search would not reveal any marks appearing in the records of the United States Patent and Trademark Office containing the word "Regions" but not registered in International Class 41 and whose description of goods or services did not include either the word "online" "education"?

269. Did you tell Dr. Turner on or after July 27, 2006, but before August 18, 2006, that the Regions University search did not include all the marks appearing in the records of the United States Patent and Trademark Office that contained the word "Regions"?

270. Did you tell Dr. Turner on or after July 27, 2006, but before August 18, 2006, that the Regions University search did not reveal any marks appearing in the records of the United States Patent and Trademark Office containing the word "Regions" that was not

registered in International Class 41 or whose description of goods or services did not include either the word "online" or "education"?

271. Did Dr. Turner or anyone else at defendant ask you prior to August 18, 2006, to perform a more complete search than the search that developed the references in Exhibit 28?

272. Did Dr. Turner or anyone else at defendant ask you prior to August 18, 2006, to provide a broader opinion than the one contained in Exhibit 28?

273. Are Exhibit 28 and Exhibit 501 the only documents that you have in your possession or control that refer or relate to your discussions with Dr. Turner and others at defendant concerning the change of the defendant's name?

274. Did you ever send Exhibit 501 to defendant?

275. Did you on or after July 27, 2006, discuss with Dr. Turner or someone else at defendant about sending Exhibit 501 to defendant?

276. When did you have that discussion?

277. With whom did you have that discussion?

278. Was there a decision made by Dr. Turner or someone else at defendant that you should not send Exhibit 501 to defendant?

279. Were you told the reason that Exhibit 501 should not be sent to defendant?

280. What was the reason that you were told that Exhibit 501 was not to be sent to defendant?

281. Does your e-mail Exhibit 28 advise Dr. Turner that Regions University is merely descriptive and not registrable on the Principal Register of the United States Patent?

282. Prior to July 27, 2006, did you ever discuss with Dr. Turner whether the name Regions University was merely descriptive?

283. If so, did you tell Dr. Turner or any one else at defendant that Regions University was merely descriptive and would not be registrable on the Principal Register of the United States Patent and Trademark Office?

284. Did you ever advise Dr. Turner or any one else at defendant prior to August 18, 2006, that Regions University was merely descriptive?

285. Did you memorialize in any form a discussion with or advice that you gave to defendant prior to August 18, 2006, that the name Regions University was merely descriptive?

286. Is Exhibit 502, notes of a telephone conversation by you or a partner at your law firm concerning a discussion on July 28, 2006?

287. Whose notes are shown in Exhibit 502.

288.  Are these the notes of the person at your firm having the discussion on July 28, 2006?

289.  Were these notes made on July 28, 2006?

290.  Was the discussion with Dr. White who was calling on behalf of defendant?

291.  Did this discussion concern defendant's adoption of the name Regions University?

292.  Does the "REGIONS UNIVERSITY" noted in Exhibit 502 refer to the Regions University of Regions Bank?

293.  Did Dr. White advise you or a partner of your firm that the Board of Regents of defendant had approved the adoption of Regions University as the defendant's name the day before on July 27, 2006?

294.  Did you have a discussion with anyone on July 28, 2006, concerning Regions Bank's Region University?

295.  If so, whom did you have a discussion with concerning Regions Bank's Regions University?

296.  Did that person tell you that Regions Bank uses the name Regions University?

297.  Did that person tell you that Regions Bank was the largest bank in Alabama?

298.  Did that person tell you that Regions Bank was one of the largest banks in Alabama?

299.  Did that person tell you that Regions Banks was one of the largest banks in the United States?

300.  Did that person tell you that Regions Bank was the largest bank in Montgomery?

301.  Did that person tell you that Regions Bank was one of the largest banks in Montgomery? Did you conduct any investigation or have an investigation conducted to determine how large Regions Bank was either in Montgomery, Alabama or the United States?

302.  Did you hire an investigator to determine the extent of use of the name Regions University or whether Regions University was used as s recruiting tool by Regions bank?

303.  Did you call, or someone on your behalf call, Regions bank to find out the extent of use of the name Regions University or whether Regions University was used as a recruiting tool by Regions bank?

304.  If so, when was the call made?

305.  Who made the call and what was learned about Regions University?

306.  Did you ask defendant if it conducted an investigation into the use of Regions University by Regions bank?

307.   If so, did defendant tell you the results of its investigation?

308.   What did defendant tell you about Regions University?

309.   What did defendant tell you of the investigation that it conducted?

310.   When you spoke with Dr. White on July 28, 2006, did you provide him any advice concerning whether the Regions University name of Regions bank posed any risk in the adoption or use of Regions University by defendant?

311.   Did you provide Dr. White advice on July 28, 2006, concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of Regions University by defendant?

