IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

REGIONS ASSET COMPANY, et al.,)
                           )
        Plaintiffs,     )
                           )
                           ) Civil Action No. 2:06-cv-882-MHT
                           )
REGIONS UNIVERSITY, INC.     )
                           )
        Defendant.      )
_____)

**DEFENDANT REGIONS UNIVERSITY, INC.'S BRIEF IN
OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT**

In opposition to plaintiffs' cross motion for summary judgment, defendant Regions University, Inc. ("Regions University" or "the University") submits this brief, as well as incorporating by reference its original brief in support of its motion for summary judgment (Doc. 49) and in its reply brief. (Doc. 103). To the extent these arguments are also applicable to the issues on defendant's motion for summary judgment, they are included herein for that purpose as well.

**I.**

**THE BANK HAS NOT PROFFERED ANY LEGALLY PROBATIVE EVIDENCE OF
ACTUAL CONFUSION AS TO SPONSORSHIP OR AFFILIATION**

    **A.    The Bank Has No Evidence That The Public Assumes
        That Universities That Share Some Common Name
        With A Bank Must Be Sponsored By That Bank**

In its reply brief, the Bank implicitly admits that the public would not reasonably believe that it was the source of the educational services offered by Regions University or that it might naturally expand its services into that arena. It does not deny that it cannot by law operate a post-secondary institution. It frames the issue now as "not whether people believe that Regions has begun a post-secondary education school or would naturally expand its services into post-secondary education, but whether Regions would be likely to sponsor a university ... ." Pl. Reply Br. 2-3.[1] In support of such "likelihood," the Bank boldly asserts it "sponsors many universities and colleges" already. Pl. Reply Br. 3. As shown below, this assertion misleadingly conflates the layman's understanding of "sponsorship" with the legal concept.

In "sponsor[ing] many universities and colleges," all that the Bank does, and what the public knows it does, along with many other businesses, is purchase the right to advertise its banking services through the broadcast of college football games and other athletic contests. No evidence exists that the public assumes the Bank is actually affiliated with or sponsors any particular school with respect to the educational services it

---

[1] The Bank completely misquotes the University's argument when it claims that the University "is simply wrong as a matter of law when it argues that confusion is limited to only situations where persons have a mistaken belief that Regions and Regions University are the same entities. Def. Reply Br. 35." (Pl. Reply Br. 2). What the University actually said, at page 35, was that "actual confusion means customers have a mistaken belief that the businesses are the same **or are affiliated**, ... " (emphasis added). The University devoted an entire section of its reply brief to the "sponsorship/affiliation" argument that the Bank claims it overlooks. *See* Def. Reply Br. at 27-35.

provides to the public. The football games and other athletic contests of the "sponsored" schools are merely the media through which the Bank advertises itself <u>as a bank</u>. The Bank's "sponsorship" argument is similar to suggesting that businesses paying for the right to advertise on billboards are "sponsoring" the billboard companies. This is obviously not the sort of confusion as to "sponsorship" that the trademark laws have in mind. The sponsorship/affiliation cases involve circumstances where the mark owner's exact trademark is being intentionally used on a product to trigger a sale, such as in the university merchandising cases, *e.g.*, <u>Univ. of Ga. Athletic Assn v. Laite</u>, 756 F.2d 1535 (11th Cir. 1985),[2] or where former agents or affiliates of the mark owner are still using the mark of their franchisor or licensor. *E.g.,* <u>American Farm Bureau Federation v. The Alabama Farmer's Federation</u>, 935 F.Supp. 1533 (M.D. Ala. 1996), *aff'd* 121 F.3d 223 (11th Cir. 1997). In these cases, the public indisputedly identifies the trademark as belonging to the plaintiff and knows or reasonably assumes that the trademark cannot be used without it having been licensed by plaintiff. Where the public has no reasonable basis for assuming that a

---

[2] The Court in <u>Laite</u> recognized that the plaintiff university had engaged in licensing its bulldog emblem. 756 F.2d at 1542, n. 17, and that members of the public assumed the products bearing the insignia of a school or sports team are sponsored or licensed by the school or team. <u>Id</u>. at 1547, n. 28. The Court in <u>Laite</u> upheld the district court's conclusion of a likelihood of confusion where the defendant had admitted that his "Battlin Bulldog Beer" was "intended to capitalize on the popularity of the University of Georgia football program" <u>Id</u>. at 1545, and because the plaintiff's bulldog emblem and the defendant's bulldog emblem were almost identical. <u>Id</u>. at 1543-44. The remaining factors in assessing likelihood of confusion were found to be "less significant" than in most trade or service mark cases because, in this case, the confusion stemmed from "the defendant's misuse of the plaintiff's reputation and good will as embodied in the plaintiff's mark." <u>Id</u>. at 1547.

mark can only be used with the approval or sponsorship of the owner of the mark, there is no likelihood of confusion as to sponsorship. *See* <u>Laite</u>, 756 F.2d at 1546, n. 27 (distinguishing <u>Supreme Assembly, Order of Rainbow for Girls v. J. H. Ray Jewelry Co.</u>, 676 F.2d 1079 (5th Cir. 1982), where court held no likelihood of confusion existed, given evidence of third party use of the mark, because under those circumstances, the "public had no reasonable basis to assume that [the] mark could only be used with approval or sponsorship of [the] owner of [the] mark").

In the present case, the Bank has presented no evidence that the public would have any reasonable basis for assuming that universities sharing some common name with a bank must be sponsored by that bank. More particularly, in this case, unlike the thousands of cans of "Battlin' Bulldog Beer" undoubtedly purchased by loyal University of Georgia fans and alumni in the <u>Laite</u> case, the Bank has made no showing that any student enrolled at Regions University based on any confusion as to the Bank's sponsorship of or affiliation with the school. The football games the Bank sponsors, the student loans it makes,[3] the scholarships it provides, and the branches it opens near university campuses, simply show the Bank's effort to market

---

[3] It is a curious argument that a likelihood of confusion has arisen, as to the Bank's "sponsorship" of Regions University, by reason of the Bank's own actions in voluntarily making loans to students enrolling at Regions University. If, in fact, this conduct implies sponsorship, the Bank should have nothing to complain about because Regions University is already "sponsored" by the Bank by virtue of these student loans.

itself through the university system and to college students, <u>as a bank</u>, not as a source or sponsor of any school's educational services.   The Bank has presented no evidence of a single college or university, or even a single building on the campus of any college or university, that has ever adopted its name or the name of any bank as a result of its support for the school.

The few ad hoc examples of universities adopting the surname of a personal donor hardly rises to evidence of some widespread public belief that a university which, as part of its name, uses a common English word also used by a business, is probably sponsored by or affiliated with that business.[4]  To the contrary, the great number and wide variety of other businesses employing the word "Region" or "Regions" in their names negates any inference that the public would assume the Bank sponsors or is affiliated with any particular user of this common word.   If any such sponsorship or affiliation might be imaginable, the most likely candidates would be the title company or the numerous real estate and construction companies in the Bank's market area using "Regions" in their name.   (Stricklin Aff. (Doc. 50) and Bender Aff. (Doc. 67)).   These businesses have a much closer connection to the business of the Bank as a mortgage

---

[4] The Bank, in its most recent filings, has attached a lengthy discussion of the term "corporate university" as found in the free online encyclopedia, Wikipedia. (Marmer's Supp. Decl. Ex. D).  It is not clear for what purpose the Bank has filed this document but it obviously is inadmissible hearsay with respect to the truth of its contents and therefore cannot be considered by this Court on these cross motions for summary judgment.  Wikipedia, which allows anyone to edit its content anonymously, is notoriously unreliable.  A Cal. Tech graduate student has recently exposed sources of fictitious Wikipedia entries.  *See* Montgomery Advertiser, Sept. 5, 2007, page 3B (Appx. D).

lender.    The public would more likely assume some connections here than they would with a university.

No evidence of any confusion has been introduced by the Bank as a result of these many other "Regions" businesses. Indeed, the coexistence of so many other businesses using the same or a similar word, in the offering of so many different kinds of services, illustrates how "fenced in" the Bank's trademark rights are with respect to its "Regions" mark.    To whatever degree the public may associate the word "Regions" with the Bank's banking and financial services (and that is all that is shown by its market survey reports, even if admissible), no evidence suggests that it associates that word with the Bank in other non-banking contexts.

