**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION and REGIONS BANK | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:06-cv-882-MHT |
| v. | ) ) | |
| REGIONS UNIVERSITY, INC. | ) ) | |
| Defendant. | ) | |

## JOINT STIPULATED AMENDMENT TO PRETRIAL ORDER

In accordance with Rule 26(a)(3) of the Federal Rules of Civil Procedure and this Court's September 18, 2007 Order, Plaintiffs Regions Asset Company, Regions Financial Corporation and Regions Bank (collectively "Regions") and defendant Regions University, Inc. ("Regions University") hereby submit the following joint pretrial order:

## I.    PARTIES AND COUNSEL

Plaintiffs will be represented at trial by Charles Paterson, Balch & Bingham LLP, 105 Tallapoosa Street, Suite 200, Montgomery, AL 36104, and William G. Pecau and Michael J. Allan, Steptoe & Johnson LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036.

Defendant will be represented at trial by Victor Hudson and William Watts, Hudson & Watts L.L.P., One St. Louis Center, Suite 2500, Mobile, AL 36601, and James Shlesinger, Shlesinger, Arkwright & Garvey, LLP, 1420 King Street, Alexandria, VA 22314.

All counsel identified above will appear at the October 19, 2007 pretrial conference.

## II.    JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 18 U.S.C. §§ 1331 and 1338.  There is no dispute concerning jurisdiction.

## III.    PLEADINGS

The following pleadings have been allowed: (1) an amended complaint on behalf of the Plaintiffs; and (2) an answer on behalf of the Defendant.

Defendant moved for summary judgment.  Plaintiffs opposed Defendant's motion and filed a cross-motion for summary judgment.  Neither summary judgment motion has been decided.

## IV.    SUMMARY OF PLAINTIFFS' CLAIMS

### A.    THE TRADEMARK INFRINGEMENT
### AND UNFAIR COMPETITION CLAIMS

The law of unfair competition prohibits the adoption of a name that will take advantage of the goodwill and reputation of another.  *See, e.g.*, J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 2:31, 4th ed. (2007); *Aetna Casualty & Surety Co. v. Aetna Auto Finance, Inc.*, 123 F.2d 582, 584 (5th Cir. 1941), *cert. denied*, 315 U.S. 824.  For trademark infringement and unfair competition actions, whether under state or federal law, the question is whether the use of a mark is likely to cause confusion as to the source, sponsorship or approval.  Section 43(a) of the United States Trademark Act of 1946, 15 U.S.C. § 1114; *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491-92 (11th Cir. 1983)); *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 (11th Cir. 1983).

In determining whether confusion exists, seven factors are considered by courts.  *See Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) – (1) the type of mark used by the plaintiff; (2) the similarity of the marks; (3) the similarity of the goods or

services represented by the marks; (4) the similarity of the retail outlets and the customers

served; (5) the similarity of the advertising media used by the parties; (6) whether the defendant

had the intent to infringe; and (7) any evidence of actual consumer confusion.  Each factor favors

the issuance of an injunction here.

> ➢ **REGIONS Is a Strong Mark**

"Regions" is the principal corporate name and mark of plaintiff Regions Financial

Corporation and its plaintiff affiliates Regions Bank and Regions Assets Company ("Regions"),

as well as the distinctive element in the name of Regions affiliates and business units, such as

Regions Mortgage, Regions Bank, Regions Insurance Group and Regions University.  Regions

has spent hundreds of millions of dollars promoting its Regions name since its adoption in late

1993.  With assets over 143 billion dollars, Regions is the largest corporation headquartered in

Alabama and its largest financial institution.  Even so, it is at heart a community bank with

thousands of locations in its footprint in the Southeast and a deep involvement and commitment

to the communities it serves.  As a consequence, Regions is near universally known in Alabama

and extremely well known in its 16 state footprint.  Scientific surveys show, for example, that its

recognition is nearly 100% in Montgomery and Birmingham.[1]

REGIONS is a strong mark deserving of the highest level of protection.  Restatement

(Third) of Unfair Competition § 21, comment on clause (d).

---

[1] Defendant's claim that the REGIONS mark is weak because other entities have used "Regions" or "Region" in their names is a red herring.  First, defendant has not provided any reliable evidence that any of these companies are actually promoted in television, radio, magazine, newspaper or billboard advertisements.  Second, the bulk of these companies does not involve the name "Regions" and are outside of Alabama.  Third, the handful of entities that do appear to use "Regions" in Alabama are so small and have so little or no advertising that they do not make any significant impression on consumers.  This is in stark contract to defendant who advertises for the same customers in the same media and geographic locations.

