IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| REGIONS ASSET COMPANY, REGIONS FINANCIAL CORPORATION and REGIONS BANK<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>REGIONS UNIVERSITY, INC.<br><br>　　　　Defendant. | Civil Action No. 2:06-cv-882-MHT |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THE ADMISSIBILITY OF PX 267, 217, 218, 219 AND 220**

On January 15, 2008, Jim Jager, the President and owner of New South Research, testified concerning the development, implementation and execution of PX 267, 217, 218, 219 and 220 (hereinafter the "New South" studies) conducted for Regions. Mr. Jager testified that he was personally involved and worked closely with Regions executives in the design and implementation of the New South studies. Defendant did not cross-examine Mr. Jager. His testimony satisfies the requisite elements for admissibility of a trademark survey. The testimony should not be excluded under Fed. R. Evid. 702.

Further, Scott Peters, the Chief Marketing Officer of Regions Financial Corporation ("Regions"), testified to his personal involvement and the involvement of his staff under his direct supervision with New South's July 2007 marketing study (PX 267). William Askew, the head of Consumer Banking for Regions, testified as to his involvement and the involvement of his marketing staff in connection with the historic New South studies. (PX 217, 218, 219 and 220)

The admissibility of trademark surveys, over objection under Fed. R. Evid. 702 and *Daubert*[1] was addressed in *Quantum Capital Corp., v. MBNA America, Bank, N.A.* 2003 WL 25672802 (N.D. Ga. April 16, 2003). The court held that the reliability of trademark surveys is determined from the following five factors:

> (1) was an appropriate universe or population identified; (2) were questions on the survey framed to be clear, precise and unbiased; (3) what procedures were used to ensure and determine that the survey was administered to minimize error and bias; (4) what procedures were used to ensure that the data were accurately recorded; and (5) does the survey report include complete and detailed information on all relevant characteristics.

*Id*.

Mr. Jager addressed each of the five factors and, ultimately, the reliability of the New South reports he prepared. First, he testified that he worked closely with Regions executives to select an appropriate sample frame from which to conduct the studies. Mr. Jager testified that the sample frame came from certain markets where Regions sought to test its awareness. Second, Mr. Jager testified that the questionnaire was designed to be clear and precise. He then offered an explanation as to why the awareness questions he chose were in fact clear. Third, Mr. Jager testified in detail about the numerous quality control measures that were in place to ensure accurate, reliable and unbiased data. The measures ranged from training his interviewees and even validating a certain percentage of the interviewer calls. Fourth, he testified as to the protections he had in place to ensure accurate recordation which included active supervision of his interviewers. Finally, Mr. Jager testified that each study included "complete and detailed information on all relevant characteristics."

Further, Scott Peters testified as to his involvement and the involvement of the market research experts on his staff on the design of the questionnaire and the choice of the sampling

---

[1] *Daubert v. Merrill Dow Pharms., Inc.* 509 U.S. 579 (1993)

method of the universe.  He also testified that he had his staff actually listen in on some of the interviews to make sure that they were properly conducted and reviewed the many other quality control measures that New South employed as its regular practice.

Messrs. Peters and Askew testified that they were seeking unbiased information, good or bad, to make important business decisions concerning the REGIONS brand and business and that this information would be used throughout the company from Regions' CEO to Regions associates in the field.  They also testified that they knew Mr. Jager and New South Research personally and through reputation for conducting scientific, valid surveys whose results can be relied upon to make important business decisions.

Mr. Jager is indeed an expert in the field of market research.  However, he testified as a fact witness based on his personal knowledge.  Moreover, even if Jager were to offer opinion testimony, it should be admissible.  Mr. Jager's testimony is much like that of a treating physician.  Treating physicians are experts, but routinely offer fact testimony concerning, for example, what treatments were given and why they were given.  Cases interpreting the requirements of Rule 26 in relation to treating physicians consistently hold that a medical doctor is not an "expert" under Rule 702 if his testimony is based on personal observations made during the course of treatment and if the basis of the physician's testimony was not acquired or developed in anticipation of litigation or for trial.  *See Brown v. Best Foods,* 169 F.R.D. 385, 387 (N.D. Ala. 1996) (*citing Richardson v. Consolidated Rail Corp.*, 17 F.3d 213, 218 (7th Cir. 1994)).  Rather, "[p]hysicians who examined and prescribed treatment for a plaintiff 'cannot be considered merely as expert witnesses whose examination was limited to obtaining information to be used solely for the purpose of testifying as an expert in the case.'"  *Id.* (*quoting McGuire v. Davis*, 437 F.2d 570, 572 (5th Cir. 1971)); *see also Wreath v. United States*, 161 F.R.D. 448, 449

(D. Kan. 1995) (to the extent that the treating physician testifies to the care and treatment of a patient, the physician is not a specially retained expert).

Jim Jager is not a specially retained expert, but rather a fact witnesses with personal knowledge as to the methodology of the New South studies. He provided all the requisite testimony for the admissibility of the New South studies, and was not challenged at all on cross-examination. The New South studies should not be excluded under Fed. R. Evid. 702.

Scott Peters and William Askew similarly are fact witnesses having expertise in the area of market research from their training and/or many years of experience in marketing, and having direct knowledge of the reliability of these surveys that were conducted in the regular course of their business.

As such, Plaintiffs respectfully renew their request for admission of the New South studies into evidence. Should the Court deny Plaintiffs' renewed request that the New South studies be admitted, Plaintiff expects that Dr. Avery Abernethy will opine that the studies are statistically reliable.

- 5 -

Respectfully submitted this the 16th day of January, 2007.

/s/ William G. Pecau
One of the Attorneys for Plaintiffs Regions Asset Company, Regions Financial Corporation and Regions Bank

**OF COUNSEL:**

Charles B. Paterson (PAT018)
Paul A. Clark (CLA076)
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (334) 269-3115
cpaterson@balch.com
pclark@balch.com

William G. Pecau
Michael J. Allan
Rachel M. Hofstatter
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202)429-6244
Facsimile:  (202)429-3902
wpecau@steptoe.com
mallan@steptoe.com
rhofstatter@steptoe.com

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court and service will be perfected electronically upon the following this 16th day of January 2008:

Victor T. Hudson
William W. Watts, III
Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601-0989

James E. Shlesinger
Shlesinger, Arkwright & Garvey LLP
1420 King Street
Suite 600
Alexandria, Virginia 22314

/s/ William G. Pecau
One of the Attorneys for Plaintiffs Regions Asset Company, Regions Financial Corporation and Regions Bank