312.   Did you base the advice you gave Dr. White on July 28, 2006 concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of Regions University by defendant any trademark search or other investigation you conducted or that was conducted on your behalf?

313.   Did you provide defendant with a legal opinion prior to August 18, 2006 concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of the Regions University name by defendant?

314.   If the answer to question no. 313 is yes, what is the legal opinion that you provided to defendant?

315.   If the answer to question no. 313 is yes, when did you provide a legal opinion and to whom did you provide such legal opinion?

316.   If the answer to question no. 313 is yes, is the opinion you gave in writing or memorialized in anyway?

317.   If the answer to question no. 313 is no, did you explain to defendant that you were not providing defendant a legal opinion as to the risk posed by the use of Regions University name by Regions Bank?

318.   In Exhibit 502, the document says "Get on File, soon." Does this mean that defendant wanted you to file an application to register the name Regions University for them soon?

319.   If "Get on File, soon," means something else what does it mean?

320.   In Exhibit 502, what does "3 Brochures by tomorrow" refer to?

321.   Did the "3 Brochures" refer to specimens of use of the "Regions University" name

322.   Were the "3 Brochures" to be used for a trademark application for "Regions University" based on use of the Regions University name?

323. Did defendant intend to get to your firm "3 Brochures" that referred to "Regions University" on July 28, 2006 for a trademark application?

324. Exhibit 502 states "File PRESS today." Does that refer to defendant's intention to announce the adoption of the name Regions University by a press release on July 28, 2006?

325. After July 28, 2006, and before August 18, 2006, did you have any discussions with Dr. Turner, or Dr. White or any other person at defendant concerning the use by Regions bank of the Regions name or mark, including Regions University, Region Charity Classic or Regions Bank?

326. When did you have such discussion?

327. Who were the persons involved in any of those discussions?

328. Were those discussions memorialized in any way or referred to in any document?

329. Please identify all such documents.

330. Did you have any discussions with Dr. Turner or another person at defendant concerning Exhibit 34 or any draft of Exhibit 34 prior to the dissemination of Exhibit 34?

331. Did Dr. Turner or another person at defendant solicit your comments concerning Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

332. What explanation, if any, did Dr. Turner or another person at defendant give for soliciting your comments concerning Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

333. What, if any, comments did you have with Dr. Turner or another person at defendant concerning the Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

334. When Dr. Turner spoke to you on or about July 24, 2006, did he indicate when he would like your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

335. If so, when did he say it would like to obtain your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

336. Did Dr. Turner give you a reason for the time he would like to obtain your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

337. When Dr. Turner spoke to you on or about July 24, 2006, did he indicate whether there was any urgency in obtaining your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

338.   If so, what did he say about the urgency of obtaining your opinion concerning the registerability of the marks Turner University, Rex University, and Regions University?

339.   Had you spoken with Dr. Turner prior to July 24, 2006, concerning the name Regions University?

340.   Had you spoken with Dr. Turner or any one else at defendant prior to July 24, 2006, concerning the name or mark Regions?

341.   Had you spoke with Dr. Turner prior to July 24, 200t, concerning Regions bank or any Regions marks used by Regions Bank?

342.   Had you spoken with anyone in addition to Dr. Turner prior to July 24, 2006, concerning the name Regions University?

343.   Had you spoken with anyone in addition to Dr. Turner or any one else at defendant prior to July 24, 2006, concerning the name or mark Regions?

344.   Had you spoke with anyone in addition to Dr. Turner prior to July 24, 200t, concerning Regions bank or any Regions marks used by Regions Bank?

345.   Did Dr. Turner indicate any time on or before July 27, 2006, that he preferred any one of the three names Turner University, Rex University, or Regions University over the other?

346.   What name was that?

347.   What did Dr. Turner say that indicated that he had a preference for that name over the other names?

348.   Did you have any discussions with Dr. Turner concerning the change of the name of the defendant after August 2, 2006 (other than discussions concerning the description of goods or services in any Regions University trademark application)?

349.   If so when did you have such discussions?

350.   What was the subject matter of those discussions?

351.   Were those discussions memorialized in any way?

25

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION and REGIONS BANK | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:06-cv-882-MHT |
| v. | ) ) | |
| REGIONS UNIVERSITY, INC. | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' WRITTEN DEPOSITION QUESTIONS TO DANIEL EARLE

DIRECTIONS AND GUIDELINES

Written deposition questions under Rule 31 of the Federal Rules of Civil Procedure follow. Your answers to these questions are under oath as if you were testifying in person. Answer the questions to the best of your abilities. If you do not know an exact date, number or quantity, please provide your best approximation.

As used in these questions, the singular and plural forms of words shall be interpreted interchangeably so as to bring within the scope of these questions any matter which might otherwise be construed to be outside of their scope.

As used in these questions, "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these questions any information which might otherwise be construed as outside their scope.