A similar "sponsorship" argument was made and rejected in HBP, Inc. v. American Marine Holdings, Inc., 290 F.Supp.2d 1320 (M.D. Fla. 2003).    The plaintiff, which owned the "Daytona" mark in the promotion of stock car and motorcycles races, brought an action against a boat manufacturer who used the mark "Daytona" to identify its speed boat.    The plaintiff claimed that its mark was used in connection with similar goods and services because it sponsored a major boat show every year and had allowed the lake at its speedway to be used for numerous fishing tournaments and boat races.    Id. at 1326, 1334.    The court rejected this argument in concluding that the parties' products and/or

6

services were not similar. Id. at 1335. *See also* Trustees of Columbia University v. Columbia/HCA Health Care Corp., 964 F.Supp. 733, 746 (S.D. N.Y. 1997)(services rendered by university were not similar to services rendered by hospital even though university had a medical school and affiliation with hospitals in the area and faculty members who practiced medicine).

**B.    No Evidence Exists That Any Confusion As to Sponsorship Has Ever Led To A Single Enrollment At Defendant's University**

The greatest obstacle to the Bank's "sponsorship" argument is the level of care employed in enrolling at a post-secondary college or university, and the relative sophistication of the purchasers of such educational services. The Bank cannot rationally compare a fan's choice of a bottle of "Battlin Bulldog Beer" with a student's selection of a university. No one, without being willfully blind, could complete the enrollment process at Regions University and still have a belief that Regions Bank "sponsors" or is somehow affiliated with the University. The Bank, through its own employee, admits that a cursory review of the University's webpage would disabuse anyone of such a notion. *See* Affidavit of Karan Rudolph (Doc. 90). Even if the evidence of inquiries about affiliation, on which the Bank relies, could be deemed "confusion" (and it cannot), such confusion was, and must necessarily be, "short lived" and

7

therefore insufficient under Eleventh Circuit jurisprudence. *See* Def. Opening Brief 44-45. The Bank must necessarily fall back upon some form of "initial interest" confusion,[5] a doctrine which has not even been adopted in this Circuit. Where it has been adopted, it is not applicable where the goods or services are not competitive or related, or where purchasing decisions are made with a high level of care, or where the defendant did not intentionally adopt the plaintiff's mark to create confusion. *See* Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc., 269 F.3d 270, 296 (3rd Cir. 2001) (and cases discussed therein). In this case, all three of these circumstances are present, making any "initial interest" confusion non-injurious and non-actionable.

## C. Inquiry Evidence Is Not Confusion

In any event, the "inquiry" evidence proffered by the Bank in this case is not sufficient to demonstrate actual confusion. *See* Def. Opening Br. 45-47. The Bank cites Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160 (11th Cir. 1982), claiming that the Eleventh Circuit in that case "held that an inquiry by a supplier to the defendant was evidence of actual

---

[5] "Initial interest" confusion is confusion that creates initial customer interest, even though at the time the sale is finally completed, no such confusion exists. *See* McCarthy § 23:6. "Initial interest confusion gives the junior user credibility during the early stages of a transaction and can possibly bar the senior user from consideration by the consumer once the confusion has dissipated." Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188 (5th Cir. 1998). These cases make actionable a defendant's attempt to "get a foot in the door" with potential customers through the use of the plaintiff's more recognizable mark, to the competitive injury of the plaintiff who loses the sale notwithstanding the dissipation of confusion. Checkpoint Systems, Inc. v. Checkpoint Software Technologies, 269 F.3d 270, 296 (3rd Cir. 2001). If the initial interest confusion "does not ultimately result in a purchasing decision, this factor counsels against finding the likelihood of confusion under the Lanham Act." Id.

confusion." (Pl. Reply Br. 4). Actually, in that case, the plaintiff Safeway Stores brought suit after it received a misdirected dunning letter from a supplier of the defendant. Id. at 1162, 1167. Such misdirected communication is evidence of actual confusion, not simply an inquiry. There is no such evidence of misdirected communication in this case.

The Bank also relies on the Laite case. But the ten to fifteen "inquiries" in that case were made in the context of numerous sales being made of novelty beer bearing on its label a nearly exact emblem of the University of Georgia bulldog. It was a reasonable inference that fans were purchasing the beer on the assumption that the university had sponsored or licensed the marketing of this beer, unlike in the present case where no evidence exists from which an inference could be drawn that any student enrolled because of a belief that the Bank sponsored the University.

Finally, the Bank's citation to McCarthy § 23:16 (Pl. Reply Br. 4) actually supports the University's position, i.e., that "the better view is that while inquiry evidence is admissible and relevant, standing alone with no other evidence it is insufficient proof of actual confusion. Such inquiries alone reveal a less than totally 'confused' state of mind of the inquiring persons." Id. (emphasis added). See Def. Opening Br. 45-47.

**D.    Short-lived Confusion Upon The Initial Adoption
Of The New Name By Defendant Is Insufficient**

Practically all of the evidence submitted by the Bank of any inquiries or questions about possible affiliation have arisen within the first few months after the University first changed its name and made its announcement in early August of 2006.  Ms. Hughes of the University testified that the phone call she received was within two or three months after the name change.  (Hughes tr. 21).  Ms. Fulghum could not recall precisely when she received the call but it was "long ago." (Fulghum tr. 19).  The Luquire, Moore and Gore emails were all sent in August of 2006, within weeks of the official announcement on August 8, 2006.  There is no evidence of any further calls or emails to Regions University since these contacts asking about possible affiliation with the Bank.  Such short-lived, initial confusion, occurring on the heels of the first publication to the community of the allegedly infringing mark, is of little, if any, probative value.  *See* Def. Opening Br. 44-45.

## II.

### THE BANK'S MARK IS WEAK OUTSIDE OF THE FIELD OF BANKING

The Bank continues to assert that its mark has strength and is not diminished by the evidence of third party use in this case.  It claims that its mark "does not describe anything"

about its services but can only contend that, at best, its mark is "suggestive" of those services "being available in more than one place." (Pl. Reply Br. 10). Assuming *arguendo* that the mark is suggestive rather than descriptive, it is still a weak mark, even in the absence of third party use of similar marks. *See* <u>John H. Harland Co. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 974 (11th Cir. 1983). Because it is also a common English term, it would be weak even if used in an arbitrary fashion. *See* <u>Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Assn</u>, 651 F.2d 311, 315-16 (11th Cir. 1981); <u>Amstar Corp. v. Domino's Pizza, Inc.</u>, 615 F.2d at 260.

The Bank's contention that third party use has not diminished the strength of its mark is based on the argument that the University has failed to prove the <u>extent</u> to which the marks are used. (Pl. Reply Br. 14). While citing a number of decisions from other circuits, the Bank ignores controlling Eleventh Circuit decisions which have found that mere <u>registration</u> of similar marks with the PTO or with state secretaries of state is probative of the strength of a plaintiff's mark.

For instance, in <u>Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Assn</u>, 651 F.2d 311 (11th Cir. 1981), the Court found an "impressive array" of third party uses of the "Sun" mark, consisting of registrations of the mark with the Florida

Secretary of State and a sampling of other businesses across the country having federally registered trade and service marks using the word "Sun." Id. at 316. The Court found this "extensive" third party use of the word 'Sun' to be "impressive evidence that there would be no likelihood of confusion between Sun Banks and Sun Federal." Id. The district court decision makes clear that the "defendant presented no evidence of the extent of the use of these names in advertising and promotional activities." Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Assn, 200 U.S.P.Q. 758, 762, 1978 WL 21742 (N.D. Fla. 1978)(emphasis added). Moreover, even though this was a dispute between two banks in Florida, both using the word "Sun" in their names, the evidence of third party use was not limited to banks, nor to businesses using the word "Sun," nor to businesses located in Florida. Indeed, of the some 4,400 businesses registered with the Florida Secretary of State and using the word "Sun" in their names, only 25 were active financial businesses employing the word "Sun" and only 50 were active financial businesses employing a compound of the word "Sun." 651 F.2d at 316 n. 8. Of these 50, only three were commercial banks in Florida using some form of the word "Sun", i.e., "Sun City Center Bank," "Suncoast City Bank of St. Petersburg," and "Sunrise American National Bank of Ft. Lauderdale." Id. at 317 n. 10.

The _Sun Banks_ case should put to rest the Bank's arguments (1) that the University's evidence of third party use is largely deficient for failure to show the extent of use of the names; (2) that the word "Region" does not weaken its "Regions" name in the context of this dispute involving only the word "Regions;" and (3) that one should focus only on active businesses or only on businesses in Alabama. _See also_ _Amstar Corp. v. Domino's Pizza_ (finding extensive evidence of third party use from federal registrations as well as actual uses of the mark "Domino" or "Domino's" throughout the country, either currently or historically, and even in non-food related areas).