> ➢ **Defendant admits to confusion.**

Evidence of actual confusion is perhaps the best evidence that consumers are likely to be confused. *American Farm Bureau Fed'n v. Alabama Farmers Fed'n*, 935 F. Supp. 1533, 1548 (M.D. Ala. 1996). Here, the evidence will show that in the year since defendant adopted the Regions University name, more than 20 people have been confused as to whether Regions University was connected to, sponsored by or in any way affiliated with Regions. Some of these confused individuals believed that Regions had started a university, others believed Regions may have made a sizeable donation to the school. Defendant admits that these inquiries took place. At deposition, defendant's president testified, "[I]t was obvious to me that there was not confusion, but that the people were seeking or wanting to know affiliation, if there was any affiliation between the two, but that they understood the difference between a bank and a university." (Turner Tr. 264) Also, defendant admits to two potential students calling the school asking if it was related to Regions.

> ➢ **The Parties Both Use Regions and Regions University**

Since 1993, Regions has used the name and mark alone and with other generic terms including the name Regions University. Defendant uses the name Regions University and Regions, and is referred to as Regions. Accordingly, both parties use the same Regions names.

> ➢ **The Parties' Services Are Related**

If the services offered by the parties relate or overlap, consumer confusion is likely to occur. *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994) Where the marks are similar, as here, the services need not be that close. *In re Shell Oil Co.*, 992 F.2d 1204, 1207 (Fed. Cir. 1993). Regions' close association with colleges, universities and educational services is evident based on the following:

- Regions' sponsorship of the SEC and other collegiate conferences and individual universities and its heavy promotion of its university relationships.

- Regions student loan business, including loans to those attending Regions University.

- Regions education of the general public on financial related matters, including talks or seminars to students from grade school through the college level.

- Plaintiffs' Region University corporate training program that has been provided to its over 25,000 employees.

- University benefactors are often honored for their support through the dedication of buildings, stadiums or entire institutions in their name.[2]

> **Regions and Regions University Advertise Using the Same Media to the Same Customers**

Confusion is likely to result if the parties target the same customers through the same media outlets.  *See* McCarthy § 24:51.  Regions promotes and advertises its services through television, radio, billboards, the Internet and by other means to everyone.  Its advertising is focused on its 16 state footprint in the Southeast.  Defendant advertises primarily in the Southeast using the same media and targeting the same customer base.

> **Defendant's Chose "Regions" Mindful of the Reputation and Goodwill of Regions and the Benefits of the Association With Plaintiffs**

A defendant's intent in adopting a particular mark can be important to the confusion analysis.  "If . . . a plaintiff can show that a defendant adopted a mark with the intent of deriving benefit from the reputation of the plaintiff, that fact alone 'may be sufficient to justify the inference that there is confusing similarity.'"  *Exxon Corp. v. Tex. Motor Exch.*, Inc. 628 F.2d 500, 506 (5th Cir. 1980).

---

[2] *See e.g.,* August 31, 2006 email from defendant's former student Randy Gore asking "Why was 'Regions' chosen? Did Regions Bank make a donation?"  Ex. 35.

Defendant is an online university located in Montgomery. It obtains 97% of its revenue from tuition and fees. It has no standards for accepting students for its undergraduate degrees except a high school diploma or its equivalent. In 2005, Southern Christian University, decided that it needed a "for-profit kind of name" to market its business and technical degrees to students in order to support its Turner School of Theology. Defendant was well aware of Regions. Dr. Turner, its president, admitted: "Everyone knows who Regions is." (Turner Tr. 166). Defendant chose Regions University to "assist the University in projecting itself as a nationally recognized school of prominence." The "Regions" name does permit defendant to project itself as an institution of national prominence. As Dr. Avery Abernethy, a marketing professor at Auburn opines, by adopting the REGIONS name, defendant would enjoy instant and positive name recognition without devoting the money and resources on its own. (Abernethy Rep. 29.)

Within days of its name change, defendant received inquiries and a complaint concerning a perceived association with Regions. Plaintiff protested shortly after defendant's first use of Regions University and months before defendant began advertising its new name in earnest. Nonetheless, defendant persisted in its expansion of its use of the Regions University name. Defendant knew full well that if it adopted a well known business name, defendant would be associated with that name. In fact, defendant rejected the use of Turner University because of the likelihood of a negative association with Ted Turner.

Defendant seeks to rely on an email from its counsel concerning the registerability of Regions University as an excuse for adopting the Regions name. There is no credible advice of counsel defense in this case. The email is inadequate on its face as something that could be reasonably relied upon since it only addresses registerability of the name and a search of the

register of the PTO.  The email plainly does not address the risk of use of Regions University as the name of the school.[3]

The use of Regions University by defendant has and is likely to cause confusion with Regions and dilute the distinctiveness of the Regions name and marks in Alabama and elsewhere in the United States.  Accordingly, defendant's use of the name Regions University and Regions should be enjoined.