As used in these questions, "defendant" means the defendant in this action and its predecessors.

Other terms having particular meanings are defined below.

The following questions do not refer to any discussions with defendant or any of its representatives after August 18, 2007.

Attached to the accompanying Plaintiffs' Written Questions to James Shlesinger are the exhibits that will be referenced in the questions below.

QUESTIONS

1.    Are you Daniel Earle?

2.    Are you employed by the law firm of Shlesinger, Arkwright & Garvey LLP?

3.    Are your offices located at 1420 King Street, Suite 600, Alexandria, VA 22314?

4.    Are you an attorney?

5.    In what states are you licensed to practice law?

6.    Have you ever been disbarred, suspended from the practice of law or subject to a bar disciplinary proceeding prior to August 18, 2006?

7.    If so, did you disclose such disbarment, suspension or bar disciplinary proceeding to defendant prior to August 18, 2006?

8.    If so, what did you tell the defendant concerning such disbarment, suspension or disciplinary proceeding?

9.    Whom at the defendant did you tell this to?

2

10.    When did you tell defendant this?

11.    Prior to August 18, 2006, were you ever sued for malpractice concerning a trademark opinion or advise that you have provided?

12.    If so, what was the result of that suit?

13.    Prior to August 18, 2006, did you advise Dr. Turner, Dr. White or someone else at defendant of such lawsuit(s) and/or the result(s) of such lawsuit(s)?

14.    If so, when did you advise Dr. Turner, Dr. White or someone else at defendant of such lawsuit(s) or their result(s)?

15.    What did you tell Dr. Turner, Dr. White or someone else at defendant of such lawsuit(s) or their result(s)?

16.    Whom did you tell at defendant of such lawsuit(s) or their result(s)?

17.    Do you understand the above Directions and Guidelines?

18.    If you do not, please identify each of the Directions and Guidelines that you do not understand and reasons for your difficulty in understanding such Direction or Guideline.

19.    In answering the questions posed to you today will you follow the above Directions and Guidelines?

20.    If not, please identify each Direction and Guideline that you do not intend to follow and state the reasons that you will not follow it.

21.    Are you represented in this deposition by counsel?

22.    Is your counsel present while these questions are being asked?

23.    What is the name of your counsel?

24.    Have you brought any papers or other documents with you to this deposition?

25.    If you have, please hand the documents to the reporter to be marked as exhibits, and, once they have been marked, answer the following questions for each such document:

    a.    What is the date, or if not known, to the best of your ability the approximate date, the document was prepared?

    b.    What other dates appear on the documents and for each date state the apparent event that that date represents?

    c.    To whom is the document addressed?

    d.    By whom was it prepared?

3

     e.      When did you first become aware of this document?

     f.      How did this document come to your attention?

     g.      What was your purpose in bringing the document to this deposition?

     h.      Was this document or its contents communicated to defendant?

     i.      If so, when did such communication occur?

26.     Did you discuss with Dr. Turner or other person at defendant[1] any time prior to July 24, 2006, an initial refusal of the application to register the mark Masters on the Principal Register, Ser. No. 78/775,959, of the United States Patent and Trademark Office in an Office Action dated June 22, 2006 (the "Masters Application").

27.     Is Exhibit 26 a copy of the Office Action for the Masters Application (the "Office Action") that you discussed with Dr. Turner or other person at defendant?

28.     When was the first time you spoke to Dr. Turner or other person at defendant concerning an initial refusal of the Masters Application?

29.     Did you discuss with Dr. Turner or some other person at defendant that the only basis for the refusal of the Masters Application was the Examiner's claim that the Masters mark was merely descriptive?

30.     Did you explain to Dr. Turner or other person at defendant what a merely descriptive mark is?

31.     What did you tell him a merely descriptive mark was?

32.     Did you advise Dr. Turner or some other person at defendant that you thought the initial refusal of the Masters Application based on mere descriptiveness of the Masters mark might be overcome?

33.     Did you tell Dr. Turner or some other person at defendant the likelihood that the initial refusal of the Masters Application based on mere descriptiveness of the Masters mark might be overcome?

34.     If so, what did you tell Dr. Turner or some other person at defendant of defendant's chances of overcoming the initial refusal of the Masters Application by the Examiner based on descriptiveness?

---

[1] When a reference is made to "other person at defendant" or an equivalent reference that is meant to include any employee, director, or officer of defendant and any consultant representing defendant such as Dr. White.

35.   The Office Action states "The examining attorney has searched the office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d)." Is that correct?

36.   Did you advise or discuss with Dr. Turner that the meaning of the above statement was that the Examiner was not aware of any other marks registered or the subject of a prior application in the United States Patent and Trademark Office that would in the Examiner's opinion bar the registration of the Masters University mark by defendant?