The decision in _Goldkist v. Conagra_, 708 F.Supp. 1291 (N.D. Ga. 1989), cited by the Bank - which had ruled that evidence of third party registrations was insufficient to weaken the strength of a mark without evidence establishing the extent to which those registered marks were used - has not been followed by other lower courts in this circuit in light of the _Amstar_ and _Sun Banks_ decisions. _See_ _Ocean Biochem, Inc. v. Turner Network Television, Inc._, 741 F.Supp. 1546, 1555-56 (S.D. Fla. 1990) (declining to follow _Goldkist_). Other cases cited by the Bank, in which courts have discounted third party use in a business _different_ from that of the plaintiff, involved an alleged infringer who was offering goods _similar_ to what the plaintiff was offering. _See_ _Safeway Stores, Inc. v. Safeway Discount_

Drugs, Inc., *supra*; The Board of Regents of the University System of Georgia v. Buzas Baseball, Inc., 176 F.Supp.2d 1338 (N.D. Ga. 2001). Here, the services of the University are not similar to the Bank's services. Third party use outside the field of banking services is precisely what is relevant to the strength of the Bank's mark outside that field.

In the present case, the University has shown that, in Alabama alone, there are some 83 non-dissolved corporations or LLCs using the word "Region" or "Regions" in some capacity in their trade name (Doc. 51). If the search is extended to businesses employing a compound of the word "Region," as the Eleventh Circuit found probative in Sun Banks, there are an additional 100 non-dissolved corporations or LLCs in Alabama using the term "Regional." (Appx. A). Multiply this by the sixteen states in which the Bank does business and the numbers of businesses using "Region" or "Regions," or a compound thereof, are undoubtedly in the thousands. The Bank itself recognizes the potential for confusion with other businesses using the word "Regional" inasmuch as it has written cease and desist letters to such businesses claiming they would likely cause confusion. *See* RAC12400 (Regional Financial Services of Lafayette), 12403 (Regional Mortgage Corporation of Florida), 12409 (Regional Mortgage Services), 12437 (Regional Holding Company), 12467 (Regional Mortgage) (Appx. B). Furthermore, it

has filed notice of opposition with the Trademark Trial and Appeal Board against the trademark application of Regional Acceptance Corporation for the mark "Regional" for use in connection with its consumer and installment loans. *See* <u>Regions Financial Corp. v. Regional Acceptance Corp.</u>, TTAB Opp. No. 911155302 (Appx. C).

In any event, the evidence presented by the University in this case is not limited to only registrations with the trademark office or with state Secretaries of State. The University has filed evidence of actual use of the name, and the extent of that use, with respect to at least 72 businesses in the Bank's market area, as well as showing current telephone directory listings and D&B reports on numerous "Regions" businesses. The widespread adoption of "Regions" as a common business identifier has occurred for the most part during the Bank's ten year hiatus on any active policing of its mark.[6]

### III.

### "REGIONS" AND "REGIONS UNIVERSITY" ARE NOT SIMILAR MARKS

The Bank argues that the use by the University of the name "Regions University" is similar to the Bank's mark "Regions"

---

[6] The Bank seeks to refute the argument that it failed to police its mark for ten years by pointing to the testimony of its general counsel, Mr. Upchurch, that, when Regions or its legal department learned of a confusingly similar use of the Regions mark, Regions would object. (Pl. Reply Br. 16). Mr. Upchurch described the Bank's activities as "reactive as opposed to proactive." (Upchurch tr. 15). An effort to enforce the mark was made only if someone brought a possible infringement to the legal department's attention. (Upchurch tr. 14). The Bank did not search for third parties using "Regions;" it did not search the records of the Secretary of State of Alabama; it did not search for domain names on the web; it did not search for Regions names registered with the USPTO. (Upchurch tr. 26).

because, in both cases, the same connotation of a regionally available service is made. (Pl. Reply Br. 10-11). In Freedom Savings & Loan Assn v. Way, 757 F.2d 1176 (11th Cir. 1985), the Eleventh Circuit affirmed the district court's conclusion that "Freedom Realty" and "Freedom Savings & Loan Association" were not so similar that they suggested a connection between the two entities. Id. at 1183. The Court upheld the district court's observation that, even though "Freedom" was the most important part of the mark, "the use of an identical word, even a dominant word, does not automatically mean that two marks are similar." Id. It reached this conclusion even though the bank had registered the single word "Freedom" and spent a considerable sum of money in presenting the name "Freedom" to the general public. Id. at 1179; see Federal Savings & Loan Assn v. Way, 583 F.Supp. 544, 546 (M.D. Fla. 1984). Because the primary word "Freedom" was "weakly protected to begin with" (i.e., it was suggestive), "minor alterations could effectively negate any confusing similarly between the two." Id. Given the weakness of the primary word "Freedom," and the parties' dissimilar logos, the Court affirmed the district court's conclusion that evidence of "thorough conviction" established the lack of confusing similarity of the marks. Id.

The parallels between the comparison of the marks in the Freedom Savings & Loan Assn case and a comparison of the marks

in this case are self-evident.  The only difference would be that the mark "Regions" is more descriptive of the Bank's services than "Freedom" and therefore weaker.  Thus, in the case at bar, the marks are not similar.

**IV.**

### THE "REGIONS" MARK LACKS THE NECESSARY FAME AND DISTINCTIVENESS FOR DILUTION PURPOSES

The Bank does not deny that its mark must be both famous and distinctive for purposes of the state and federal dilution statutes.  It simply claims that its mark bears these qualities, arguing that very few other existing businesses in Alabama actually employ the term "Regions" in the same way that it does.

"Regions" is not a distinctive name, either in Alabama or anywhere else.  It is a common English word, commonly used by many, many businesses offering many different kinds of products and services.  It is, of course, often used in a geographic sense to describe particular regions or areas where the business is located.  All of these uses, however, serve to weaken any distinctiveness of the Bank's mark, particularly outside the field of financial services.  To confine the analysis of the mark's distinctiveness to businesses in Alabama, as the Bank attempts, is not proper.  The parties do business throughout the Bank's sixteen state footprint.  Indeed, the University draws most of its students (72%) from states other than Alabama.

(Def. Opening Br. 3).  The distinctiveness of the mark must be measured in terms of this market area.  *See* Amstar Corp. v. Domino's Pizza, 615 F.2d at 265 (finding no dilution under Georgia anti-dilution statute given weakness of mark due to extensive third party use not confined to Georgia).  What is, at best, a suggestive, and therefore a weak mark lacks the necessary distinctiveness for purposes of a dilution claim.  Use of a mark similar to such a non-distinctive mark does not demonstrate dilution.  *See* Freedom Savings & Loan Assn, 757 F.2d at 1186-87.

**V.**

**THE PARTIES' RESPECTIVE MARKS ARE NOT SUFFICIENTLY SIMILAR TO CREATE A LIKELIHOOD OF DILUTION**

For dilution to occur, the marks "must be 'very' or 'substantially' similar and ... absent such similarity, there can be no viable claim of dilution." Michael Caruso & Company, Inc., 994 F.Supp. at 1464 (quoting Ringling Bros/Barnum & Bailey Combined Shows, Inc. v. B. E. Windows Corp., 937 F.Supp. 204, 211 (S.D. N.Y. 1996)); *see* Holiday Inns, Inc. v. Holiday Out in America, 481 F.2d at 445, 450 (5th Cir. 1973)(Florida anti-dilution statute not applicable where marks were not confusingly similar); Amstar Corp. v. Domino's Pizza, 615 F.2d at 265 (citing Holiday Inns approvingly); *see generally* McCarthy § 24:117 (for likelihood of dilution, "marks must at least be

similar enough that a substantial segment of the target group of customers sees the two marks as essentially the same"). The degree of similarity required for a dilution claim should be greater than that which is required to show likelihood of confusion. Jet, Inc. v. Sewage Aeration Systems, 165 F.3d 419, 425 (6th Cir. 1999)(citing 3 McCarthy § 24:90.1).

The marks used by the parties in this case are not similar. *See* discussion *supra* at part III. Not being sufficiently similar for infringement purposes, they are necessarily not similar enough for dilution purposes.