### B.    THE ALABAMA STATE DILUTION CLAIM

Alabama law protects distinctive trademarks and names from dilution.  *See* Section 8-12-17 of the Alabama Code; *Arthur Young, Inc. v. Arthur Young & Co.*, 579 F. Supp. 384 (N.D. Ala. 1983).  The Regions name has near universal recognition in Alabama.  There is no evidence of any television, radio, newspaper, magazine of anyone other than plaintiffs marking any significant use of Regions as a brand or a name directed to consumers in Alabama.  Accordingly, the Regions name and mark is famous and distinctive in Alabama.  Its adoption by defendant as the name of its university, particularly one that advertises in the same media, is likely to cause dilution of the distinctiveness of the Regions name and its sole association with plaintiffs.

The immediate association of Regions University with Regions shows the dilution of the distinctiveness of the Regions name and brand by the defendant's adoption of the Regions University name.

---

[3] Moreover, the attorney who provided the email knew nothing of Regions or its fame.  Indeed, Rex Turner advised its attorney of the existence of Regions bank, but withheld from its attorney who said he did not know of the bank any information concerning Regions.  It is well established that a client that withholds key information from counsel cannot rely on its counsel's advice.  *Eco Mfg. LLC v. Honeywell International, Inc.*, No. 1:03-CV-0170-DFH, 2003 WL 1888988 (S.D. Ind. 2003), at *7; *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998) ("Whenever material information is intentionally withheld, or the best information is intentionally not made available to counsel during the preparation of the opinion, the opinion can no longer serve its prophylactic purpose of negating a finding of willful infringement").

### C.    THE FEDERAL DILUTION CLAIM

The federal dilution statute, like the Alabama state statute, protects plaintiffs against defendant's diluting actions, whether or not actual or likely confusion or economic injury exists. Lanham Act § 43(c)(1), 15 U.S.C. § 1125(c)(1).

As appears above, the REGIONS mark is famous and well known throughout its 16 state footprint and elsewhere in the United States by virtue of its sponsorships of athletic conferences and their member universities as well as its position as one of the largest financial institutions in the United States.  Defendant's adoption of Regions University has caused and will be likely to cause association with the famous Regions mark of plaintiffs and a loss of the distinctiveness of the Regions name and mark.

## VI.    SUMMARY OF DEFENDANT'S DEFENSES

### A.    THE TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS

The primary object of the trademark laws is not to "protect" trademarks but to protect the consuming public from deception.  <u>Chase Federal Savings and Loan Association v. Chase Manhattan Federal Services,</u> 681 F.Supp. 771, 787 (S.D. Fla. 1987).  The proper legal test of trademark infringement is whether the use of the allegedly infringing mark is likely to confuse customers as to the source of the product.  <u>TGI Friday's, Inc. v. International Restaurant Group, Inc.,</u> 569 F.2d 895 (5th Cir. 1978).  A finding of trademark infringement requires a probability of consumer confusion, not a mere possibility.  <u>Elvis Presley Enterprises, Inc. v. Capece,</u> 141 F.3d 188, 193 (5th Cir. 1998).

Defendant, Regions University, Inc. (the "University") contends that its new name is not likely to cause confusion, given:  (1) the weakness of the plaintiffs' mark outside the field of banking due to extensive third party use of similar marks, the descriptive nature of plaintiffs'

mark "Regions," and its status as a common English word; (2) the great dissimilarity between the banking services offered by the plaintiffs and the post-secondary educational services offered by the defendant; (3) the dissimilarities in the marks adopted and used by the plaintiff, as compared to the marks adopted by defendant, including logos consistently used by the parties in connection with their marks; (4) the lack of any probative evidence of actual customer confusion; (5) the relatively high degree of care and sophistication used in deciding to enroll in a post-secondary educational institution; and (6) defendant's good faith in adopting the new name for its university.

1.    **"Regions" is a Weak Mark**

One of the most important factors in this circuit in assessing a likelihood of confusion under a trademark infringement claim is the strength of the plaintiff's mark. <u>Frehling Enterprises, Inc. v. International Select Group, Inc.</u>, 192 F.3d 1330, 1335 (11th Cir. 1999). Determination of the type and strength of a mark is a two-step process:

> "(1)    Determining what category – generic, descriptive, suggestive, or arbitrary - the mark is; and
>
> (2)    Determining what the relative market strength of the mark is."

<u>Id.</u> at 1247-48.