37.   Did you advise or discuss with Dr. Turner, Dr.White or another person at defendant that if the mere descriptiveness initial refusal was overcome the Masters University mark would be passed on to publication in the *Official Gazette*?

38.   Did you advise or discuss with Dr. Turner, Dr.White or another person at defendant that even if the Masters University mark was passed by the Examiner on to publication in the Official Gazette that the Masters Application could be opposed and ultimately denied based on a claim by another person that the Masters University mark was so similar to its mark or name and is for such related goods or services that confusion would be likely?

39.   Did you advise or discuss with Dr. Turner, Dr.White or another person at defendant that even if the Masters University mark was registered the registration could be cancelled based on a proceeding brought by someone who claimed that the Masters University was so similar to its mark or name and is for such related goods or services that confusion would be likely?

40.   Did you explain to Dr. Turner, Dr.White or another person at defendant that even if the Masters Application was registered or passed the examination process another person without a registration or application in the United States Patent and Trademark Office could object and seek to enjoin use of the name Masters University based on prior use of a confusingly similar name or mark?

41.   In your discussion with Dr. Turner, Dr.White or another person at defendant concerning the possible adoption of the Masters University name was the name Masters College of Bible brought up?

42.   Did Dr. Turner, Dr.White or another person at defendant mention it?

43.   Did Dr. Turner, Dr.White or another person at defendant mention it in response to anything you said?

44.   What did you say that prompted Dr. Turner, Dr.White or another person at defendant to mention Masters College of Bible?

45.   Did Dr. Turner, Dr.White or another person at defendant tell you that he was aware of Masters College of Bible from the beginning of his consideration of the Masters University name?

46.   How long did he tell you he was aware of the Masters College of Bible name?

47.  Did you ask him how long he was aware of the Masters College of Bible name?

48.  Did Dr. Turner, Dr.White or another person at defendant tell you that he had not been concerned with the Masters College of Bible name?

49.  Did Dr. Turner, Dr.White or another person at defendant explain to you why he was not concerned with the Masters College of Bible name?

50.  What was his explanation for his absence of concern with the Masters College of Bible name?

51.  Did you ask Dr. Turner, Dr.White or another person at defendant what he knew and/or how he knew of Masters College of Bible?

52.  What did he say?

53.  Did you ask Dr. Turner, Dr.White or another person at defendant if he knew if the name Masters College of Bible was in use?

54.  What did he say?

55.  Did you ask him where the Masters College of Bible was located?

56.  What did he say?

57.  Did you ask Dr. Turner, Dr.White or another person at defendant if defendant had conducted any investigation into the use of Masters College of Bible?

58.  Did you express any concern to Dr. Turner, Dr.White or another person at defendant that the use of Masters College of Bible might affect the availability of the Masters University name for use by defendant?

59.  What concern did you express to Dr. Turner, Dr.White or another person at defendant arising out of the possible use of the name Masters College of Bible?

60.  Did you explain to Dr. Turner, Dr.White or another person at defendant that defendant's use of Masters University might infringe the Masters College of Bible name?

61.  Did you advise Dr. Turner, Dr.White or another person at defendant that the Masters College of Bible name would prevent the use by defendant of the name Masters?

62.  Did you advise Dr. Turner, Dr.White or another person at defendant that the Masters College of Bible name might represent a risk to the adoption and use of the name Masters University by defendant?

63.  Did you advise Dr. Turner, Dr.White or another person at defendant that further investigation should be performed into the use of Masters University?

64. Did you advise Dr. Turner, Dr.White or another person at defendant that you would need more facts or an investigation or would have to consider further whether the Masters University name would be available for use by defendant?

65. Did Dr. Turner, Dr.White or another person at defendant request an opinion from you concerning the availability of the mark Masters University for use by defendant?

66. Did Dr. Turner, Dr.White or another person at defendant ask you to assess the risk posed by the Masters College of Bible name to defendant regarding its adoption and use of the Masters University name?

67. Did you ever evaluate the risk posed by the name Masters College of Bible to defendant in its adoption and use of the Masters University name?

68. Did you ever communicate to Dr. Turner or anyone else at defendant an opinion concerning the risk posed by the name Masters College of Bible to defendant in its adoption and use of the Masters University name?

69. If so, was that opinion provided in writing or memorialized in anyway?

70. Did you offer to conduct a search concerning the availability of the mark Masters University?

71. Did Dr. Turner or other person at defendant tell you on or prior to July 27, 2006, that defendant was headquartered in Montgomery, Alabama?

72. Did you ask Dr. Turner, Dr.White or another person at defendant on or prior to August 2, 2006, where defendant was headquartered?

73. On or prior to August 2, 2006, did you know that defendant was headquartered in Montgomery, Alabama?

74. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006, that virtually all the students taking courses at defendant were from the United States?

75. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006 that a majority of the students taking courses at defendant was from the Southern part of the United States?