Respectfully submitted,

/s/ WILLIAM W. WATTS
WILLIAM W. WATTS, III
[WATTW5095]
bill@alabamatrial.com
[HUDSV1684]
tom@alabamatrial.com
Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601

JAMES E. SHLESINGER
Shlesinger, Arkwright &
    Garvey LLP
1420 King Street, Suite 600
Alexandria, Virginia 22314

ATTORNEYS FOR DEFENDANT

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

William G. Pecau, Esq.
Rachel M. Marmer, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

Charles B. Paterson, Esq.
Paul A. Clark, Esq.
BALCH & BINGHAM, LLP
105 Tallapoosa Street, Suite 200
Montgomery, Alabama 36104

<u>/s/ WILLIAM W. WATTS</u>



# ACTIVE NAMES INQUIRY
## Office of the Secretary of State
## State of Alabama

100

INITIATE NEW BROWSE

← PREVIOUS PAGE    NEXT PAGE →

---

REGIONAL ACADEMIC ENRICHMENT & FOSTERING INC
BESSEMER, AL                                              ------

---

REGIONAL ACCEPTANCE CORPORATION
1424 E FIRE TOWER RD
GREENVILLE, NC                                           ------

---

REGIONAL ADJUSTMENT BUREAU INC
3310 KELLER SPRINGS RD  STE 120
CARROLLTON, TX                                           ------