Plaintiff's Regions mark is <u>descriptive</u> of the plaintiff's services being offered and available in various regions. Plaintiff's own website describes that the reason for the change of name to "Regions" was to "better reflect [the company's] growing presence throughout the south." A descriptive mark is the weakest mark on the scale of marks afforded protection under

the trademark laws. The descriptive nature of the plaintiff's mark is also demonstrated by the extensive third party use of the word "Region" or "Regions" by numerous other businesses. Extensive third party use of a word is evidence that the word is descriptive. Investicorp, Inc. v. Arabian Investment Banking Corp., 931 F.2d 1519, 1523 (11th Cir. 1991).

Under the second part of the test – the relative market strength of the mark – plaintiff's mark is also very weak, particularly outside the field of banking. Courts in the circuit consider common English words as "weak" marks entitled to limited protection outside of the uses to which the plaintiff has put its mark. See Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association, 651 F.2d 311, 316; Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 265 (5th Cir. 1980), cert. denied, 449 U.S. 899, 101 Sup. Crt. 268 (1980). Additionally, third party uses and registrations of the mark dilute its strength. Sun Banks of Florida, Inc., 651 F.2d at 316-17; Amstar Corp., 615 F.2d at 259-60.

In the present case, the plaintiffs have chosen a mark to identify their banking services which is not only an extremely common English word but also is a word widely used by a great variety of businesses throughout the plaintiffs' 16-state footprint. There are literally hundreds of businesses in the plaintiff's 16-state footprint which have incorporated or organized with the first word of their name being either "Region" or "Regions" and using that word in a non-geographical sense. In fact, investigation has confirmed, to date, the ongoing business existence of more than 70 businesses in the Bank's market territory whose names begin with the word "Region" or "Regions" used in a non-geographical sense.[4] In Alabama alone, some 100 corporations or LLCs have been incorporated or organized with the word "Region" or "Regions"

---

[4]    Some of these businesses, which have been in existence for years and been known to the Bank, have just recently received cease and desist letters from the Bank after the University filed its Motion for Summary Judgment disclosing these names of these businesses. These letters are an explicit recognition that these business names have serve to dilute the strength of the Bank's mark.

in their names, many of which use those words in a manner that does not refer to a particular geographical region.  Additionally, there are some 12 or 13 federal trademark registrations or pending applications beginning with the word "Region" or "Regions" used in a non-geographical sense as well as hundreds of domain manes using "Regions."

Plaintiffs wish to focus on the use of the word "Regions" instead of "Region" and focus only on Alabama.  This is not the law when analyzing the strength of a plaintiff's mark.  *See* <u>Sun Banks of Florida, Inc.</u>, *supra* (in dispute between two Florida banks, evidence of third party use was not limited to businesses located in Florida and included businesses using a compound of the mark "Sun"); <u>Amstar Corp. v. Domino's Pizza</u>, *supra*.

2.      **The Services are Completely Dissimilar**

Under this factor, the test is "whether the goods [or services] are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods [or services]." <u>Frehling Enterprises, Inc.</u>, 192 F.3d at 1338.  The financial services provided by plaintiffs and the educational services provided by defendant are completely unrelated.  Plaintiffs claim a "connection" to colleges and universities through their sponsorship of collegiate athletics and making student loans and giving talks to students about financial matters.  These are activities that the bank undertakes <u>as a bank</u> with no suggestion that the bank is sponsoring or associated with the academic institution itself.  Indeed, plaintiffs are not licensed under any of the laws of any states in which they do business to operate a post-secondary institution.  There is no evidence that the public would assume that a university which adopts a common English word, such as "Regions," to describe itself, would be sponsored by a bank or other business using a similar common word.  The co-existence of Regions Bank and other "Regions"

businesses, including title companies, real estate developers, and construction companies, negate any inference that the public makes any such assumption or is so confused.

3.    **The Marks are Dissimilar:  The Plaintiffs use the Marks Regions and Regions Bank; the Defendant uses the Mark Regions University,**

Plaintiffs claim that both parties use Regions and Regions University.  This is erroneous. "Regions University," as "used" by the plaintiffs, is an in-house corporate training program that they have never promoted to the public and is only available to employees of the plaintiffs.  It would be unlawful for the plaintiffs to advertise their corporate training program as a "university" to the public.  Defendant does not use the mark "Regions" alone in advertising and marketing itself.  It only uses the full name of its university.  The word marks, as well as the designed logos accompanying the company's word marks make those marks dissimilar. Plaintiff's consistency in promoting its mark with an accompanying logo design serves to make recognizable any variations from it.  Choice Hotels, Inc. v. Kaushik, 147 F. Supp. 2d, 1242 (M.D. Ala. 2000), affirmed 260 F.3d 627 (11th Cir. 2001).