76. Did Dr. Turner or other person at defendant tell you on or prior to August 2, 2006,  the defendant advertised its services using television?

77. Did Dr. Turner or other person at defendant tell you that in 2006 most of its media advertising was in Alabama and Tennessee or was planned to be in those states?

78. Did you speak to Dr. Turner, Dr. White or any other person at defendant before July 28, 2006 concerning the possible change of the defendant's name to Regions University?

7

79.     Did you have any discussions with Dr. Turner or anyone else at defendant prior to August 18, 2006, concerning the advisability of determining whether Regions, Regions Bank or other Regions mark used by Regions bank was registered in the United States Patent and Trademark Office?

80.     If you had such a discussion, when did the discussion occur?

81.     If you had such a discussion, what did you tell Dr. Turner or the other person at defendant?

82.     What did Dr. Turner or the other person at defendant tell you?

83.     Did you suggest to Dr. Turner or any other person at Regions that it might be advisable to have an investigation concerning the use by Regions Bank of the mark Regions?

84.     If you had such a discussion, when did the discussion occur?

85.     If you had such a discussion, what did you tell Dr. Turner or the other representative of Regions?

86.     What did Dr. Turner or the representative of defendant tell you?

87.     Did Dr. Turner, Dr. White or other representative of defendant on or before July 28, 2006, mention any entities in addition to Regions Bank that used the word "Regions" in its name or for a mark for a service or product?

88.     If so, identify the entities and the names or marks that Dr. Turner, Dr. White or other representative of defendant mentioned?

89.     State what Dr. Turner, Dr. White or other representative of defendant told you about each entity and mark that you identify in response to the foregoing question.

90.     Did Dr. Turner, Dr. White or other representative of defendant mention any other entities that might use, register or have applied for the name Regions in connection with his request to you for an opinion concerning the registerability of the name Regions University?

91.     If so, what other entities did he mention?

92.     Did Dr. Turner, Dr. White or other representative of defendant mention to you that he had conducted his own search of the records of the United States Patent and Trademark Office concerning the name Regions University?

93.     If so, did Dr. Turner, Dr. White or other representative of defendant advise you of the results of a search of the records of the United States Patent and Trademark Office concerning the name Regions University?

94.  If Dr. Turner, Dr. White or other representative of defendant told you that he had conducted his own search concerning Regions University in the records of the United States Patent and Trademark Office, did he tell you that he had retained copies of the results of any such search?

95.  Did you ask him for the results of any such search?

96.  Did Dr. Turner, Dr. White or other representative of defendant offer to share with you the results of his search of the records of the United States Patent and Trademark Office concerning the name Regions University?

97.  Did you advise Dr. Turner, Dr. White or other representative of defendant prior to August 18, 2006, that the word "Regions" was descriptive of a university?

98.  Did you discuss prior to August 18, 2006, with Dr. Turner, Dr. White or other representative of defendant whether the word "Regions" was descriptive of a university?

99.  What did you tell Dr. Turner, Dr. White or other representative of defendant, if anything, on or prior to August 18, 2006, concerning whether the word "Regions" was descriptive of the name of a university?

100. If you told Dr. Turner, Dr. White or other representative of defendant that the word "Regions" might be descriptive of a university prior to August 18, 2006, did Dr. Turner indicate any concern whether the mark Regions University might be registerable on the United States Patent and Trademark Office?

101. If so, what did Dr. Turner, Dr. White or other representative of defendant, say?

102. Did you offer prior to August 18, 2006, to provide to Dr. Turner Dr. White or other representative of defendant, any opinion directed to whether the name Regions University was descriptive of a university?

103. Do you have or have you seen any document that refers or relates to any discussion or communication with anyone at defendant concerning whether the name Regions University was descriptive of a university?  If so, identify such documents.

104. Is Exhibit 502, notes of a telephone conversation by you concerning a discussion on July 28, 2006?

105. Whose notes are shown in Exhibit 502.

106. Are these the notes of your discussion on July 28, 2006?

107. Were these notes made on July 28, 2006?

108. Was the discussion with Dr. White who was calling on behalf of defendant?

109. Did this discussion concern defendant's adoption of the name Regions University?

110. Does the "REGIONS UNIVERSITY" noted in Exhibit 502 refer to the Regions University of Regions Bank?

111. Did Dr. White advise you firm that the Board of Regents of defendant had approved the adoption of Regions University as the defendant's name the day before on July 27, 2006?

112. Did you have a discussion with anyone on July 28, 2006, concerning Regions Bank's Region University?

113. If so, who did you have a discussion with concerning Regions Bank's Regions University?

114. Did that person tell you that Regions Bank uses the name Regions University?

115. Did that person tell you that Regions Bank was the largest bank in Alabama?

116. Did that person tell you that Regions Bank was one of the largest banks in Alabama?

117. Did that person tell you that Regions Bank was one of the largest banks in the United States?

118. Did that person tell you that Regions Bank was the largest bank in Montgomery?

119. Did that person tell you that Regions Bank was one of the largest banks in Montgomery?

120. Did you conduct any investigation or have an investigation conducted to determine how large Regions Bank was either in Montgomery, Alabama or the United States?