---

REGIONAL ALCOHOLISM COUNCIL OF CHAMBERS LEE RUSSELL & TALLAPOOSA    ------
ALEX CITY, AL

---

REGIONAL ALLIANCE 4 CHILDREN INC
ENTERPRISE, AL                                           ------

---

REGIONAL AUTOMOBILE DEALER SERVICES INC
NORTHPORT, AL                                            ------

---

REGIONAL AUTOMOTIVE CREDIT CORPORATION
MONTGOMERY, AL                                           ------

---

REGIONAL BIOMEDICAL LABORATORY INC
GLENCOE, AL                                              ------

---

REGIONAL BUILDERS INC
HUNTSVILLE, AL                                           ------

---

REGIONAL BUILDING COMMITTEE OF JEHOVAHS WITNESSES INC    ------
2821 ROUTE 22
PATTERSON, NY

---



# ACTIVE NAMES INQUIRY
## Office of the Secretary of State
## State of Alabama

INITIATE NEW BROWSE

← PREVIOUS PAGE    NEXT PAGE →

REGIONAL CEILINGS INC
FAIRHOPE, AL                                              ------

REGIONAL CHILD ADVOCACY CENTER INC
GROVE HILL, AL                                            ------

REGIONAL CHILD CARE NUTRITION INC
BIRMINGHAM, AL                                            ------

REGIONAL CLAIMS SERVICES INC
MENTONE, AL                                               ------

REGIONAL COMMUNITY DEVELOPMENT LLC
DECATUR, AL                                               ------

REGIONAL COMMUNITY ECONOMIC DEVELOPMENT INITIATIVE OF THE 7TH         ------
BIRMINGHAM, AL

REGIONAL CONCEPTS INC
MOBILE, AL                                                ------

REGIONAL CONSTRUCTION INC
MOBILE, AL                                                ------

REGIONAL CONSTRUCTION SERVICES INC
1323 W ANTIOCH LANE                                       ------
MOORESVILLE, IN

REGIONAL CONSULTANTS INC
DECATUR, AL                                               ------



# ACTIVE NAMES INQUIRY
## Office of the Secretary of State
## State of Alabama

INITIATE NEW BROWSE

← PREVIOUS PAGE   NEXT PAGE   →

REGIONAL CULTURAL ALLIANCE OF GREATER BIRMINGHAM INC          ------
BIRMINGHAM, AL

REGIONAL DEVELOPERS LLC          ------
SPRINGVILLE, AL

REGIONAL DEVELOPMENT & BUILDING INC          ------
HUNTSVILLE, AL

REGIONAL DEVELOPMENT CORPORATION          ------
FLORENCE, AL

REGIONAL DEVELOPMENT LLC          ------
MONTGOMERY, AL

REGIONAL DRYWALL OF MISSISSIPPI INC          ------
221 HIGHLAND MEADOW RD
FLORA, MS

REGIONAL EARLY INTERVENTION ASSISTANCE FOR CHILDREN INC          ------
HUNTSVILLE, AL

REGIONAL EAST ALABAMA COOPERATIVE HOUSING INC REACH          ------
AUBURN, AL

REGIONAL ELECTRIC INC          ------
MONTGOMERY, AL

REGIONAL EMERGENCY MEDICAL SERVICES INC          ------
WEDOWEE, AL



# ACTIVE NAMES INQUIRY
## Office of the Secretary of State
## State of Alabama

INITIATE NEW BROWSE

← PREVIOUS PAGE     NEXT PAGE →

REGIONAL ENTERPRISES INC
HUNTSVILLE, AL
------

REGIONAL ENVIRONMENTAL SERVICES LLC
MONTGOMERY, AL
------

REGIONAL ERECTORS INC
WILMER, AL
------

REGIONAL ERECTORS LLC
8105 MORRIS HILL ROAD
MOBILE, AL
------

REGIONAL FINANCE CORPORATION OF ALABAMA
MONTGOMERY, AL
------

REGIONAL FINANCIAL SERVICES LLC
1000 DOWNTOWNER BLVD
MOBILE, AL
------

REGIONAL GREEN SAWING INC
SPANISH FORT, AL
------

REGIONAL GRID SYSTEMS OF ALABAMA INC
FAIRHOPE, AL
------

REGIONAL GRIEF & LOSS OUTREACH PROGRAM INC THE
ENTERPRISE, AL
------

REGIONAL HEALTH MANAGEMENT CORPORATION
ANNISTON, AL
------



# ACTIVE NAMES INQUIRY
Office of the Secretary of State
State of Alabama

---

**INITIATE NEW BROWSE**

**← PREVIOUS PAGE**    **NEXT PAGE    →**

---

REGIONAL HEALTH SERVICES INC                                    ------
ANNISTON, AL

---

REGIONAL HOME INC                                              ------
MT VERNON, AL

---

REGIONAL HOUSING AUTHORITY OF LAWRENCE CULLMAN & MORGAN COUNTIES    ------
DECATUR, AL

---

REGIONAL INSURANCE SERVICES COMPANY LLC                         ------
5950 CARMICHAEL PLACE
MONTGOMERY, AL

---

REGIONAL JAIL AUTHORITY FOR THE CITIES OF HOMEWOOD MOUNTAIN      ------
CITY HALL
VESTAVIA HILLS, AL

---

REGIONAL LABORATORIES INC                                       ------
BIRMINGHAM, AL

---

REGIONAL LAND DEVELOPMENT INC                                   ------
BIRMINGHAM, AL

---

REGIONAL LEASING INC                                            ------
BIRMINGHAM, AL

---

REGIONAL LIGHTING & SUPPLY INC                                  ------
GADSDEN, AL

---

REGIONAL MARKETING INC A CLOSE CORPORATION                      ------
BIRMINGHAM, AL

---



# ACTIVE NAMES INQUIRY

Office of the Secretary of State
State of Alabama

INITIATE NEW BROWSE

← PREVIOUS PAGE    NEXT PAGE    →

REGIONAL MEDICAL CENTER BOARD
ANNISTON, AL
------

REGIONAL MEDICAL SERVICES PAPC
830 SOUTH GLOSTER ST
TUPELO, MS
------

REGIONAL METABOLIC IMAGING INC
BIRMINGHAM, AL
------

REGIONAL METABOLIC IMAGING LLC
BIRMINGHAM, AL
------

REGIONAL MMG LLC
ALBERTVILLE, AL
------

REGIONAL MORTGAGE INC
55 SOUTH MILLER RD
FAIRLAWN, OH
------

REGIONAL NUCLEAR PHARMACEUTICALS INC
BIRMINGHAM, AL
------

REGIONAL NUCLEAR PHARMACEUTICALS LLC
BIRMINGHAM, AL
------

REGIONAL OPEN SPACE & TRAILS ALLIANCE
BIRMINGHAM, AL
------

REGIONAL PARAMEDICAL EQUIPMENT INC
JASPER, AL
------



# ACTIVE NAMES
# INQUIRY
Office of the Secretary of State
State of Alabama

---

INITIATE NEW BROWSE

← PREVIOUS PAGE    NEXT PAGE    →

---

REGIONAL PARAMEDICAL SERVICES INC
JASPER, AL
------

---

REGIONAL PARAMEDICAL SERVICES OF ALABAMA INC
JASPER, AL
------

---

REGIONAL PARAMEDICAL SERVICES OF BIRMINGHAM INC
BIRMINGHAM, AL
------

---

REGIONAL PARAMEDICAL SERVICES OF HAMILTON INC
JASPER, AL
------

---

REGIONAL PARAMEDICAL SERVICES OF ST CLAIR INC
JASPER, AL
------

---

REGIONAL PARAMEDICAL SERVICES OF WINSTON COUNTY INC
JASPER, AL
------

---

REGIONAL PHYSICIANS GROUP LLC
PHENIX CITY, AL
------

---

REGIONAL PLACEMENT OF MOBILE INC
MOBILE, AL
------

---

REGIONAL PLUMBING OF ANNISTON INC
ANNISTON, AL
------

---

REGIONAL PRODUCE DISTRIBUTORS LLC
BIRMINGHAM, AL
------

---



# ACTIVE NAMES INQUIRY
Office of the Secretary of State
State of Alabama

INITIATE NEW BROWSE

← PREVIOUS PAGE    NEXT PAGE    →

REGIONAL PROPERTIES INC                                             ------
9040 SUNSET DR STE 70-A
MIAMI, FL

REGIONAL PROPERTY SERVICES LLC                                     ------
ORANGE BEACH, AL

REGIONAL RECYCLING A SCHNITZER LIMITED LIABILITY COMPANY      Fict Name
ORANGE BEACH, AL
ORANGE BEACH, AL

REGIONAL RECYCLING INC                                            ------
3200 NW YEON
PORTLAND, OR

REGIONAL RECYCLING LLC                                            ------
BIRMINGHAM, AL

REGIONAL REMARKETING & LEASING INC                               ------
PIKE ROAD, AL

REGIONAL REPORTING SERVICE INC                                   ------
GADSDEN, AL

REGIONAL SAFETY COUNCIL INC                                      ------
BIRMINGHAM, AL

REGIONAL SALES CORPORATION                                       ------
DOTHAN, AL

REGIONAL SECURITY CORPORATION                                    ------
BIRMINGHAM, AL



# ACTIVE NAMES INQUIRY
Office of the Secretary of State
State of Alabama

INITIATE NEW BROWSE

← PREVIOUS PAGE    NEXT PAGE →

REGIONAL SERVICES OF ALABAMA LLC                    ------
BIRMINGHAM, AL

REGIONAL SPINE & WRIST CENTER LLC                   ------
SCOTTSBORO, AL

REGIONAL SPORTS NETWORKS LLC                        ------
BIRMINGHAM, AL

REGIONAL SPORTS PROMOTIONS INC                      ------
BIRMINGHAM, AL

REGIONAL STEEL PRODUCTS INC                         ------
WILMER, AL

REGIONAL TRAILER & TRUCK BODY REPAIR INC            ------
HOOVER, AL

REGIONAL TRAILER & TRUCK REPAIR LLC                 ------
BIRMINGHAM, AL

REGIONAL TRUCK PARTS & EQUIPMENT COMPANY INC        ------
ANNISTON, AL

REGIONAL WAREHOUSING LLC                            ------
SOUTHSIDE, AL

REGIONAL 310 AUTHORITY                              ------
GADSDEN, AL



## LANGE, SIMPSON, ROBINSON & SOMERVILLE LLP

ATTORNEYS AND COUNSELORS

HUNTSVILLE OFFICE
100 Jefferson Street, South
Huntsville, Alabama 35801-4849
Telephone (256) 533-3500
Facsimile (256) 533-4100

REAL ESTATE CLOSING OFFICE
728 Shades Creek Parkway, Suite 120
Birmingham, Alabama 35209-4453
Telephone (205) 870-1511
Facsimile (205) 870-1314

417 20th Street North, Suite 1700
Birmingham, Alabama 35203-3217
Telephone (205) 250-5000
Facsimile (205) 250-5034

Direct dial: 205-250-5074

MONTGOMERY OFFICE
8 Commerce Street, Suite 900
Montgomery, Alabama 36104-3531
Telephone (334) 241-0000
Facsimile (334) 241-0022

ANNISTON OFFICE
1000 Quintard Avenue, Suite 504
Anniston, Alabama 36201
Telephone (256) 236-1950
Facsimile (256) 236-5924

June 2, 1999

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Regional Financial Services of Lafayette, Inc.
Attn:   Dallas Hains, President
117 Rena Drive
Lafayette, Louisiana  70503

Dear Mr. Hains:

We represent Regions ® Financial Corporation ("Regions") and discovered your new incorporation as listed in the enclosed page copied from the Thomson & Thomson Watching Service.  Regions is the owner of the service mark and trade name "Regions®," and we are writing to you in connection with your company's use of the name "Regional Financial Services of Lafayette, Inc."

Regions views with great concern your company's use of the name "Regional" Financial Services of Lafayette, Inc.  The use of the name "Regional" by your company is likely to cause confusion in the market place.

"Regions®" is (i) the predominant part of the corporate name of Regions Financial Corporation, (ii) a distinctive trade name for this company, (iii) a federally registered service mark (registration certificate numbers 1,914,267 and 1,881,600, copies of which are enclosed), and (iv) the embodiment of substantial goodwill in the community.  As such, it is protected (a) by the provisions of the Lanham Act, 15 U.S.C. 1051, et seq., prohibiting infringement of federally registered trademarks, and by various common law principles preventing trading on the goodwill of another and unfair competition.

In order to protect Regions' valuable rights in its service mark and trade name, we ask that Regional Financial Services of Lafayette, Inc. not use "Regional" as its corporate name or in any of its advertising materials.  We request that you advise us of your intentions no later than June 16, 1999.

RAC00012400

Regional Financial Services of Lafayette, Inc.
June 2, 1999
Page 2

Should you believe it beneficial, you may telephone me at (205)250-5074 for purposes of discussing this matter.

Sincerely yours,

LANGE, SIMPSON, ROBINSION & SOMERVILLE LLP

J. Eric Miles

JEM/emh

Enclosures

cc:    Samuel E. Upchurch, Jr., Esq.
       Mr. William E. Askew
       Henry E. Simpson, Esq.
       Stephen P. Leara, Esq.

RAC00012401



## LANGE, SIMPSON, ROBINSON & SOMERVILLE LLP

ATTORNEYS AND COUNSELORS

<table>
<tr>
<td>

**HUNTSVILLE OFFICE**
100 Jefferson Street, South
Huntsville, Alabama 35801-4849
Telephone (256) 533-3500
Facsimile (256) 533-4100

**REAL ESTATE CLOSING OFFICE**
728 Shades Creek Parkway, Suite 120
Birmingham, Alabama 35209-4453
Telephone (205) 870-1511
Facsimile (205) 870-1514

</td>
<td>

417 20th Street North, Suite 1700
Birmingham, Alabama 35203-3217
Telephone (205) 250-5000
Facsimile (205) 250-5034

Direct dial: 205-250-5074

March 29, 1999

</td>
<td>

**MONTGOMERY OFFICE**
8 Commerce Street, Suite 900
Montgomery, Alabama 36104-3531
Telephone (334) 241-0000
Facsimile (334) 241-0022

**ANNISTON OFFICE**
1000 Quintard Avenue, Suite 501
Anniston, Alabama 36201
Telephone (256) 236-1950
Facsimile (256) 236-5924

</td>
</tr>
</table>

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Regional Mortgage Corporation of Florida, Inc.
55 S. Miller Road, #2
Akron, OH 44333
Attn:   Reed Stump, President

Dear Mr. Stump:

We represent Regions ® Financial Corporation ("Regions") and discovered your new incorporation as listed in the enclosed page copied from the Thomson & Thomson Watching Service. Regions is the owner of the service mark and trade name "Regions®," and we are writing to you in connection with your company's use of the name "Regional Mortgage Corporation of Florida, Inc." Regions ® Financial Corporation operates "Regions Mortgage, Inc.," which conducts business in the same area as your corporation.

Regions views with great concern your company's use of the name "Regional" Mortgage Corporation of Florida, Inc. The use of the name "Regional" by your company is likely to cause confusion in the market place.

"Regions®" is (i) the predominant part of the corporate name of Regions Financial Corporation, (ii) a distinctive trade name for this company, (iii) a federally registered service mark (registration certificate numbers 1,914,267 and 1,881,600, copies of which are enclosed), and (iv) the embodiment of substantial goodwill in the community. As such, it is protected (a) by the provisions of the Lanham Act, 15 U.S.C. 1051, et seq., prohibiting infringement of federally registered trademarks, and by various common law principles preventing trading on the goodwill of another and unfair competition.