4.    **No Evidence of Actual Confusion Exists**

The plaintiff's evidence of alleged "confusion" consists of mostly bank employees testifying about inquiries from other bank employees as to whether or not their might be some connection between the bank and the defendant, when the defendant first announced its name. Under the law, such inquiries do not constitute evidence of "confusion" and certainly not evidence of customer confusion.  The relevant inquiry is whether potential customers of the defendant Regions University would likely be confused about such an affiliation or connection and enroll as a result.  Certainly, the high degree of care and sophistication employed in enrolling

in a post-secondary institution would preclude any such confusion from being a factor in such enrollment.

     5.    **Defendant Chose "Regions University" as Appropriate to Its Mission to "Regions" of the world both as a Christian University and as a Distance Learning Center**.

     Defendant's name change was prompted by a desire to have a more broad based name so as to attract students from all over the country as well as the world and as a name consistent with its Christian heritage. It sought and obtained a opinion from trademark counsel that the name was registerable. It informed trademark counsel of the existence of Regions Bank, even double checking with its counsel when one of its board members brought up the fact of a corporate training program styled "Regions University" was used by the Bank. It was assured that this would not be a problem in the adoption of its new name. There is no evidence that defendant had an intent to exploit the Bank's name. Most of its students come from states other than Alabama and many from states where people would be completely unfamiliar with Regions Bank.

     B.    **Federal dilution claim**

     1.    The Federal Trademark Dilution Revision Act defines a "famous" mark as one which is "widely recognized by the general consuming public of the Untied States as a designation of the source of goods or services of a mark's owner." Plaintiffs cannot meet this test of famousness. They have no recognition at all outside of the 16-state footprint in which they do business. Moreover, to be capable of being diluted, a plaintiff's mark must have a degree of distinctiveness and strength in excess of that required to support a trademark infringement claim. Plaintiff's mark has no such strength or distinctiveness, given its nature as a

common English word, given its use as a descriptive word in their mark, and given the extensive third party use of the mark or similar variations on it.

### C. The Alabama State Dilution Claim

Alabama law protects only famous and distinctive marks from dilution. The plaintiff's mark does not have these qualities as argued above. Numerous businesses contain a similar name, both in Alabama and in other states. This is a common English word, used descriptively. The mark simply is not a viable candidate for a dilution claim.

## V.    TRIAL TIME

Plaintiffs estimate that it will take approximately four (4) days to present their case-in-chief. Defendant estimates that it will take approximately four (4) days to present its case-in-chief.

## VI.    STIPULATED FACTS

1.    Regions Asset Company is a Delaware corporation with its principal place of business at 3501 Silverside Road, Suite 209, Wilmington, Delaware 19810.

2.    Regions Financial Corporation is a Delaware corporation with its principal place of business at 1900 Fifth Avenue North, Birmingham, Alabama 35203.

3.    Regions Bank is a wholly owned subsidiary of Regions Financial Corporation. Regions Assets Company is a wholly owned subsidiary of Regions Bank.

4.    Regions Bank is an Alabama banking corporation with its principal place of business at 1900 Fifth Avenue North, Birmingham, Alabama 35203.

5.    Regions Financial Corporation, Regions Bank, and Regions Asset Company (together "Regions" or "Plaintiffs") are affiliates.

6.    The services offered by plaintiffs under its REGIONS name and mark include basic banking services, savings or time deposit accounts, loans, trusts, investment, real estate mortgage, construction lending, real estate lending, private banking, consumer banking, commercial banking, securities brokerage and insurance services. RU's SJ Motion at 11; Dunman Tr. 36; www.regions.com.

7.    On July 1, 2004, Regions Financial Corporation merged with Union Planters Corporation. (Regions 2006 Annual Report at RAC 30599)

8.    On May 25, 2006, Regions Financial Corporation and AmSouth Bancorporation announced their intention to merge.  (RAC 12627-31)

9.    On November 4, 2006, Regions Financial Corporation merged with AmSouth Bancorporation.  (Regions 2006 Annual Report at RAC 30598)

10.   Plaintiffs have branch offices in Alabama, Arkansas, Florida, Georgia, Iowa, Illinois, Indiana, Kentucky, Louisiana, Missouri, Mississippi, North Carolina, South Carolina, Tennessee, Texas and Virginia.  (www.regions.com; 2006 Annual report p. 35); RU's SJ Motion at 10.

11.   The REGIONS name and mark, alone or with other elements, is registered in the United States Patent and Trademark Office ("USPTO") under the following registration numbers: 1881600; 1918496, 1914267, 1957997, 2007680, 2191540, 2250389, 2584509, 2737615, 2599308, 2599309, 2605827, 2599310, 2599341, 3267593, 3282163. 3282179, 3112740, 3103400, 3119462, 3150549, and 3224650.