121. Did you hire an investigator to determine the extent of use of the name Regions University or whether Regions University was used as s recruiting tool by Regions Bank?

122. Did you call, or someone on behalf call, Regions Bank to find out the extent of use of the name Regions University or whether Regions University was used as a recruiting tool by Regions Bank?

123. If so, when was the call made?

124. Who made the call and what was learned about Regions University?

125. Did you ask defendant if it conducted an investigation into the use of Regions University by Regions Bank?

126. If so, did defendant tell you the results of its investigation?

127. What did defendant tell you about Regions University?

128. What did defendant tell you of the investigation that they conducted?

129. When you spoke with Dr. White on July 28, 2006, did you provide him any advice concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of Regions University by defendant?

130. Did you provide Dr. White advice on July 28, 2006, concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of Regions University by defendant?

131. Did you base the advice you gave Dr. White on July 28, 2006 concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of Regions University by defendant any trademark search or other investigation you conducted or that was conducted on your behalf?

132. Did you provide defendant with a legal opinion prior to August 18, 2006 concerning whether the Regions University name of Regions Bank posed any risk in the adoption or use of the Regions University name by defendant?

133. If the answer to question no. 132 is yes, when did you provide a legal opinion and to whom did you provide such legal opinion?

134. If the answer to question no. 132 is yes, what is the legal opinion that you provided to defendant?

135. If the answer to question no. 132 is yes, is the opinion you gave in writing or memorialized in anyway?

136. If the answer to question no. 132 is no, did you explain to defendant that you were not providing defendant a legal opinion as to the risk posed by the use of Regions University name by Regions Bank?

137. In Exhibit 502, the document says "Get on File, soon." Does this mean that defendant wanted you to file an application to register the name Regions University for them soon?

138. If "Get on File, soon," means something else what does it mean?

139. In Exhibit 502, what does "3 Brochures by tomorrow" refer to?

140. Did the "3 Brochures" refer to specimens of use of the "Regions University" name

141. Were the "3 Brochures" to be used for a trademark application for "Regions University" based on use of the Regions University name?

142. Did defendant intend to get to your firm "3 Brochures" that referred to "Regions University" on July 28, 2006 for a trademark application?

143. Exhibit 502 states "File PRESS today." Does that refer to defendant's intention to announce the adoption of the name Regions University by a press release on July 28, 2006?

11

144. After July 28, 2006, and before August 18, 2006, did you have any discussions with Dr. Turner, or Dr. White or any other person at defendant concerning the use by Regions Bank of the Regions name or mark, including Regions University, Region Charity Classic or Regions Bank?

145. When did you have such discussion?

146. Who were the persons involved in any of those discussions?

147. Were those discussions memorialized in any way or referred to in any document?

148. Please identify all such documents.

149. Did you have any discussions with Dr. Turner or another person at defendant concerning Exhibit 34 or any draft of Exhibit 34 prior to the dissemination of Exhibit 34?

150. Did Dr. Turner or another person at defendant solicit your comments concerning Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

151. What explanation, if any, did Dr. Turner or another person at defendant give for soliciting your comments concerning Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

152. What, if any, comments did you have with Dr. Turner or another person at defendant concerning the Exhibit 34 or any draft of Exhibit 34 prior to its dissemination?

153. Had you spoken with Dr. Turner or any other person at defendant prior to July 28, 2006, concerning the name or mark Regions?

154. Had you spoke with Dr. Turner or any other person at defendant prior to July 28, 2006, concerning Regions Bank or any Regions marks used by Regions Bank?

155. Had you spoke with anyone in addition to Dr. Turner prior to July 24, 200t, concerning Regions Bank or any Regions marks used by Regions Bank?

156. Did you have any discussions with Dr. Turner or any other person at defendant concerning the change of the name of the defendant after August 2, 2006 (other than discussions concerning the description of goods or services in any Regions University trademark application)?

157. If so when did you have such discussions?

158. What was the subject matter of those discussions?

159. Were those discussions memorialized in any way?

160. Identify each document that refers or relates to any such discussion.

# EXHIBIT B

# DEPOSITION OF REX TURNER, Ed.D.

## May 15, 2007

## Pages 1 through 268

## PREPARED BY:

Haislip, Ragan, Green, Starkie & Watson, P.C.
566 South Perry Street
Post Office Box 62
Montgomery, AL  36104
Phone: (334) 263-4455
Fax: (334) 263-9167
E-mail: haislipragan@charter.net

Deposition of Rex Turner, Ed.D.