In order to protect Regions' valuable rights in its service mark and trade name, we ask that Regional Mortgage Corporation of Florida, Inc. not use "Regional" as its corporate name or in any of its advertising materials. We request that you advise us of your intentions no later than April 10, 1999.

RAC00012403

Mr. Reed Stump
March 29, 1999
Page 2

Should you believe it beneficial, you may telephone me at (205)250-5074 for purposes of discussing this matter.

Sincerely yours,

LANGE, SIMPSON, ROBINSION & SOMERVILLE LLP

J. Eric Miles

JEM/emh

Enclosures

cc:    Samuel E. Upchurch, Jr., Esq.
       Mr. William E. Askew
       Henry E. Simpson, Esq.
       Stephen P. Leara, Esq.

RAC00012408





## LANGE, SIMPSON, ROBINSON & SOMERVILLE LLP

ATTORNEYS AND COUNSELORS

<table>
<tr><td>HUNTSVILLE OFFICE<br>100 Jefferson Street, South<br>Huntsville, Alabama 35801-4849<br>Telephone (256) 533-3500<br>Facsimile (256) 533-4100<br><br>REAL ESTATE CLOSING OFFICE<br>728 Shades Creek Parkway, Suite 120<br>Birmingham, Alabama 35209-4453<br>Telephone (205) 870-1511<br>Facsimile (205) 870-1514</td><td>417 20th Street North, Suite 1700<br>Birmingham, Alabama 35203-3217<br>Telephone (205) 250-5000<br>Facsimile (205) 250-5034<br>Direct dial: 205-250-5074<br><br>March 17, 1999</td><td>MONTGOMERY OFFICE<br>8 Commerce Street, Suite 900<br>Montgomery, Alabama 36104-3531<br>Telephone (334) 241-0000<br>Facsimile (334) 241-0022<br><br>ANNISTON OFFICE<br>1000 Quintard Avenue, Suite 501<br>Anniston, Alabama 36201<br>Telephone (256) 236-1950<br>Facsimile (256) 236-5924</td></tr>
</table>

<u>CERTIFIED MAIL – RETURN RECEIPT REQUESTED</u>

Regional Mortgage Services, LLC
5637 Galeria Drive, Suite 202
Baton Rouge, Louisiana  70816
Attn: Jan Wilson-Chisholm

Dear Ms. Wilson-Chisholm:

It was called to my attention by your attorney, Jerry Pepper, that you needed a copy, including the enclosures, of the February 9 letter sent to Chris Patin at the above address.  I have not yet received a response from Mr. Patin to my letter, which requested a response by February 21.  In this letter, I am asking you to respond by March 31, 1999.  Please find, attached to this letter, the same enclosures that were included in the letter to Mr. Patin.

We represent Regions ® Financial Corporation ("Regions") and discovered your new incorporation as listed in the enclosed page copied from a Dun & Bradstreet watching service report.  Regions is the owner of the service mark and trade name "Regions®," and we are writing to you in connection with your company's use of the name "Regional Mortgage Services."

Regions views with great concern your company's use of the name "Regional" Mortgage Services.  The use of the name "Regional" by your company is likely to cause confusion in the market place.

"Regions®" is (i) the predominant part of the corporate name of Regions Financial Corporation, (ii) a distinctive trade name for this company, (iii) a federally registered service mark (registration certificate numbers 1,914,267 and 1,881,600, copies of which are enclosed), and (iv) the embodiment of substantial goodwill in the community.  As such, it is protected (a) by the provisions of the Lanham Act, 15 U.S.C. 1051, <u>et</u> <u>seq</u>., prohibiting infringement of federally registered trademarks, and by various

RAC00012409

Ms. Jan Wilson-Chisholm
Regional Mortgage Services, LLC
March 17, 1999
Page 2

common law principles preventing trading on the goodwill of another and unfair competition.

In order to protect Regions's valuable rights in its service mark and trade name, we ask that Regional Mortgage Services not use "Regional" as its corporate name or in any of its advertising materials. We request that you advise us of your intentions no later than March 31, 1999.

Should you believe it beneficial, you may telephone me at (205)250-5074 for purposes of discussing this matter.

Sincerely yours,

LANGE, SIMPSON, ROBINSION & SOMERVILLE LLP

J. Eric Miles

JEM/emh

Enclosures

cc:    Jerry F. Pepper, Esq.
       Samuel E. Upchurch, Jr., Esq.
       Mr. William E. Askew
       Henry E. Simpson, Esq.
       Stephen P. Leara, Esq.

RAC00012412



## LANGE, SIMPSON, ROBINSON & SOMERVILLE LLP

ATTORNEYS AND COUNSELORS

HUNTSVILLE OFFICE
100 Jefferson Street, South
Huntsville, Alabama 35801-4849
Telephone (256) 533-3500
Facsimile (256) 533-4100

REAL ESTATE CLOSING OFFICE
728 Shades Creek Parkway, Suite 120
Birmingham, Alabama 35209-4453
Telephone (205) 870-1511
Facsimile (205) 870-1514

417 20th Street North, Suite 1700
Birmingham, Alabama 35203-3217
Telephone (205) 250-5000
Facsimile (205) 250-5034
Direct dial: 205-250-5074

MONTGOMERY OFFICE
8 Commerce Street, Suite 900
Montgomery, Alabama 36104-3531
Telephone (334) 241-0000
Facsimile (334) 241-0022

ANNISTON OFFICE
1000 Quintard Avenue, Suite 501
Anniston, Alabama 36201
Telephone (256) 236-1950
Facsimile (256) 236-5924

February 18, 1999

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Regional Holding Company, Inc.
9221 Ward Parkway, Suite 300
Kansas City, MO 64114
Attn: President

To Whom It May Concern:

We represent Regions ® Financial Corporation ("Regions") and discovered your new incorporation as listed in the enclosed page copied from the Dun & Bradstreet Business Information Report. Regions is the owner of the service mark and trade name "Regions®," and we are writing to you in connection with your company's use of the name "Regional Holding Company, Inc."

Regions views with great concern your company's use of the name "Regional" Holding Company, Inc. The use of the name "Regional" by your company is likely to cause confusion in the market place.

"Regions®" is (i) the predominant part of the corporate name of Regions Financial Corporation, (ii) a distinctive trade name for this company, (iii) a federally registered service mark (registration certificate numbers 1,914,267 and 1,881,600, copies of which are enclosed), and (iv) the embodiment of substantial goodwill in the community. As such, it is protected (a) by the provisions of the Lanham Act, 15 U.S.C. 1051, et seq., prohibiting infringement of federally registered trademarks, and by various common law principles preventing trading on the goodwill of another and unfair competition.

In order to protect Regions' valuable rights in its service mark and trade name, we ask that Regional Holding Company, Inc. and any of its subsidiaries, including, but not limited to, Regional Investment Company, Inc., not use "Regional" as its corporate name or in any of its advertising materials. We request that you advise us of your intentions no later than March 1, 1999.

RAC00012437

Regional Holding Company, Inc.
February 18, 1999
Page 2

Should you believe it beneficial, you may telephone me at (205)250-5074 for purposes of discussing this matter.

Sincerely yours,

LANGE, SIMPSON, ROBINSION & SOMERVILLE LLP

J. Eric Miles

JEM/emh

Enclosures

cc:    Mr. Brad Ives, President, Regional Investment Company, Inc.
       Samuel E. Upchurch, Jr., Esq.
       Mr. William E. Askew
       Henry E. Simpson, Esq.
       Stephen P. Leara, Esq.

RAC00012442



**LANGE, SIMPSON, ROBINSON & SOMERVILLE LLP**

ATTORNEYS AND COUNSELORS

HUNTSVILLE OFFICE
100 Jefferson Street, South
Huntsville, Alabama 35801-4849
Telephone (256) 533-3500
Facsimile (256) 533-4100

417 20th Street North, Suite 1700
Birmingham, Alabama 35203-3217
Telephone (205) 250-5000
Facsimile (205) 250-5034

MONTGOMERY OFFICE
8 Commerce Street, Suite 900
Montgomery, Alabama 36104-3531
Telephone (334) 241-0000
Facsimile (334) 241-0022

REAL ESTATE CLOSING OFFICE
728 Shades Creek Parkway, Suite 120
Birmingham, Alabama 35209-4453
Telephone (205) 870-1511
Facsimile (205) 870-1514

ANNISTON OFFICE
1000 Quintard Avenue, Suite 501
Anniston, Alabama 36201
Telephone (256) 236-1950
Facsimile (256) 236-5924

December 9, 1998

CERTIFIED MAIL – RETURN RECEIPT REQUESTED
& REGULAR U.S. MAIL – POSTAGE PREPAID

Regional Mortgage, Inc.
Attn:  Mark Kirkwood
6929 W 130th St. STE 500
Cleveland, OH  44130

Dear Mr. Kirkwood:

We represent Regions ® Financial Corporation ("Regions") and discovered your new incorporation as listed in the enclosed page copied from the Thomson & Thomson Watching Service.  Regions is the owner of the service mark and trade name "Regions®," and we are writing to you in connection with your company's use of the name "Regional Mortgage, Inc."