12.   Registered marks of plaintiffs include REGIONS, REGIONS BANK, REGIONS CHARITY CLASSIC, REGIONSNET, REGIONS FINANCIAL CORP., REGIONS FUNDS, REGIONS QUICK DEPOSIT, REGIONSREWARD, REGIONS BASIC BANKING, REGIONS CLASSIC BANKING, REGIONS REWARDS, REGIONS LIFESPAN ACCOUNTS, REGIONS MANAGEMENT ACCOUNT, REGIONS COLLEGIATE CHECKING, REGIONS MORTGAGE, REGIONS MOR LINKED CHECKING, REGIONS E-SSENTIAL BANKING. (Certified registrations; RU's SJ Motion at 11.)

13.   The REGIONS mark, Reg. No. 1881600, is incontestable pursuant 15 U.S.C. § 1125.  (15 U.S.C. § 1125, Amended Complaint ¶ 15)

14.   The REGIONS mark registration, Reg. No. 1881600, was filed on August 30, 1993. (Cert. Reg.)

15.   Regions Asset Company is the owner of the REGIONS  mark and its registrations and its affiliates, Regions Financial Corporation and Regions Bank, use the REGIONS mark under license.  (Certified registrations of plaintiffs' REGIONS marks; RAC00030390-435)

16.   By 1994, plaintiffs began to use its REGIONS name.  (Dunman Tr. 83; RU's SJ Motion 10.)

17.   Plaintiffs used the following REGIONS logo beginning in late 1993 or early 1994:



RU's SJ Brief at 11-12; Exh. 2, Dunman Tr. At 83-84.

18.    Plaintiffs adopted and began to use the following REGIONS logo in 2004:





Defendant's SJ Brief at 12; Dunman Dep. 85-90, Ex. 3.

19.    Plaintiffs adopted and began to use the following REGIONS logo in 2007:



Defendant's SJ Brief at 12; Scott Peters Tr. at 90.

20.    The following names are used by plaintiffs: REGIONS FINANCIAL
CORPORATION, REGIONS ASSET COMPANY, REGIONS BANK,
REGIONS INSURANCE GROUP, REGIONSNET, REGIONS MORTGAGE,
and REGIONS CHARITY CLASSIC.

21.    Plaintiffs' website address is www.regions.com. (See, e.g., Ex. 102; Peters Tr. 85-
86 regarding Ex. 102)

22.  Plaintiffs own and use the website address www.regions.net.

23.  The name "Regions" appears on plaintiffs' stationary, business cards and checks. Peters Tr. 112-118.

24.  Plaintiffs have promoted their services through advertisements featuring the name REGIONS through the following media: television, radio, billboards, newspapers, magazines, cinema and Internet.  (Peters Tr. 112-13.)

25.  Plaintiffs are the official bank of the Southeastern Conference.

26.  Plaintiffs are the official bank of the Sun Belt Conference.

27.  Plaintiffs operate a corporate training program named "Regions University."

28.  Plaintiffs have offered their REGIONS UNIVERSITY corporate training services sometime after its merger with Union Planters in 2004.  (Pollard Tr. 9-10.)

29.  Plaintiffs' corporate training program, named "Regions University," is only available for employees of the plaintiffs.  (Dunman depo. at 39-45).

30.  Plaintiffs' corporate training program, named "Regions University," has never been approved as an educational institution by any regional accrediting body. (Response to Defendant's Request for Admission No. 6; Pollard depo. at 33).

31.  Plaintiffs are not licensed nor approved by any state agency in any state in which they do business to operate a post-secondary educational institution.  (Response to Defendant's Request for Admission No. 1; Pollard depo. at 19).

32.  Plaintiffs have not sought or obtained any exemption from licensure from any state agency in order to operate their employee training program.  (Response to Defendant's Request for Admission No. 3).

33.  Plaintiffs have never sought a license or obtained governmental permission to use the word "university" for its Regions University program. (Response to Defendant's Request for Admission No. 7; Pollard depo. at 33-34).

34.  On February 5, 2007, plaintiffs filed with the USPTO application number 77/098,922 for registration of the service mark "Regions University" with the USPTO for "educational services, namely, employee training programs and courses in the field of banking services and distribution of course materials in connection therewith."  Defendant filed an opposition to plaintiffs' application on October 3, 2007. (Doc. 52).

35.  Regions University, Inc. ("defendant") is an Alabama corporation with its principal place of business at 1200 Taylor Road, Montgomery, Alabama 36117. (Answer ¶ 5.)