May 15, 2007

Page 106

1   and we had to re-file it, and so that
2   process had occurred at this time. And it
3   was just mentioned that this could be
4   another problem in this, so ...
5        And if you look at all of the 2006
6   Higher Education Directories, you observe a
7   lot of names there, and they have similar
8   names. Some will be a college with the
9   same first name and there will be others
10  who will have university, and so there will
11  be a lot of, you know, changes.
12       And so the 2006 Higher Education
13  Directory did note Masters College of
14  Bible.
15  Q.  So you weren't concerned about the Masters
16  College of Bible as being too close to your
17  Masters University?
18  A.  I don't think that it was determined so by
19  Jeff Foshee and John White back in December
20  of 2005.
21  Q.  So the patent attorney that you refer to in
22  Washington, who was he?
23  A.  That would be James Shlesinger.

Page 107

1   Q.  Did he tell you that Masters Bible College
2   was a concern?
3        MR. HUDSON: Hold on just a
4        minute. Let's go off the
5        record.
6        (Off-the-record discussion.)
7        MR. PECAU: Let's go back on the
8        record and just say that we're
9        going to leave the question
10       pending, subject to a
11       determination of whether the
12       question falls within -- well,
13       the answer falls within the
14       attorney-client privilege.
15       MR. HUDSON: Sure.
16  Q.  Now, it says here that -- on the last
17  sentence in the paragraph we were looking
18  at, under item 11, Masters University, the
19  last sentence --
20  A.  Is this Exhibit 26?
21  Q.  25.
22  A.  Okay.
23  Q.  The last sentence says:  This will probably

Page 108

1   add two months to the process. This will
2   delay our roll-out. Why would it delay the
3   roll-out of the name Masters University?
4   A.  The descriptive nature of the trademark
5   attorney caused us some real concerns and,
6   also, the concern of Masters College of
7   Bible, and so we just -- it was just simply
8   a statement that this was going to be a
9   delay.
10  Q.  Okay. At some point, you decided to choose
11  another name; is that correct?
12  A.  That is correct.
13  Q.  And what caused that determination to
14  choose another name?
15  A.  I'm going to let you repeat it again.
16  Q.  Actually, I'll show you another exhibit and
17  ask you another question.
18       MR. PECAU: Let's mark this as 27.
19       (Exhibit 27 was marked for
20       identification.)
21  Q.  Let me show you what's been marked as
22  Exhibit 27. Do you see that, and can you
23  tell me what that is?

Page 109

1   A.  I'll just read it. There was a discussion
2   concerning Masters University. It was
3   reported that we were about to announce the
4   name change about a week ago. It was then
5   brought to the attention of our trademark
6   attorney that there was a Masters College
7   of Bible. Our trademark attorney, Jim
8   Shlesinger, recommended that we not change
9   to Masters University. He indicated that
10  they could contest it and that could pose a
11  serious problem.
12  Q.  Is that what happened?
13  A.  Yes.
14  Q.  And this was a meeting of July 27th, 2006;
15  is that correct?
16  A.  That's correct.
17  Q.  Is this approximately when the real concern
18  about Masters University arose?
19  A.  It had occurred approximately two weeks
20  before that, and I'm saying approximately.
21  Q.  Okay. It says here it was then -- Who
22  brought it to your -- to Mr. Shlesinger's
23  attention that there was a Masters College

# EXHIBIT C

Date _____ ___ Docket____ _____

Person _____ _____ _____

Firm _____

Re:_____ 800-351-4040 _____ 9507

_____(7905) AG TURNER _____ _____

Search Type _____ _____ __ Auth. Amt.__ _____

Report Date ____ _____ __ Phone____ _____

Remarks:

REGIONS UNIVERSITY

Bank in Alabama

REGIONS BANK

Copy on File, 5000

3 Brochures by

tomorrow File PRESS

RU 3684

Exhibit 502

# EXHIBIT D

# DEPOSITION OF REX TURNER, Ed.D.

## May 15, 2007

## Pages 1 through 268

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL  36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**

Deposition of Rex Turner, Ed.D.                                    May 15, 2007

Page 166

1    A. We were all made aware at that point.
2    Q. Did he get the resume that day?
3    A. Well, he had -- you understand, he had
4       worked prior at Trenholm, formerly
5       Patterson Tech here in town. He was a dean
6       for a long time. And he retired from the
7       State and came with us and has been an
8       excellent vice-president of academic
9       affairs. Probably one of the best
10      decisions I've ever made.
11   Q. So he was aware of Regions University from
12      his other employment is what you're saying?
13   A. That's exactly right.
14   Q. And then at this meeting, everybody knew
15      who Regions Bank was, didn't they, at the
16      meeting?
17   A. Sure. Everybody knows who Regions Bank is.
18   Q. And he said that Regions Bank had an
19      internal Regions University?
20   A. He just said, folks, I have remembered --
21      and this is the first time he had mentioned
22      it. Said, this is my remembrance, and so
23      he said that -- I think there's a Regions