Regions views with great concern your company's use of the name "Regional" Mortgage, Inc.  The use of the name "Regional" by your company is likely to cause confusion in the market place.

"Regions®" is (i) the predominant part of the corporate name of Regions Financial Corporation, (ii) a distinctive trade name for this company, (iii) a federally registered service mark (registration certificate numbers 1,914,267 and 1,881,600, copies of which are enclosed), and (iv) the embodiment of substantial goodwill in the community.  As such, it is protected (a) by the provisions of the Lanham Act, 15 U.S.C. 1051, et seq., prohibiting infringement of federally registered trademarks, and by various common law principles preventing trading on the goodwill of another and unfair competition.

In order to protect Regions's valuable rights in its service mark and trade name, we ask that Regional Mortgage, Inc. not use "Regional" as its corporate name or in any of its advertising materials.  We request that you advise us of your intentions no later than December 21, 1998.

Regional Mortgage, Inc.
December 9, 1998
Page 2

Should you believe it beneficial, you may telephone me at (205)250-5074 for purposes of discussing this matter.

Sincerely yours,

LANGE, SIMPSON, ROBINSION & SOMERVILLE LLP

J. Eric Miles

JEM/emh

Enclosures

cc:    Stephen P. Leara, Esq.
       Samuel E. Upchurch, Jr., Esq.
       Mr. William E. Askew
       Henry E. Simpson, Esq.

RAC00012468

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| In the matter of Trademark Application Serial Nos.: | 76-413, 412 |
| For the Marks: | Regional |
| Published in the Official Gazette: | December 10, 2002 |
| OG Page Number: | TM629 |
| OG Volume Number: | 1265 #2 |

Regions Financial Corporation )
                              )

    **Opposer**            )

                                )

**v.**                             )     **Opposition No. _____**

                                )

Regional Acceptance Corporation )

                                )

    **Applicant**          )

02-06-2003
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #22

Box TTAB FEE
Commissioner for Trademarks
2900 Crystal Drive
Arlington, Virginia 22202-3513

### NOTICE OF OPPOSITION OF
### REGIONS FINANCIAL CORPORATION

Commissioner:

    In the matter of the applications of Regional Acceptance Corporation ("Applicant") filed May 29, 2002, and assigned Serial No. 76-413,412, and published for Opposition in the Official Gazette of the United States Patent and Trademark Office on December 10, 2002 at page TM 629, Volume 1265 #2, and which seeks to register word mark "REGIONAL" as well as the logo/design ("a design plus words, letters, and/or numbers"), said application stating that this mark is used in its business with "financial services, namely consumer and installment loans" pursuant to International Class 36. Applicant is a Corporation incorporated in the state of North Carolina whose business address is 1202 East Fire Tower Road, Greenville, North Carolina 27858.

    Regions Financial Corporation (the "Opposer"), a corporation incorporated in the State of Delaware whose business address is 417 Twentieth Street North, Birmingham, Alabama 35223, believes that it is and will be damaged by registration of the mark shown in the above-identified application, and hereby opposes same.

02/26/2003 EPIMA1    00000027 76413412
                      500.00 OP

1

RAC00030359

The grounds for opposition are as follows:

1. Commencing long prior to May 29, 2002 (the filing date of Applicant's applications for Serial Nos. 76-413,412; 76-413,402), and for more than forty (40) years, Opposer has engaged, directly and through its predecessors in title, and is now engaged, in among other financial and banking services including consumer and installment loans, the purchasing of retail installment contracts initially made between retail automobile dealers and consumers in interstate commerce.

2. Since long prior to May 29, 2002, Opposer has used in various forms, and is now using, in interstate commerce, "REGIONS" trademark, comprising of a family of Regions' marks for a variety of financial and banking services and goods.

3. Opposer is the owner and holder of the rights to the following United States Trademark Registrations on the Principal Register, all of which are registered in International Class 36:

| REGIONS TRADEMARKS (REGISTERED) | | |
|---|---|---|
| NUMBER | MARK | CLASS |
| R#1881600 | Regions | 36 |
| R#1914267 | Regions (stylized) | 36 |
| R#1918496 | Regionsbank | 36 |
| R#2599308 | Regions Basic Banking | 36 |
| R#2599309 | Regions Classic Banking | 36 |
| R#2007680 | Regions Collegiate Checking | 36 |
| R#2599310 | Regions E-ssential Banking | 36 |
| R#2326892 | Regions Express | 36 |
| R#2326890 | Regions Express | 36 |
| R#2399848 | Regions Funds (design plus words) | 36 |
| R#2257149 | Regions Funds | 36 |
| R#2005310 | Regions Growth Account (stylized) | 36 |
| R#2326889 | Regions Investment Company, Inc. | 36 |
| R#2333115 | Regions Investment Company, Inc. (stylized) | 36 |
| R#2005285 | Regions Lifespan Account | 36 |
| R#1957997 | Regions Management Account | 36 |
| R#2191049 | Regions Millennium CD (stylized) | 36 |
| R#2191050 | Regions Millennium CD | 36 |
| R#2326893 | Regions Mortgage, Inc. (stylized) | 36 |
| R#2326891 | Regions Mortgage, Inc. | 36 |
| R#2584509 | Regions.Net (design plus words) | 36 |
| R#2250389 | RegionsNet | 36 |
| R#2005321 | Regions Performance Account (stylized) | 36 |
| R#2605827 | Regions Preferred Banking | 36 |
| R#2599341 | Regions Preferred Plus Banking | 36 |
| R#2191540 | Regions Rewards | 36 |

4. Specifically, Opposer is the owner of U.S. Trademark Registration No. 1881600, for the mark "REGIONS" for banking services pursuant to International Class 36, which was registered on the Principal Register on February 28, 1995. Said registration was based on an application filed in the U.S. Patent and Trademark Office on August 30, 1993, which is a date prior to the date of filing of Applicant's applications (and prior to the date of Applicant's claimed date of first use of August

RAC00030360

31, 2000). Said registered mark of Opposer is valid and subsisting and is prima facie evidence of Opposer's exclusive right to use said mark in commerce on the goods and services specified in said registration. In light of the similarity of the respective marks and the related nature of the services of the respective parties, the Applicant's marks so resemble Opposer's family of registered marks as to be likely to cause confusion, to cause mistake, or falsely suggest a connection with the Opposer and deceive consumers, investors and others in connection with the goods and services offered.

5. Opposer is now, has been, and plans to continue expanding its "REGIONS" family of marks. Said use has been valid and continuous since said date of first use and has not been abandoned. Opposer has made a substantial investment in advertising and promoting its goods and services under the "REGIONS" family of marks. Opposer has extensively used, advertised and promoted Opposer's services in association with the REGIONS marks to the public through a variety of channels of trade and commerce and as a result, Opposer's customers and the public in general have come to know and recognize Opposer's "REGIONS" marks and associate such marks with Opposer and Opposer's goods and financial services. In addition, said mark of Opposer is symbolic of extensive goodwill and consumer recognition built and created by Opposer through considerable effort, time, and money in advertising and promotion. Opposer's advertising includes routine advertising in national, state, and local newspapers and magazines in each of the states it conducts/transacts business. For example, recently a full-page advertisement ran in the December 2002 Holiday Home issue of *Southern Accents*. Opposer also advertises in a variety of trade journals and other media such as outdoor boards, television and radio. In 2002, Opposer spent approximately $6.8 million dollars to advertise and promote Regions goods and services. Given the likeness of the respective marks and the related nature of the services of the Applicant and Opposer, allowing the registration of Applicant's marks which resemble, incorporate and subsume Opposer's family of registered marks, will cause confusion, mistake and falsely suggest a connection with Opposer and deceive consumers, investors, and others in connection with the goods and services offered.