36.  Defendant is a non-profit, post-secondary educational institution.

37.  Defendant is accredited by the Commission on Colleges of the Southern Association of Colleges and Schools ("SACS") to award Associate of Arts, Bachelor of Arts, Bachelor of Science, Master of Arts, Master of Science, Master of Divinity, Doctorate of Ministry and Doctorate of Philosophy degrees. (regions.edu/aboutregions university.htm; Ex. 36, RU 098-100).

38.  Defendant is authorized by the Alabama Department of Post-Secondary Education to operate a private school pursuant to the Alabama Private School License Law.  (regions.edu/aboutregionsuniversity.htm).

39.  Defendant is authorized by the Tennessee Higher Education Commission. (regions.edu/aboutregions university.htm).

40.  Defendant provides education through five schools called:  (1) College of Business and Leadership; (2) College of General Studies; (3) School of Human Services; (4) Turner School of Theology; and (5) School of Continuing Education.  (Turner depo. at 54; Ex. 36).

41.  In its 2006/2007 school year, approximately 95% of the students taking courses with defendant took their courses online.  (Crosby Tr. 19.)

42.  On August 2, 2006, defendant filed with the Alabama Secretary of State Articles of Amendment to Articles of Incorporation changing its official corporate name from Southern Christian University to Regions University, Inc.  (RU 022)

43.  The Board of Regents of Southern Christian University adopted a resolution to change the name of the university to Regions University at a meeting held on July 28, 2006.  (Turner depo. at 150-51; Ex. 31).

44.  On August 4, 2006, defendant filed its application for U. S. trademark registration for the name "Regions University" for educational services, namely, providing courses and programs of instruction at the higher education level, and granting certificates, Associate of Arts, Bachelor of Arts, Bachelor of Science, Master of Arts, Master of Science, Master of Divinity, Doctor of Ministry, and Doctor of Philosophy degrees; vocational education training; and development, publication, and distribution of religious, biblical, ministerial, education, business, and medical publications, videos, and other formats of research and educational materials.  (Certified copy of trademark application 78/944,966)

45.  Defendant's application number 78/944,966 was published for opposition by the USPTO on May 1, 2007, and opposed by plaintiffs on June 29, 2007.  (Doc. 52).

46.  On October 25, 1991, defendant had changed its name from Alabama Christian School of Religion to Southern Christian University.  (Ex. 36.)

47.  On August 2, 2006, defendant notified the Commission on Colleges, Southern Association of Colleges and Schools of the name change to "Regions University." (RU 030-31)

48.  On August 2, 2006, defendant notified the Alabama College System of the name change to "Regions University."  (RU 028-29)

49.  On August 2, 2006, defendant notified the Commission on Accrediting of the Association of Theological Schools of the name change to "Regions University." (RU 023-27)

50.  Defendant initially used the following logo upon changing its name on August 2, 2006, but retired it from use in September 2006 (Ex. 42):



51.  Other logos used by defendant for Regions University since September 2006 have been:





(*See* Ex. 75 and Costanza Tr.136.)

52.  On August 16, 2006, a letter from Rex Turner was sent to defendant's students concerning the change to "Regions University." (Ex. 34)

53.  Defendant registered the following 10 domain names containing the name Regions:   REGIONS.EDU; REGIONSUNIVERISTY.EDU; REGIONSUNIVERSITY.DE; REGIONSUNIVERSITY.COM;

REGIONSUNIVERSITY.WS; REGIONSUNIVERSITY.CE;
REGIONSUNIVERSITY.US; REGIONSUNIVERSITY.BZ;
REGIONSUNIVERSITY.TV; REGIONSUNIVERSITY.BIZ;
REGIONSUNIVERSITY.ORG; REGIONSUNIVERSITY.NET;
REGIONSUNIVERSITY.NAME; REGIONSUNIVERSITY.INFO.  (Ex. 59;
Complaint ¶ 21; Answer ¶ 21)

54.    Defendant began use of the name "Regions University" in television, radio, and
billboards after January 1, 2007.  (Crosby Tr. 37-29; Ex. 123.)

55.    Defendant's planned media budget for February 2007 was $66,475.00 in Alabama
and $66,661.00 in Tennessee.  (Ex. 48)

56.    Defendant spent $1.25 million on advertising from July 1, 2006 through June 29,
2007.  (Ex. 123).

57.    Approximately $150,000 of the $1.25 million was for Internet advertising.
(Crosby Tr. 45)

58.    Approximately $40,000 of the $1.25 million was for print advertising.  (Crosby
Tr. 45)

59.    Approximately $1,060,000 of the $1.25 million was for media placement on
television, radio and billboards and for commercial production costs.  (See Crosby
Tr. 45-46.)