Page 167

1       University within the bank.
2    Q. Now, did he tell it to you in this meeting
3       or did he tell it to you before July 31st?
4    A. No, sir. He told us at this meeting, and
5       there was no mention at all and there was
6       no effort on his part to keep it from us.
7    Q. Now, the next paragraph says: Dr. White --
8       And what's Dr. White's position at the
9       university?
10   A. He is the director for institutional
11      research.
12   Q. Dr. White contacted the trademark
13      attorney's office to ensure that this would
14      not pose a problem.
15      Now, the trademark attorney's office is
16      Mr. Shlesinger?
17   A. Yes.
18   Q. Did he contact him during the meeting?
19   A. No, he did not, but he contacted -- if you
20      want the complete explanation, James
21      Shlesinger left on that Friday to go on
22      vacation. Dan Earl, who is also in that
23      attorney's office, he said if there's any

Page 168

1       contact that needed to be made, contact Dan
2       Earl.
3          And so I asked Dr. White, I said, would
4       you please get in touch with Dan Earl in
5       the office and bring this to him.
6    Q. Okay. Now, you contact --
7    A. Dr. White made the contact. I didn't.
8    Q. I'm just trying to get the timing here. So
9       you have this -- so you had the meeting,
10      and then it was part of the meeting you
11      guys told Dr. White to contact the
12      trademarks attorney to ensure that Regions
13      University would not pose a problem to your
14      adoption of Regions University?
15   A. That's right.
16   Q. And did he do that?
17   A. I asked him -- yes, he did.
18   Q. And what did he tell you?
19   A. He contacted Dan Earl. From just my
20      knowledge of the events, Dan Earl checked
21      Regions Bank's Web site. He could not find
22      anything of Regions University at all on
23      the Web site. And after a complete review

Page 169

1       by him, then on the following day he called
2       us and he said that this is internal within
3       the bank; therefore, this would not pose a
4       registration issue.
5    Q. Now, when you said he called the next day,
6       that was on August 1st he called?
7    A. That would have been Tuesday. What day
8       would that have been?
9    Q. This meeting was July 31st.
10   A. That's a Monday.
11   Q. So Earl called you on --
12   A. Right. He got back with us on the next
13      day, which is the 1st.
14          MR. HUDSON: Is this a good time
15             to take a short break?
16          MR. PECAU: Yes.
17          (Brief recess was taken.)
18          (Exhibits 33 and 34 were marked for
19             identification.)
20   Q. Dr. Turner, I want to show you what's been
21      marked as Exhibit 33. Is that the first
22      public announcement of the name change?
23   A. No, sir.

# EXHIBIT E

## Thomson CompuMark
# Trademark Research Report

Mark Searched:    REGIONS

Client Name:        STEPTOE & JOHNSON
Type Of Search:   FULL US & CANADIAN
Formatted:           By Source

Attention:    CAROL ZAZZARO
Your File:    15548.0001

Our File:              132189011 -52
Date Completed:   September 21, 2006
Date Received:     September 19, 2006
Received by:        Internet

## Goods/Services:

FINANCIAL SERVICES, IN PARTICULAR BANKING SERVICES

We have taken all reasonable steps to ensure the completeness and accuracy of this report. However, for various reasons, including the inherent nature of the searched records, the current status of these records, and the inherent limitations of obtaining information, the United States Patent & Trademark Office, and other national trademark offices, the Secretary of States Offices, and all the many vendors and publications of trademark and business information used in compiling search reports, we cannot warrant that this report is complete or accurate. As a result, WE DO NOT MAKE A WARRANTY EXPRESS OR IMPLIED AND NO WARRANTY AS TO THE FITNESS FOR A PARTICULAR PURPOSE. This report is not a legal opinion on the availability of a mark and the making of a legal opinion as to the availability of any mark in connection therewith should be derived.

This report contains results merely associated with current descriptions, and is in no way representative of the various Web page and internet descriptions of the Web sites described above. However, the titles and URLs of these Web sites do not guarantee or any manner represent the Web site content. Web pages can be changed and revised at the discretion of the owner.

Any or all the information in this report is the subject of trademark protection and/or copyright laws. All information herein is provided solely for use by the user of the searched information. This information is derived from sources believed to be accurate, but the accuracy of this information cannot and is not guaranteed. The information is provided for reference and general guidelines and is not to be construed as legal advice, and the user of this information is encouraged to consult an attorney.

RAC00040469



Thomson CompuMark, for Intellectual Property Research Information call 1 800 692 8833
Copyright ©2006 Thomson CompuMark, a Thomson business. All rights reserved. May 23, 2006

**Exhibit 500**