6. Opposer's is now, has been and will continue to seek further United States Trademark Registrations for its "REGIONS" family of trademarks as is substantiated by trademark applications now pending before the U.S. Patent and Trademark Office.

| REGIONS TRADEMARKS (PENDING) | | |
|---|---|---|
| NUMBER | MARK | CLASS |
| S#75673073 | Regions E-Bank | 36 |
| S#76139742 | Regions E-Tracker | 36 |
| S#76351448 | Regions EZ Collect | 36 |
| S#78170495 | The Regions-Morgan Keegan Select Annuity | 36 |

7. Opposer, for more than forty (40) years, has been and is now since December, 1993, operating under the designation of Regions in the area of Dealer-Credit Services

3

RAC00030361

providing products and services for the automotive industry, including the purchasing of automobile leases from close-in automobile leases, which leases are made by and between the retail automobile dealerships and consumers. In addition, Opposer offers wholesale, leasing, retail and secondary products and currently operates in nine southern states namely, Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, South Carolina, Tennessee and Texas. Opposer continually expands its offering of competitive interest rates, a wholesale floor plan and an affiliation for secondary lending to non-prime customers. Said use has been valid and continuous since said date of first use and the relevant class of the public has come to associate Opposer with said designation. Applicant operates in some of the same states as Opposer providing the same or similar products and financial services for the automotive industry including financing consumer automobile and recreational vehicle purchases and offering credit and other financial products to automobile dealers through its dealer lending programs. In view of the related nature of the uses thereof, Applicant's mark consists of and comprises matter that may disparage and falsely suggest a connection with Opposer.

8. Opposer's "REGIONS" marks are inherently distinctive in commerce and consumers have come to associate the mark with goods and services of Opposer and thus such marks are entitled to a broad range of protection.

9. Applicant's marks, when used for the services identified in Applicant's applications for registration, is likely to cause confusion, deception and mistake with Opposer's separate "REGIONS" marks and with Opposer's famous family of "REGIONS" marks and will falsely suggest a connection with Opposer and deceive consumers, investors and others with respect to the goods and services offered.

By reason of the foregoing, Opposer believes and submits that it will be irreparably damaged as set out above by the confusion and disparagement caused its prior registered family of marks if Applicant is allowed to register the word mark "REGIONAL" as well as the logo/design as a trademarks in Class 36 or otherwise.

**WHEREFORE,** Opposer prays that this Opposition be sustained and that the application for the registration of the word mark "Regional" as well as the design/logo be denied.

February 6, 2003

MORRIS WADE RICHARDSON
HOPE D. MEHLMAN
Attorneys for Regions Financial
Corporation

4

RAC00030362

## POWER OF ATTORNEY

Opposer has appointed Morris Wade Richardson, a member of the Bar for the State of Alabama and Hope D. Mehlman, a member of the Bars for the State of Alabama, District of Columbia, New Jersey, and New York, to prosecute this opposition proceeding and to transact all business in and before the United States Patent and Trademark Office in connection herewith. Please address all correspondence to:

> Morris Wade Richardson, Esq.
> Hope D. Mehlman, Esq.
> Adams and Reese/Lange Simpson LLP
> 2100 3rd Avenue North, Suite 1100
> Birmingham, Alabama 35203

The filing fee for this opposition in the amount of $300.00 is enclosed herewith.

## CERTIFICATE OF MAILING

I hereby certify that this correspondence is being delivered via Express Mail Post Office to Addressee, and deposited by the United States Postal Service with sufficient postage as first class mail in an envelope addressed to:

> Box TTAB FEE
> Commissioner for Trademarks
> 2900 Crystal Drive
> Arlington, VA 22202-3513

On: Mailing Date of Request: February 6, 2003

Name of Person Signing this Certificate: Hope D. Mehlman, Esq.

Signature: _Hope D. mehlman_

Date Signed: _2 | 6 | 0 3_

5

RAC00030363

# Mobile native exposes sources of fictitious Wikipedia entries

**By Stan Diehl**
The Birmingham News

BIRMINGHAM — Since it was created by Huntsville native Jimmy Wales in 2001, Internet encyclopedia Wikipedia has occasionally provided a platform for users who anonymously rewrote its articles to reflect their own views.

But now another Alabamian, a 24-year-old from Mobile, has pulled back the curtain of anonymity, exposing and embarrassing hundreds in business, education and politics.

Virgil Griffith, who this fall will be a graduate student at the California Institute of Technology, on Aug. 13 launched Wikipedia Scanner, a "data mining" Web site that traces changes made to Wikipedia back to their source. It has identified businesses that have sabotaged competitors' entries, government agencies that have rewritten history, and countless instances of plain old bad judgment.

Among the changes made to Wikipedia articles from computers at institutions in Alabama, and identified using the site:

■ A computer at Samford University, a Christian college, was used to write obscenities and graphic sexual references into the entry for "Harry Potter" author J.K. Rowling, whose books have been criticized by fundamentalists.

■ Someone using a computer at Vestavia Hills High School wrote racist slurs into the Wikipedia entry for the landmark desegregation case *Brown v. The Topeka Board of Education*.

■ A computer at the University of Alabama at Birmingham was used to add several paragraphs of anti-Semitic dogma to Wikipedia's entry on Judaism. Part of what was added: "Jews are currently engaged in a ruthless campaign to censor any opposition to their media domination in the United States. This has been their vehicle to manipulate the most powerful nation on earth to fight wars for Israel."

As is the case with most entries containing vulgarity or that are clearly incorrect, other Wikipedia users quickly removed the offending material in each of these instances. But the information lives on in Wikipedia's history files and can easily be found using Wikipedia Scanner.

Wikipedia allows anyone to edit its content, and most users do so anonymously, leaving behind only their Internet protocol address, which is a series of numbers that identifies the computer network they're using.

Griffith created a system that compares those numbers — which are routinely made public by Wikipedia — to public records that include the names of the businesses, government agencies or institutions that own the computers. The result is a database of 34.4

> *" People need to be reminded that what they do on the Internet is public. "*
>
> **— Sheila Sanders,** vice president for information technology, University of Alabama at Birmingham

**Sources** Page 3B

# Sources: College rivals use entries to rib each other

From Page 3C

million Wikipedia edits, performed by 2.6 million organizations.

The overwhelming majority of changes are well-intentioned. Users add accurate information, eliminate inaccurate information, and try to improve the writing and correct poor grammar. But many are mean-spirited, even vicious.

Authorities at Samford and UAB said students, faculty and staff are expected to adhere to the guidelines of "appropriate use" policies that govern computer use. But both institutions have large networks.

Sheila Sanders, vice president for information technology at UAB, said that university

has 20,000 networked computers. At Samford, more than 1,800 students had accessed the school's network in the past week, said Associate Provost Alan Hargrave.

Both said people tend to believe they have some degree of anonymity on the Internet, when in fact, they often do not.

"People need to be reminded that what they do on the Internet is public," Sanders said.

To a degree, Wikipedia "editing" has become a 21st-century equivalent of writing on the bathroom wall. Some people write personal messages into entries, or insert gibberish for no apparent reason.

And where young people

and computers come together, sophomoric humor is never far behind. Computer users at the University of Alabama and at Auburn University, for example, have taken turns altering their arch-rival's entries.

A UA computer was used to change the Auburn Tigers entry, adding that UA and the University of Georgia "are respected more than Auburn will ever be." An Auburn computer was used to change Alabama's entry, adding "losing to Auburn" to a list of UA traditions.

In an e-mail exchange on Tuesday, Griffith said he knew Wikipedia Scanner would unearth a lot of scandals. He was inspired to create the system after learning of politicians whitewashing their pasts on

Wikipedia. But he had no idea so many people would care about the malfeasance.

"I am quite pleased to see the mainstream media enjoying the public-relations disaster fireworks as I am," he said.

For his part, Wales, 41, said he's a big fan of Wikipedia Scanner. Wikipedia, built on openness, welcomes anything that will help identify inaccuracies, he said. Wales stressed that transparency already is a big part of Wikipedia. Click on the history page on any entry and you can see how other users have changed it. But Wikipedia Scanner adds another powerful tool and makes people more accountable for their work, he said.

"We really love it. It's very cool."

Griffith and Wales share more than their credentials as Internet pioneers. Both Alabama natives went to elite high schools, Griffith to the Alabama School of Math and Science in Mobile; Wales, to Randolph School in Huntsville.

Wales earned an undergraduate degree from Auburn and a master's from Alabama before attending Indiana University for post-graduate work. Griffith attended Alabama, then transferred to Indiana.

Despite the shared Alabama academic roots, the two men have never met or even spoken on the telephone. Fittingly, their only contact, which came right after the launch of Wikipedia Scanner, was an e-mail exchange.