60.    Defendant has advertised "Regions University" on television, radio and
billboards.

61.    In the Fall 2006 semester, 728 students attended defendant.  (RU 4023-45)

62.    In the Spring 2007 semester, 725 students attended defendant. (RU 4046-68)

63.    In the Summer 2007 semester, 561 students attended defendant.  (RU 4069-87)

64.    The website regionscontractors.com is not currently active.
(regionscontractors.com; www.regionscontractors.com; RAC 41450-55)

65.    Regions Claim Management Group has agreed to end use of REGIONS and will
change its business name to a name that does not consist of or contain the
REGIONS name.  This agreement was made after receipt of plaintiffs' cease and
desist letter to Regions claim Management Group dated September 6, 2007,
which was the plaintiffs'' first objection to the use of this name by this business.
(RAC 41429)

## VII.   STIPULATED TESTIMONY

The parties agree that if the following witnesses were called to trial they would testify as set forth in their declarations or affidavits:

William Askew
Scott Peters
Douglas Jackson
Craig Tankersley
Rachel Marmer
Brian Warwick
Terry Boyd
Keturah Burton
Jack Galassini
David Green
Denise Murphy
Wanda Norris
Kiel Odom
Karan Rudolph
Mattie Sanders
Craig Smith
Boyd Wilson
Robbin Thompson
Stephen Stricklin
Andrea Bender
Pauline Holder
Doris Dimino
Lily Matini
Wilson Luquire
David Moore

The parties agree not to object to the admission of these declarations/affidavits into evidence, but this stipulation does not preclude any party from objecting to the relevance of any statements of the affiants or declarants, or preclude any party from calling the affiants or declarants as live witnesses at trial.

## VIII.   WITNESSES

A schedule setting forth the witnesses the plaintiffs expect may be called during their case in chief to testify either at trial or by deposition is annexed hereto as Exhibit A.  A schedule

setting forth the witnesses that defendant expects may be called during its case in chief to testify either at trial or by deposition is annexed hereto as Exhibit B.

## IX. DEPOSITION DESIGNATIONS

### A. Plaintiffs' Deposition Designations

Plaintiffs' proposed designations of deposition testimony to be submitted in support of their case-in-chief are annexed hereto as Exhibit C.  Plaintiffs reserve the right to supplement their proposed deposition designations with the deposition testimony of any individual who is identified on defendant's proposed witness list in the event that such individual is unavailable at trial.

### B. Defendant's Deposition Designations

Defendant's proposed designations of deposition testimony to be submitted in support of its case-in-chief are annexed hereto as Exhibit D.  Defendant reserves the right to supplement its proposed deposition designations with the deposition testimony of any individual who is identified on defendant's proposed witness list in the event that such individual is unavailable at trial.

### C. Designation of Responsive and Rebuttal Deposition Testimony

The parties shall provide to each other, in accordance with the Uniform Scheduling Order, any responsive parts of depositions expected to be used and thereafter rebuttal parts to responsive parts.

## X.    EXHIBITS

Plaintiffs' list of exhibits that may be offered during their case-in-chief is annexed hereto

as Exhibit E.  Defendant's list of exhibits that may be offered during its case-in-chief is annexed

hereto as Exhibit F.

Respectfully submitted this the 24th day of October, 2007.


/s/ William G. Pecau                             /s/ Victor T. Hudson
One of the Attorneys for Plaintiffs        One of the Attorneys for Defendant
Regions Asset Company, Regions          Regions University, Inc.
Financial Corporation and Regions Bank

**OF COUNSEL:**                              **OF COUNSEL:**

Charles B. Paterson (PAT018)              Victor T. Hudson (HUDSV1684)
Paul A. Clark (CLA076)                       William W. Watts, III (WATTW5095)
BALCH & BINGHAM LLP                    HUDSON & WATTS LLP
Post Office Box 78                              Post Office Box 989
Montgomery, AL 36101-0078               Mobile, AL 36601
Telephone: (334) 834-6500                    Telephone:
Facsimile: (334) 269-3115                      Facsimile:
cpaterson@balch.com                          tom@alabamatrial.com
pclark@balch.com                             bill@alabamatrial.com

William G. Pecau                               James E. Shlesinger
Michael J. Allan                                 SHLESIGNER, ARKWRIGHT &
Rachel M. Marmer                             GARVEY LLP
STEPTOE & JOHNSON LLP                 1420 King Street, Suite 600
1330 Connecticut Avenue, NW             Alexandria, VA 22314
Washington, DC 20036                        Telephone:
Telephone:  (202)429-6244                    Facsimile:
Facsimile:  (202)429-3902                      jim@sagllp.com
wpecau@steptoe.com
mallan@steptoe.com
rmarmer@steptoe.com